1  EILEEN M. DECKER
   United States Attorney
2  PATRICIA A. DONAHUE
   Assistant United States Attorney
3  Chief, National Security Division
   TRACY L. WILKISON (California Bar No. 184948)
4  Assistant United States Attorney
   Chief, Cyber and Intellectual Property Crimes Section
5  ALLEN W. CHIU (California Bar No. 240516)
   Assistant United States Attorney
6  Terrorism and Export Crimes Section
        1500 United States Courthouse
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone:  (213) 894-0622/2435
        Facsimile:  (213) 894-8601
9       Email:      Tracy.Wilkison@usdoj.gov
                    Allen.Chiu@usdoj.gov
10
   Attorneys for Applicant
11 UNITED STATES OF AMERICA

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

   IN THE MATTER OF THE SEARCH OF        ED No. ███████  (SP)
14 AN APPLE IPHONE SEIZED DURING
15 THE EXECUTION OF A SEARCH            GOVERNMENT'S MOTION TO COMPEL
   WARRANT ON A BLACK LEXUS IS300,      APPLE INC. TO COMPLY WITH THIS
16 CALIFORNIA LICENSE PLATE             COURT'S FEBRUARY 16, 2016 ORDER
   35KGD203                             COMPELLING ASSISTANCE IN SEARCH;
17                                      EXHIBIT

18                                      Hearing Date: March 22, 2016
                                        Hearing Time: 1:00 p.m.
19                                      Location: Courtroom of the Hon.
                                        Sheri Pym
20

21

22      The United States of America, by and through its counsel of

23 record, the United States Attorney for the Central District of

24 California, and Assistant United States Attorneys Tracy L. Wilkison

25 and Allen W. Chiu, hereby files its Motion to Compel Apple Inc.

26 ("Apple") to Comply with this Court's February 16, 2016 Order

27 Compelling Apple To Assist Agents In Its Search.

28

1       This Motion is based upon the attached memorandum of points and

2   authorities, the attached exhibit, the files and records in this case

3   including the application and order compelling Apple to assist the

4   FBI and the underlying search warrant, and such further evidence and

5   argument as the Court may permit.

6

7   Dated: February 19, 2016        Respectfully submitted,

8                            EILEEN M. DECKER
                         United States Attorney

9

10                           PATRICIA A. DONAHUE
                         Assistant United States Attorney
                         Chief, National Security Division

11

12

13                           TRACY L. WILKISON
                         ALLEN W. CHIU

14                           Assistant United States Attorneys

15                           Attorneys for Applicant
                         UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28                                 2

## TABLE OF CONTENTS

DESCRIPTION                                                                      PAGE

**TABLE OF AUTHORITIES**.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.     INTRODUCTION................................................1

II.    STATEMENT OF FACTS..........................................3

III.   THE COURT SHOULD ISSUE AN ORDER COMPELLING APPLE TO COMPLY
       WITH ITS ORDER REQUIRING ASSISTANCE WITH THE FBI'S SEARCH
       OF THE SUBJECT DEVICE PURSUANT TO THE ALL WRITS ACT...........7

       A.    This Court's All Writs Act Order is Lawful and Binding....7

             1.    The All Writs Act................................7

             2.    Apple is not "far removed" from this matter........10

             3.    The Order does not place an unreasonable burden
                   on Apple........................................12

             4.    Apple's assistance is necessary to effectuate the
                   warrant........................................16

             5.    Apple's Potential Marketing Concerns Provide
                   Insufficient Grounds to Disregard a Duly Issued
                   Court Order Following a Warrant Based on a
                   Finding of Probable Cause.......................18

             6.    Public Policy Favors Enforcing of the Order........21

       B.    Congress has Not Limited this Court's Authority to
             Issue an All Writs Act Order to Apple...................21

             1.    No statute addresses data extraction from a
                   passcode-locked cell phone......................22

             2.    Congressional inaction does not deprive courts of
                   their authority under the All Writs Act............24

IV.    CONCLUSION................................................25

i

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                          PAGE

## FEDERAL CASES

Central Bank of Denver v. First Interstate Bank of Denver,
    511 U.S. 164 (1994)..........................................24

General Construction Company v. Castro,
    401 F.3d 963 (9th Cir. 2005)................................24

In re Application of the United States for an Order
    Directing a Provider of Communication Services to Provide
    Technical Assistance to the DEA, 2015 WL 5233551, at *4-5
    (D.P.R. Aug. 27, 2015).......................................9

In re Application of United States for an Order Authorizing an
    In-Progress Trace of Wire Commc'ns over Tel. Facilities
    (Mountain Bell), 616 F.2d 1122 (9th Cir. 1980)...........passim

In re Application of United States for an Order Directing X to
    Provide Access to Videotapes (Access to Videotapes),
    2003 WL 22053105, at *3 (D. Md. Aug. 22, 2003)
    (unpublished)............................................9, 12

In re Order Requiring [XXX], Inc. to Assist in the Execution
    of a Search Warrant Issued by This Court by Unlocking a
    Cellphone (In re XXX), 2014 WL 5510865, at *2 (S.D.N.Y.
    Oct. 31, 2014)..........................................9, 15

Konop v. Hawaiian Airlines, Inc.,
    302 F.3d 868 (9th Cir. 2002)................................22

Pennsylvania Bureau of Correction v. United States Marshals
    Service,
    474 U.S. 34 (1985)....................................7, 22, 24

Plum Creek Lumber Co. v. Hutton,
    608 F.2d 1283 (9th Cir. 1979)................................7

Riley v. California,
    134 S. Ct. 2473 (2014)......................................21

United States v. Catoggio,
    698 F.3d 64 (2d Cir. 2012)...................................8

United States v. Craft,
    535 U.S. 274 (2002).........................................24

United States v. Fricosu,
    841 F.Supp.2d 1232 (D. Co. 2012)............................17

ii

United States v. Hall,
    583 F. Supp. 717 (E.D. Va. 1984)...........................9, 12

United States v. Li,
    55 F.3d 325, 329 (7th Cir. 1995)............................15

United States v. Navarro,
    No. 13-CR-5525, ECF No. 39 (W.D. Wa. Nov. 13, 2013)...........9

United States v. New York Telephone Co.,
    434 U.S. 159 (1977)....................................*passim*

**FEDERAL STATUTES**

18 U.S.C. § 2510............................................22

18 U.S.C. § 3103............................................21

28 U.S.C. § 1651.............................................7

47 U.S.C. § 1001............................................22

47 U.S.C. § 1002........................................22, 23

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Rather than assist the effort to fully investigate a deadly terrorist attack by obeying this Court's Order of February 16, 2016, Apple has responded by publicly repudiating that Order.  See Exhibit 1.  Apple has attempted to design and market its products to allow technology, rather than the law, to control access to data which has been found by this Court to be warranted for an important investigation.  Despite its efforts, Apple nonetheless retains the technical ability to comply with the Order, and so should be required to obey it.

Before Syed Rizwan Farook ("Farook") and his wife Tafsheen Malik shot and killed 14 people and injured 22 others at the Inland Regional Center in San Bernardino, Farook's employer issued him an iPhone.  The Federal Bureau of Investigation ("FBI") recovered that iPhone during the investigation into the massacre.  The government has reason to believe that Farook used that iPhone to communicate with some of the very people whom he and Malik murdered.  The phone may contain critical communications and data prior to and around the time of the shooting that, thus far: (1) has not been accessed; (2) may reside solely on the phone; and (3) cannot be accessed by any other means known to either the government or Apple.  The FBI obtained a warrant to search the iPhone, and the owner of the iPhone, Farook's employer, also gave the FBI its consent to the search. Because the iPhone was locked, the government subsequently sought Apple's help in its efforts to execute the lawfully issued search warrant.  Apple refused.

1    Apple left the government with no option other than to apply to

2    this Court for the Order issued on February 16, 2016.  The Order

3    requires Apple to assist the FBI with respect to this single iPhone

4    used by Farook by providing the FBI with the opportunity to determine

5    the passcode.  The Order does not, as Apple's public statement

6    alleges, require Apple to create or provide a "back door" to every

7    iPhone; it does not provide "hackers and criminals" access to

8    iPhones; it does not require Apple to "hack [its] own users" or to

9    "decrypt" its own phones; it does not give the government "the power

10   to reach into anyone's device" without a warrant or court

11   authorization; and it does not compromise the security of personal

12   information.  See Exhibit 1.  To the contrary, the Order allows Apple

13   to retain custody of its software at all times, and it gives Apple

14   flexibility in the manner in which it provides assistance.  In fact,

15   the software never has to come into the government's custody.

16   In the past, Apple has consistently complied with a significant

17   number of orders issued pursuant to the All Writs Act to facilitate

18   the execution of search warrants on Apple devices running earlier

19   versions of iOS.[1]  The use of the All Writs Act to facilitate a

20   warrant is therefore not unprecedented; Apple itself has recognized

21   it for years.  Based on Apple's recent public statement and other

22   statements by Apple, Apple's current refusal to comply with the

23   Court's Order, despite the technical feasibility of doing so, instead

24   _____

25   [1] Apple's Legal Process Guidelines continue to state that Apple will provide assistance with unlocking devices running iOS versions earlier than 8.0, and advises as to what language to include in the order.  See "Extracting Data from Passcode Locked iOS Devices," Apple Legal Process Guidelines § III(I) (updated September 29, 2015), available at http://www.apple.com/privacy/docs/legal-process-guidelines-us.pdf.  However, Apple has informed another court that it now objects to providing such assistance.

appears to be based on its concern for its business model and public brand marketing strategy.[2]

Accordingly, the government now brings this motion to compel. While the Order includes the provision that "to the extent that Apple believes that compliance with this Order would be unreasonably burdensome, it may make an application to this Court for relief within five business days of receipt of the Order," Apple's public statement makes clear that Apple will not comply with the Court's Order. The government does not seek to deny Apple its right to be heard, and expects these issues to be fully briefed before the Court; however, the urgency of this investigation requires this motion now that Apple has made its intention not to comply patently clear.[3] This aspect of the investigation into the December 2, 2015 terrorist attack must move forward.

## II.   STATEMENT OF FACTS

As set forth in the government's application for the All Writs Act Order, and the Declaration of FBI Supervisory Special Agent ("SSA") Christopher Pluhar, which was attached thereto, both of which were filed on February 16, 2016, the FBI has been investigating the

---

[2] As Apple has stated on its web page, "Our commitment to customer privacy doesn't stop because of a government information request. … Unlike our competitors, Apple cannot bypass your passcode and therefore cannot access this data.  So it's not technically feasible for us to respond to government warrants for the extraction of this data from devices in their possession running iOS8." (https://web.archive.org/web/20140918023950/http://www.apple.com/privacy/government-informaton-requests/).  Notably, notwithstanding this previous statement, Apple concedes that it has retained the ability to do as the Court ordered.

[3] Although a separate order compelling Apple's compliance with this Court's February 16, 2016, order is not legally necessary, in light of Apple's publicly stated "[o]pposing [of] this order" and its stated interest in adversarial testing of the order's legal merits, the government files this noticed motion to provide Apple with the due process and adversarial testing it seeks.

December 2, 2015 mass murder of 14 people, and the shooting and injuring of 22 others, at the Inland Regional Center ("IRC") in San Bernardino, California, and the participation by Farook and his wife Malik in that crime.  Farook and Malik died later that day in a shoot-out after a pursuit with law enforcement.

Since that time, the FBI has been tirelessly investigating the precise role of those who may have been involved in the attack.  As part of this investigation, the FBI obtained search warrants to search, among other locations and items, the digital devices and online accounts of Farook and Malik.  Through those searches, the FBI has discovered crucial information about the attack.  For example, the FBI discovered that on December 2, 2015, at approximately 11:14 a.m., a post on a Facebook page associated with Malik stated, "We pledge allegiance to Khalifa bu bkr al bhaghdadi al quraishi," referring to Abu Bakr Al Baghdadi, the leader of Islamic State of Iraq and the Levant ("ISIL"), also referred to as the Islamic State ("IS"), or the Islamic State of Iraq and al-sham ("ISIS"), or Daesh. ISIL is designated as a foreign terrorist organization by the United States Department of State and has been so designated since December 2004.  Moreover, a search warrant executed at Farook's residence resulted in the discovery of thousands of rounds of ammunition and over a dozen pipe bombs.

In addition, as part of the FBI's investigation, on December 3, 2015, the Honorable David T. Bristow, United States Magistrate Judge, issued a search warrant in Docket Number ED 15-0451M for a black Lexus IS300, which was a vehicle that Farook used.  The vehicle was parked outside of his residence where the thousands of rounds of ammunition and pipe bombs were found.  The search warrant for the

4

1  vehicle also ordered the search of digital devices located within it.

2  Inside the vehicle the FBI found a cellular telephone of an Apple

3  make: iPhone 5C, Model: A1532, P/N:MGFG2LL/A, S/N:FFMNQ3MTG2DJ,

4  IMEI:358820052301412, on the Verizon Network (the "SUBJECT DEVICE").

5  The SUBJECT DEVICE is owned by Farook's employer at the San

6  Bernardino County Department of Public Health ("SBCDPH"), and was

7  assigned to, and used by, Farook as part of his employment.  The

8  SBCDPH provided the government its consent to search the SUBJECT

9  DEVICE and to Apple's assistance with that search.[4]

10      Nonetheless, despite the search warrant ordered by the Court and

11  the owner's consent to search the SUBJECT DEVICE, the FBI has been

12  unable to search the SUBJECT DEVICE because it is "locked" or secured

13  with a user-determined, numeric passcode.  More to the point, the FBI

14  has been unable to make attempts to determine the passcode to access

15  the SUBJECT DEVICE because Apple has written, or "coded," its

16  operating systems with a user-enabled "auto-erase function" that

17  would, if enabled, result in the permanent destruction of the

18  required encryption key material after 10 failed attempts at the

19  entering the correct passcode (meaning that, after 10 failed

20  attempts, the information on the device becomes permanently

21  inaccessible).

22      The information and data contained on the SUBJECT DEVICE is of

23  particular concern to the government because, while evidence found on

24  the iCloud account associated with the SUBJECT DEVICE indicates that

25  Farook communicated with victims who were later killed during the

---

27      [4] In addition, SBCDPH has a written policy that all digital
devices are subject to search at any time by the SBCDPH, which
28  Farook accepted via signature upon employment.

5

shootings on December 2, 2015, the backup iCloud data which the government has been able to obtain for the account ends on October 19, 2015.  In addition, toll records for the SUBJECT DEVICE establish that Farook communicated with Malik using the SUBJECT DEVICE between July and November 2015, but this information is not found in the backup iCloud data.  Accordingly, there may be critical communications and data prior to and around the time of the shooting that thus far has not been accessed, may reside solely on the SUBJECT DEVICE; and cannot be accessed by any other means known to either the government or Apple.

When the government first realized that Apple retained the means to obtain that data from the SUBJECT DEVICE and that due to the way that Apple created the software Apple was the only means of obtaining that data, the government sought Apple's voluntary assistance.  Apple rejected the government's request, although it conceded that it had the technical capability to help.  As a result, without any other alternative, on February 16, 2016, the government applied for — and this Court subsequently issued — an Order pursuant to the All Writs Act, compelling Apple to assist the FBI in its search of the SUBJECT DEVICE.

After the government served this Court's Order on Apple, Apple issued a public statement responding directly to the Order.  See Exhibit 1.  In that statement, Apple again did not assert that it lacks the technical capability to execute the Order, that it is not essential to gaining access into the iPhone, or that it would be too time- or labor-intensive.  Rather, Apple appears to object based on a combination of: a perceived negative impact on its reputation and marketing strategy were it to provide the ordered assistance to the

1  government, numerous mischaracterizations of the requirements of the
2  Order, and an incorrect understanding of the All Writs Act.

3  **III. THE COURT SHOULD ISSUE AN ORDER COMPELLING APPLE TO COMPLY WITH ITS ORDER REQUIRING ASSISTANCE WITH THE FBI'S SEARCH OF THE SUBJECT DEVICE PURSUANT TO THE ALL WRITS ACT**

5      **A.   This Court's All Writs Act Order is Lawful and Binding**

6      To the extent that Apple objects that the Court does not have
7  authority under the All Writs Act to compel Apple to assist in the
8  execution of a lawfully obtained search warrant, this objection fails
9  because the authority to require reasonable third-party assistance
10 that is necessary to execute a warrant is well-established, and no
11 provision of any other law or any judicial decision justifies
12 limitation of that All Writs Act authority.  To allow Apple not to
13 comply with the Order would frustrate the execution of a valid
14 warrant and thwart the public interest in a full and complete
15 investigation of a horrific act of terrorism.

16        1.   The All Writs Act

17     The All Writs Act provides in relevant part that "all courts
18 established by Act of Congress may issue all writs necessary or
19 appropriate in aid of their respective jurisdictions and agreeable to
20 the usages and principles of law."  28 U.S.C. § 1651(a).  As the
21 Supreme Court explained, "[t]he All Writs Act is a residual source of
22 authority to issue writs that are not otherwise covered by statute."
23 Pennsylvania Bureau of Correction v. United States Marshals Service,
24 474 U.S. 34, 43 (1985).  Pursuant to the All Writs Act, the Court has
25 the power, "in aid of a valid warrant, to order a third party to
26 provide nonburdensome technical assistance to law enforcement
27 officers."  Plum Creek Lumber Co. v. Hutton, 608 F.2d 1283, 1289 (9th
28 Cir. 1979) (citing United States v. New York Telephone Co., 434 U.S.

159 (1977)).  The All Writs Act permits a court, in its "sound

judgment," to issue orders necessary "to achieve the rational ends of

law" and "the ends of justice entrusted to it."  New York Telephone

Co., 434 U.S. at 172-73 (citations and internal quotation marks

omitted).  Courts must apply the All Writs Act "flexibly in

conformity with these principles."  Id. at 173; accord United States

v. Catoggio, 698 F.3d 64, 67 (2d Cir. 2012) ("[C]ourts have

significant flexibility in exercising their authority under the

Act.") (citation omitted).

In New York Telephone Co., the Supreme Court held that courts

have authority under the All Writs Act to issue supplemental orders

to third parties to facilitate the execution of search warrants.  The

Court held that "[t]he power conferred by the Act extends, under

appropriate circumstances, to persons who, though not parties to the

original action or engaged in wrongdoing, are in a position to

frustrate the implementation of a court order or the proper

administration of justice, … and encompasses even those who have not

taken any affirmative action to hinder justice."  Id. at 174.  In

particular, the Court upheld an order directing a phone company to

assist in executing a pen register search warrant issued under Rule

41.  See id. at 171-76; see also In re Application of United States

for an Order Authorizing an In-Progress Trace of Wire Commc'ns over

Tel. Facilities (Mountain Bell), 616 F.2d 1122, 1132-33 (9th Cir.

1980) (affirming district court's order compelling Mountain Bell to

trace telephone calls, on grounds that "the obligations imposed . . .

were reasonable ones." (citing New York Telephone Co., 434 U.S. at

172)).  New York Telephone Co. also held that "Rule 41 is not limited

to tangible items but is sufficiently flexible to include within its

1  scope electronic intrusions authorized upon a finding of probable

2  cause." 434 U.S. at 169.  The Court relied upon the authority of a

3  search warrant pursuant to Rule 41 to predicate an All Writs Act

4  order commanding a utility to implement a pen register and trap and

5  trace device – before Congress had passed a law that specifically

6  authorized pen registers by court order.  Under New York Telephone

7  Co. and Mountain Bell, the Court had authority pursuant to the All

8  Writs Act to issue the Order.

9       Further, based on the authority given under the All Writs Act,

10  courts have issued orders, similar to the one the Court issued here,

11  that require a manufacturer to attempt to assist in accessing a

12  cellphone's image files so that a warrant may be executed as

13  originally contemplated.  See, e.g., In re Order Requiring [XXX],

14  Inc. to Assist in the Execution of a Search Warrant Issued by This

15  Court by Unlocking a Cellphone (In re XXX), 2014 WL 5510865, at *2

16  (S.D.N.Y. Oct. 31, 2014); see also United States v. Navarro, No. 13-

17  CR-5525, ECF No. 39 (W.D. Wa. Nov. 13, 2013).  Courts have also

18  issued All Writs Act orders in support of warrants in a wide variety

19  of contexts, including ordering a phone company to assist with a trap

20  and trace device (Mountain Bell, 616 F.2d at 1129); ordering a credit

21  card company to produce customer records (United States v. Hall, 583

22  F. Supp. 717, 722 (E.D. Va. 1984)); ordering a landlord to provide

23  access to security camera videotapes (In re Application of United

24  States for an Order Directing X to Provide Access to Videotapes

25  (Access to Videotapes), 2003 WL 22053105, at *3 (D. Md. Aug. 22,

26  2003)(unpublished)); and ordering a phone company to assist with

27  consensual monitoring of a customer's calls (In re Application of the

28  United States for an Order Directing a Provider of Communication

9

1   _Services to Provide Technical Assistance to the DEA_, 2015 WL 5233551,

2   at *4-5 (D.P.R. Aug. 27, 2015)).  The government is also aware of

3   multiple other unpublished orders in this district and across the

4   country compelling Apple to assist in the execution of a search

5   warrant by accessing the data on devices running earlier versions of

6   iOS, orders with which Apple complied.[5]  In fact, as noted above,

7   Apple has long recognized this application, and has complied with

8   search warrants compelling Apple to extract data from older iOS

9   devices locked with a passcode.  Until last year, Apple did not

10  dispute any such order.

11       In _New York Telephone Co._, the Supreme Court considered three

12  factors in concluding that the issuance of the All Writs Act order to

13  the phone company was appropriate.  First, it found that the phone

14  company was not "so far removed from the underlying controversy that

15  its assistance could not be permissibly compelled."  _Id._ at 174.

16  Second, it concluded that the order did not place an undue burden on

17  the phone company.  _See id._ at 175.  Third, it determined that the

18  assistance of the company was necessary to achieve the purpose of the

19  warrant.  _See id._  As set forth below, each of these factors supports

20  the order issued in this case.

21            2.   _Apple is not "far removed" from this matter_

22       First, Apple is not "so far removed from the underlying

23  controversy that its assistance could not be permissibly compelled."

24  _____

25       [5] In litigation pending before a Magistrate Judge in the Eastern
    District of New York, that court _sua sponte_ raised the issue of
26  whether it had authority under the All Writs Act to issue a similar
    order.  That out-of-district litigation remains pending without any
27  issued orders, nor would any such order be binding on this Court.  In
    any event, that litigation represents a change in Apple's willingness
28  to access iPhones operating prior iOS versions, not a change in
    Apple's technical ability.

                                    10

1   Apple designed, manufactured and sold the SUBJECT DEVICE, and wrote
2   and owns the software that runs the phone — which software is
3   preventing the search for evidence authorized by the warrant.
4   Indeed, Apple has positioned itself to be essential to gaining access
5   to the SUBJECT DEVICE or any other Apple device, and has marketed its
6   products on this basis.  See, e.g., Apple's Security Guide,
7   www.apple.com/business/docs/iOS_Security_Guide.pdf.  Apple designed
8   and restricts access to the code for the auto-erase function — the
9   function that makes the data on the phone permanently inaccessible
10  after multiple failed passcode attempts.  This feature effectively
11  prevents the government from performing the search for evidence
12  authorized by the warrant without Apple's assistance.  The same
13  software Apple is uniquely able to modify also controls the delays
14  Apple implemented between failed passcode attempts - which makes the
15  process take too long to enable the access ordered by the Court.
16  Especially but not only because iPhones will only run software
17  cryptographically signed by Apple, and because Apple restricts access
18  to the source code of the software that creates these obstacles, no
19  other party has the ability to assist the government in preventing
20  these features from obstructing the search ordered by the Court
21  pursuant to the warrant.  Just because Apple has sold the phone to a
22  customer and that customer has created a passcode does not mean that
23  the close software connection ceases to exist; Apple has designed the
24  phone and software updates so that Apple's continued involvement and
25  connection is required.

26      Apple is also not made "far removed" by the fact that it is a
27  non-government third party.  While New York Telephone Co. and
28  Mountain Bell involved public utilities, limiting All Writs Act

1  orders to public utilities is inconsistent with the broad scope of
2  judicial authority under the All Writs Act.  New York Telephone Co.
3  emphasized that "the Company's facilities were being employed to
4  facilitate a criminal enterprise on a continuing basis[,]" and the
5  company's noncompliance "threatened obstruction of an investigation
6  which would determine whether the Company's facilities were being
7  lawfully used."  434 U.S. at 174.  In Mountain Bell, the Ninth
8  Circuit emphasized that its decision "should not be read to authorize
9  the wholesale imposition upon private, third parties of duties
10  pursuant to search warrants," 616 F.2d at 1132, but Apple is not a
11  random entity summoned off the street to offer assistance, nor is it
12  the target of the investigation.  Where Apple designed its software
13  and that design interferes with the execution of search warrants,
14  where it manufactured and sold a phone used by an ISIL-inspired
15  terrorist, where it owns and licensed the software used to further
16  the criminal enterprise, where it retains exclusive control over the
17  source code necessary to modify and install the software, and where
18  that very software now must be used to enable the search ordered by
19  the warrant, compulsion of Apple is permissible under New York
20  Telephone Co.

21       Moreover, other courts have directed All Writs Act orders based
22  on warrants to entities that are not public utilities.  For example,
23  neither the credit card company in Hall nor the landlord in Access to
24  Videotapes was a public utility.  See Hall, 583 F. Supp. at 722;
25  Access to Videotapes, 2003 WL 22053105, at *3.  Apple's close
26  relationship to the iPhone and its software, both legally and
27  technically — which are the produce of Apple's own design — makes
28

1  compelling assistance from Apple a permissible and indispensable

2  means of executing the warrant.

3          3.    <u>The Order does not place an unreasonable burden on</u>
   <u>Apple</u>

4

5      The Order has also not placed any unreasonable burden on Apple.

6  Where, as here, compliance with the order would not require

7  inordinate effort, no unreasonable burden can be found.  <u>See</u> <u>New York</u>

8  <u>Telephone Co.</u>, 434 U.S. at 175 (holding that All Writs Act order was

9  not burdensome because it required minimal effort by the company and

10 provided for reimbursement for the company's efforts); <u>Mountain Bell</u>,

11 616 F.2d at 1132 (rejecting telephone company's argument that

12 unreasonable burden would be imposed because of a drain on resources

13 and possibility of system malfunctions because the "Order was

14 extremely narrow in scope, restricting the operation to [electronic

15 switching system] facilities, excluding the use of manual tracing,

16 prohibiting any tracing technique which required active monitoring by

17 company personnel, and requiring that operations be conducted 'with a

18 minimum of interference to the telephone service'").

19     While the Order in this case requires Apple to provide or employ

20 modified software, modifying an operating system – which is

21 essentially writing software code in discrete and limited manner – is

22 not an unreasonable burden for a company that writes software code as

23 part of its regular business.[6]  The simple fact of having to create

24 code that may not now exist in the exact form required does not an

25 undue burden make.  In fact, providers of electronic communications

26

27     [6] Additionally, the Order provides that Apple may request
   reasonable reimbursement for expenses incurred in complying with the

28 Order.

services and remote computing services are sometimes required to write some amount of code in order to gather information in response to subpoenas or other process. Additionally, assistance under the All Writs Act has been compelled to provide something that did not previously exist – the decryption of the contents of devices seized pursuant to a search warrant. In United States v. Fricosu, 841 F.Supp.2d 1232, 1237 (D. Co. 2012), a defendant's computer — whose contents were encrypted — was seized, and the defendant was ordered pursuant to the All Writs Act to assist the government in producing a copy of the unencrypted contents of the computer. Here, the type of assistance does not even require Apple to assist in producing the unencrypted contents; the assistance is rather to facilitate the FBI's attempts to test passcodes.

As noted above, Apple designs and implements all of the features discussed, writes and cryptographically signs the iOS, routinely patches security or functionality issues in its operating system, and releases new versions of its operating system to address issues. By comparison, writing a program that turns off non-encryption features that Apple was responsible for writing to begin with would not be unduly burdensome. At no point has Apple ever said that it does not have the technical ability to comply with the Order, or that the Order asks Apple to undertake an unreasonably challenging software development task. On this point, Apple's silence speaks volumes.

Moreover, contrary to Apple's recent public statement that the assistance ordered by the Court "could be used over and over again, on any number of devices" and that "[t]he government is asking Apple to hack our own users," the Order is tailored for and limited to this particular phone. And the Order will facilitate only the FBI's

14

efforts to search the phone; it does not require Apple to conduct the
search or access any content on the phone.  Nor is compliance with
the Order a threat to other users of Apple products.  Apple may
maintain custody of the software, destroy it after its purpose under
the Order has been served, refuse to disseminate it outside of Apple,
and make clear to the world that it does not apply to other devices
or users without lawful court orders.  As such, compliance with the
Order presents no danger for any other phone and is not "the
equivalent of a master key, capable of opening hundreds of millions
of locks."

     To the extent that Apple claims that the Order is unreasonably
burdensome because it undermines Apple's marketing strategies or
because it fears criticism for providing lawful access to the
government, these concerns do not establish an undue burden.  The
principle that "private citizens have a duty to provide assistance to
law enforcement officials when it is required is by no means foreign
to our traditions."  New York Telephone 434 U.S. at 176 n.24.  Apple
is not above the law in that regard, and it is perfectly capable of
advising consumers that compliance with a discrete and limited court
order founded on probable cause is an obligation of a responsible
member of the community.  It does not mean the end of privacy.  As
discussed above, the Order requires Apple to assist only in
facilitating proper, legal access based on a finding of probable
cause.  Further, the government is not seeking to "break" Apple's
encryption infrastructure or unlawfully violate the privacy of its
customers.  Instead, through proper legal process through the Court,
the government is seeking to use capabilities that Apple has
purposefully retained in a situation where the former user of the

1  phone is dead and no longer has any expectation of privacy in the

2  phone, and the owner of the phone consents both to the search of the

3  phone and to Apple's assistance thereto.

4      More generally, the burden associated with compliance with legal

5  process is measured based on the direct costs of compliance, not on

6  other more general considerations about reputations or the

7  ramifications of compliance.  See In re XXX, 2014 WL 5510865, at *2.

8  For example, an All Writs Act order may be used to require the

9  production of a handwriting exemplar, see United States v. Li, 55

10  F.3d 325, 329 (7th Cir. 1995), even though the subject may face

11  criminal sanctions as a result of his compliance.  Apple's

12  speculative policy concerns regarding possible consequences from

13  compliance with the Order in this matter merit little weight,

14  particularly when complying with a court order based on a warrant

15  serves the ends of justice and protects public safety in furthering

16  the investigative aims of a terrorism investigation.

17          4.   Apple's assistance is necessary to effectuate the
                 warrant
18

19      Apple's assistance is also necessary to effectuate the warrant.

20  In New York Telephone Co., the Court held that the order met that

21  standard because "[t]he provision of a leased line by the Company was

22  essential to the fulfillment of the purpose — to learn the identities

23  of those connected with the gambling operation — for which the pen

24  register order had been issued."  434 U.S. at 175.  The Order issued

25  here also meets this standard, as it is essential to ensuring that

26  the government is able to execute the warrant.

27      In this case, the ability to perform the search ordered by the

28  warrant on the SUBJECT DEVICE is of critical importance to an ongoing

terrorism investigation. The user of the phone, Farook, is a mass
murderer who caused the death of a large number of his coworkers and
the shooting of many others, and who built bombs and hoarded weapons
for this purpose. The FBI has been able to obtain several iCloud
backups for the SUBJECT DEVICE, and executed a warrant to obtain all
saved iCloud data associated with the SUBJECT DEVICE. Evidence in
the iCloud account indicates that Farook was in communication with
victims who were later killed during the shootings perpetrated by
Farook on December 2, 2015, and toll records show that Farook
communicated with Malik using the SUBJECT DEVICE. Importantly,
however, the most recent backup of the iCloud data obtained by the
government was dated October 19, 2015, approximately one and a half
months before the shooting. As such, there may be relevant, critical
communications and data around the time of the shooting that may
reside solely on the SUBJECT DEVICE and can only be obtained if the
government is able to search the phone as directed by the warrant.

Moreover, as discussed above, Apple's assistance is necessary
because without the access to Apple's software code and ability to
cryptographically sign code for the SUBJECT DEVICE that only Apple
has, the FBI cannot attempt to determine the passcode without fear of
permanent loss of access to the data or excessive time delay.
Indeed, after reviewing a number of other suggestions to obtain the
data from the SUBJECT DEVICE with Apple, technicians from both Apple
and the FBI agreed that they were unable to identify any other
methods – besides that which is now ordered by this Court – that are
feasible for gaining access to the currently inaccessible data on the

1    SUBJECT DEVICE.[7]  There can thus be no question that Apple's

2    assistance is necessary, and that the Order was therefore properly

3    issued.

4              5.   Apple's Potential Marketing Concerns Provide
                    Insufficient Grounds to Disregard a Duly Issued Court
5                   Order Following a Warrant Based on a Finding of
                    Probable Cause
6

7         To the extent that Apple objects on the grounds that it would

8    undermine its marketing strategy to comply with this Court's Order,

9    or that it has an overall objection to anything that enables lawful

10   access by the government to encrypted information, the government

11   believes these objections are irrelevant and not legally cognizable

12   before this Court.

13        First, in this case, the government seeks to search the SUBJECT

14   DEVICE pursuant to a validly-issued search warrant, and a validly-

15   issued All Writs Act Order.  The government shares Apple's stated

16   concern that "information needs to be protected from hackers and

17   _____

18        [7] The four suggestions that Apple and the FBI discussed (and
     their deficiencies) were: (1) to obtain cell phone toll records for
19   the SUBJECT DEVICE (which, while the government has of course done
     so, is insufficient because there is far more information on the
20   SUBJECT DEVICE than simply toll records); (2) to determine if any
     computers were paired with the SUBJECT DEVICE to obtain data (which
21   the government has determined that none were); (3) to attempt an
     auto-backup of the SUBJECT DEVICE with the related iCloud account
22   (which would not work in this case because neither the owner nor the
     government knew the password to the iCloud account, and the owner, in
23   an attempt to gain access to some information in the hours after the
     attack, was able to reset the password remotely, but that had the
24   effect of eliminating the possibility of an auto-backup); and (4)
     obtaining previous back-ups of the SUBJECT DEVICE (which the
25   government has done, but is insufficient because these backups end on
     October 19, 2015, nearly one-and-a-half months prior to the IRC
26   shooting incident, and also back-ups do not appear to have the same
     amount of information as is on the phone itself).  After subsequent
27   conversations, though, Apple conceded that none of these suggestions
     would work to execute the search warrant or to sufficiently obtain
28   the information sought.

                                    18

criminals who want to access it, steal it, and use it without our
knowledge or permission." See Exhibit 1.  The Order at issue does
not compromise that interest.  This is not a situation of protecting
the owner and user of this particular device against unauthorized or
unlawful access – here, the owner consented to the government
accessing it.   Nor is it about protecting Apple's customers from the
government "intercept[ing] [their] messages, access[ing] [their]
health records or financial data, track[ing] [their] location, or
even access [their] phone's microphone or camera without [their]
knowledge" or from "hackers and criminals who want to access
[personal information], steal it, and use it without our knowledge or
permission."  What is at stake are two judicially issued orders: one
based on a finding of probable cause, approved by this Court,
permitting the government to search one telephone of an individual
suspected of being involved in a terrorist attack that killed 14
Americans and wounded 22 others on our own soil, the other directing
Apple to provide limited assistance it is uniquely qualified to
provide to effectuate that order.

     Second, the assistance ordered is not a "back door" or a "hack"
to all of Apple's encryption software.  That is an unwarranted and
inaccurate characterization.  As was made plain in the government's
application for the All Writs Act Order, the government asks that
Apple assist in the execution of a search warrant using the
capabilities that Apple has retained along within its encryption
software, such that the government can attempt to determine the
passcode without the additional, non-encryption features that Apple
has coded into its operating system, for the SUBJECT DEVICE only.  In
sum, the government seeks the ability to make multiple attempts at

19

1   determining the passcode without risk that the data subject to search
2   under the warrant would be rendered permanently inaccessible after 10
3   wrong attempts.  This aspect of the Order is no more or less than
4   what a user has the ability to do if the auto-erase function is
5   turned off.  Moreover, the software required is no more of a "hack"
6   or a provision of dangerous malware than any update Apple or other
7   providers send to a phone.  Indeed, it is less so because the
8   software requested would not reside permanently on the SUBJECT
9   DEVICE, and Apple can retain control over it entirely.  The Order
10  does nothing regarding the encryption aspect of the operating
11  software, but instead implicates only the non-encryption additional
12  features that Apple has programmed.

13       Moreover, to the extent that Apple has concerns about turning
14  over software to the government so that the government can run the
15  passcode check program, the Order permits Apple to take possession of
16  the SUBJECT DEVICE to load the programs in its own secure location,
17  similar to what Apple has done for years for earlier operating
18  systems, and permit the government to make its passcode attempts via
19  remote access.  In this fashion, just as with Apple's own already-
20  existing operating systems and software, no one outside Apple would
21  have access to the software required by the Order unless Apple itself
22  chose to share it.  This eliminates any danger that the software
23  required by the Order would go into the "wrong hands" and lead to
24  criminals' and bad actors' "potential to unlock any iPhone in
25  someone's physical possession."

26       Third, marketing or general policy concerns are not legally
27  cognizable objections to the Order.  As discussed above, the analysis
28  of whether a court order presents an unreasonable burden is focused

1  on the direct costs of compliance, not whether the party strongly

2  disagrees with the concept of complying.  This Court should not

3  entertain an argument that fulfilling basic civic responsibilities of

4  any American citizen or company – complying with a lawful court order

5  – could be obviated because that company prefers to market itself as

6  providing privacy protections that make it infeasible to comply with

7  court-issued warrants.

8        6.   Public Policy Favors Enforcing of the Order

9       Strong public policy interests favor enforcing the All Writs Act

10  Order in this matter.  In New York Telephone Co., the Supreme Court

11  emphasized "the clear indication by Congress that the pen register is

12  a permissible law enforcement tool."  434 U.S. at 176.  Here, this

13  matter involves the most fundamental investigative tool of all, the

14  search warrant.  Its use is enshrined in the text of the Constitution

15  and explicitly endorsed by Congress.  See U.S. Const. amend. IV ("no

16  Warrants shall issue, but upon probable cause"); 18 U.S.C. § 3103a(a)

17  ("a warrant may be issued to search for and seize any property that

18  constitutes evidence of a criminal offense").  Recently, in Riley v.

19  California, 134 S. Ct. 2473, 2495 (2014), the Supreme Court set the

20  standard for what law enforcement must do to search a cell phone

21  seized incident to arrest:  "get a warrant."  Here, the government

22  has obtained a warrant to search the phone of a mass murderer, but

23  unless this Court enforces the Order requiring Apple's assistance,

24  the warrant will be meaningless.

25      B.   **Congress has Not Limited this Court's Authority to Issue an**

          **All Writs Act Order to Apple**

26

27       Based on the government's discussions with Apple, Apple's public

28  statement, and the litigation pending in the Eastern District of New

York, it appears Apple is arguing that it is justified in refusing to comply with the Order because the All Writs Act has been limited by Congress. This argument fails because there is no statute that specifically addresses the issue of Apple's assistance, and the absence of such a specific statute cannot be read as a decision to limit existing authority. Thus, the Order was an appropriate execution of this court's jurisdiction in this matter.

        1.   <u>No statute addresses data extraction from a passcode-locked cell phone</u>

The Supreme Court has made clear that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute[,]" such that courts may not rely on the All Writs Act "[w]here a statute specifically addresses the particular issue at hand[.]" <u>Pennsylvania Bureau of Correction</u>, 474 U.S. at 43. In this case, no other statute addresses the procedures for requiring Apple to extract data from a passcode-locked iPhone, so <u>Pennsylvania Bureau of Correction</u> provides no basis for denying the government's application for an All Writs Act Order in this case.

In particular, neither Federal Rule of Criminal Procedure 41 nor the Communications Assistance for Law Enforcement Act ("CALEA"), 47 U.S.C. § 1002, "specifically addresses" — or even vaguely addresses — the duty of Apple to assist in extracting data from a passcode-locked cell phone in order to permit the government to execute a validly issued search warrant. CALEA requires telecommunications carriers to retain the capability to comply with court orders for real-time interceptions and call-identifying information (data "in motion").[8]

---

[8] For example, for the contents of communications, CALEA requires telecommunications carriers to be able "to intercept" wire *(footnote cont'd on next page)*

22

1   Id.  By contrast, this case involves evidence already stored on a

2   cell phone (data "at rest").  Here, Apple is not acting as a

3   telecommunications carrier, and the Order concerns access to stored

4   data rather than real-time interceptions and call-identifying

5   information.  Put simply, CALEA is entirely inapplicable to the

6   present dispute and does not limit this Court's authority under the

7   All Writs Act to require Apple to assist the government in executing

8   a search warrant.[9]

9       New York Telephone Co. further illustrates that it is

10  appropriate for a court to rely on the All Writs Act unless a statute

11  specifically addresses the particular issue at hand.  When the Court

12  decided New York Telephone Co. in 1977, Congress had enacted Title

13  III for intercepting the contents of communications, but it had not

14  yet enacted the closely-related pen register statute for acquiring

15  non-content information.  See Electronic Communications Privacy Act

16  of 1986 § 301, 100 Stat. 1848 (enacting pen register statute).

17  Despite the existence of a statute regulating government access to

18  information closely related to pen registers, but not specifically

19  _____

20  and electronic communications carried by the carrier. 47 U.S.C.
    § 1002(a)(1).  CALEA incorporates the definition of "intercept" from
21  the Wiretap Act, see 47 U.S.C. § 1001(1) & 18 U.S.C. § 2510(4), and
    that definition encompasses only information acquired during
22  transmission, not while it is in storage.  Konop v. Hawaiian
    Airlines, Inc., 302 F.3d 868, 877-878 (9th Cir. 2002).

23      [9] Furthermore, nothing in CALEA prevents a court from ordering a
    telecommunications carrier to decrypt communications that the carrier
24  is capable of decrypting.  See 47 U.S.C. § 1002(b)(3).  When Congress
    enacted CALEA, it understood that existing provider-assistance
25  provisions required a provider to decrypt communications when it was
    able to do so.  Both the House and Senate reports for CALEA stated
26  that "telecommunications carriers have no responsibility to decrypt
    encrypted communications that are the subject of court-ordered
27  wiretaps, unless the carrier provided the encryption and can decrypt
    it."  H.R. Rep. No. 103-827(I), at 24 (1994); S. Rep. No. 103-402, at
28  24 (1994).

                                    23

addressing pen registers, the Supreme Court held that an All Writs
Act order could be issued in support of a warrant for a pen register.
Under this reasoning, CALEA is no barrier to the Order in this case.

### 2.   Congressional inaction does not deprive courts of their authority under the All Writs Act

The current lack of congressional action regarding encryption-
related issues does not deprive this Court of its authority to issue
the Order in this case.   Under Pennsylvania Bureau of Correction,
courts may not rely on the All Writs Act where "a statute
specifically addresses" an issue.   But the opposite is not true.
Courts may not categorically refuse to rely on the All Writs Act – as
Apple would seemingly want the Court to do – where Congress has
declined to legislate.   Court authority to issue All Writs Act orders
in support of warrants has been clearly established since the Supreme
Court decided New York Telephone Co. in 1977.   Congress may choose to
expand or limit this authority, but it must do so through enactment
of legislation.

The Supreme Court and the Ninth Circuit have repeatedly
cautioned that "Congressional inaction lacks persuasive significance
because several equally tenable inferences may be drawn from such
inaction[.]"   General Construction Company v. Castro, 401 F.3d 963,
970-71 (9th Cir. 2005) (quoting Central Bank of Denver v. First
Interstate Bank of Denver, 511 U.S. 164, 187 (1994)); see also United
States v. Craft, 535 U.S. 274, 287 (2002).

Here, there are many possible explanations for congressional
inaction on encryption, including that Congress is satisfied with
existing authorities, or that Congress has not yet reached agreement
on whether or how much to expand existing authorities.   These

1   possibilities provide no basis for restricting legal authorities that

2   existed before the beginning of the debate.[10]   Because courts do not

3   lose an authority to issue orders under the All Writs Act merely

4   because Congress does not subsequently enact legislation endorsing or

5   expanding that authority, this Court retains authority to issue an

6   All Writs Act Order consistent with New York Telephone Co.

7   **IV.   CONCLUSION**

8       This Court issued a valid Order pursuant to the All Writs Act

9   requiring Apple to assist the United States in enabling the search

10  for evidence pursuant to a lawful search warrant.  Apple has publicly

11  stated that it will oppose this Order, and has not agreed to comply.

12  For the foregoing reasons, the government respectfully requests that

13  this Court issue an Order compelling Apple to comply.

14

15

16

17

18

19

20

21

22

23

24

---

25  [10] Granting legal force to statements or proposals by individual
    members of Congress during the course of congressional debate risks
26  absurd results.  Congress routinely debates and fails to act on
    important issues, but the mere debate does not restrict existing
27  legal authority. Under the Constitution, Congress speaks with legal
    force only when it speaks as one body, through bicameralism and
28  presentment — i.e. when it passes a bill.

# EXHIBIT 1

February 16, 2016

# A Message to Our Customers

The United States government has demanded that Apple take an unprecedented step which threatens the security of our customers. We oppose this order, which has implications far beyond the legal case at hand.

This moment calls for public discussion, and we want our customers and people around the country to understand what is at stake.

## The Need for Encryption

Smartphones, led by iPhone, have become an essential part of our lives. People use them to store an incredible amount of personal information, from our private conversations to our photos, our music, our notes, our calendars and contacts, our financial information and health data, even where we have been and where we are going.

All that information needs to be protected from hackers and criminals who want to access it, steal it, and use it without our knowledge or permission. Customers expect Apple and other technology companies to do everything in our power to protect their personal information, and at Apple we are deeply committed to safeguarding their data.

Compromising the security of our personal information can ultimately put our personal safety at risk. That is why encryption has become so important to all of us.

For many years, we have used encryption to protect our customers' personal data because we believe it's the only way to keep their information safe. We have even put that data out of our own reach, because we believe the contents of your iPhone are none of our business.

## The San Bernardino Case

We were shocked and outraged by the deadly act of terrorism in San Bernardino last December. We mourn the loss of life and want justice for all those whose lives were affected. The FBI asked us for help in the days following the attack, and we have worked hard to support the government's efforts to solve this horrible crime. We have no sympathy for terrorists.

When the FBI has requested data that's in our possession, we have provided it. Apple complies with valid subpoenas and search warrants, as we have in the San Bernardino case. We have also made Apple engineers available to advise the FBI, and we've offered our best ideas on a number of investigative options at their disposal.

We have great respect for the professionals at the FBI, and we believe their intentions are good. Up to this point, we have done everything that is both within our power and within the law to help them. But now the U.S. government has asked us for something we simply do not have, and something we consider too dangerous to create. They have asked us to build a backdoor to the iPhone.

Specifically, the FBI wants us to make a new version of the iPhone operating system, circumventing several important security features, and install it on an iPhone recovered during the investigation. In the wrong hands, this software — which does not exist today — would have the potential to unlock any iPhone in someone's physical possession.

The FBI may use different words to describe this tool, but make no mistake: Building a version of iOS that bypasses security in this way would undeniably create a backdoor. And while the government may argue that its use would be limited to this case, there is no way to guarantee such control.

## The Threat to Data Security

Some would argue that building a backdoor for just one iPhone is a simple, clean-cut solution. But it ignores both the basics of digital security and the significance of what the government is demanding in this case.

In today's digital world, the "key" to an encrypted system is a piece of information that unlocks the data, and it is only as secure as the protections around it. Once the information is known, or a way to bypass the code is revealed, the encryption can be defeated by anyone with that knowledge.

The government suggests this tool could only be used once, on one phone. But that's simply not true. Once created, the technique could be used over and over again, on any number of devices. In the physical world, it would be the equivalent of a master key, capable of opening hundreds of millions of locks — from restaurants and banks to stores and homes. No reasonable person would find that acceptable.

The government is asking Apple to hack our own users and undermine decades of security advancements that protect our customers — including tens of millions of American citizens — from sophisticated hackers and cybercriminals. The same engineers who built strong encryption into the iPhone to protect our users would, ironically, be ordered to weaken those protections and make our users less safe.

We can find no precedent for an American company being forced to expose its customers to a greater risk of attack. For years, cryptologists and national security experts have been warning against weakening encryption. Doing so would hurt only the well-meaning and law-abiding citizens who rely on companies like Apple to protect their data. Criminals and bad actors will still encrypt, using tools that are readily available to them.

## A Dangerous Precedent

Rather than asking for legislative action through Congress, the FBI is proposing an unprecedented use of the All Writs Act of 1789 to justify an expansion of its authority.

The government would have us remove security features and add new capabilities to the operating system, allowing a passcode to be input electronically. This would make it easier to unlock an iPhone by "brute force," trying thousands or millions of combinations with the speed of a modern computer.

The implications of the government's demands are chilling. If the government can use the All Writs Act to make it easier to unlock your iPhone, it would have the power to reach into anyone's device to capture their data. The government could extend this breach of privacy and demand that Apple build surveillance software to intercept your messages, access your health records or financial data, track your location, or even access your phone's microphone or camera without your knowledge.

Opposing this order is not something we take lightly. We feel we must speak up in the face of what we see as an overreach by the U.S. government.

We are challenging the FBI's demands with the deepest respect for American democracy and a love of our country. We believe it would be in the best interest of everyone to step back and consider the implications.

While we believe the FBI's intentions are good, it would be wrong for the government to force us to build a backdoor into our products. And ultimately, we fear that this demand would undermine the very freedoms and liberty our government is meant to protect.

Tim Cook

| Shop and Learn | Apple Store | For Education | Account | About Apple |
|---|---|---|---|---|
| Mac | Find a Store | Apple and Education | Manage Your Apple ID | Apple Info |
| iPad | Genius Bar | Shop for College | Apple Store Account | Job Opportunities |
| iPhone | Workshops and Learning | | iCloud.com | Press Info |
| Watch | Youth Programs | **For Business** | | Investors |
| TV | Apple Store App | iPhone in Business | **Apple Values** | Events |
| Music | Refurbished | iPad in Business | Environment | Hot News |
| iTunes | Financing | Mac in Business | Supplier Responsibility | Legal |
| iPod | Reuse and Recycling | Shop for Your Business | Accessibility | Contact Apple |
| Accessories | Order Status | | Privacy | |
| Gift Cards | Shopping Help | | Inclusion and Diversity | |
| | | | Education | |

More ways to shop: visit an Apple Store, call 1-800-MY-APPLE, or find a reseller.

Copyright © 2016 Apple Inc. All rights reserved.    Privacy Policy    Terms of Use    Sales and Refunds    Site Map                    United States

## CERTIFICATE OF SERVICE

I, **REBECCA EVANS,** declare:

That I am a citizen of the United States and resident or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, CA 92501; that I am over the age of eighteen years, and am not a party to the above-entitled action; That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy:

**GOVERNMENT'S MOTION TO COMPEL APPLE INC. TO COMPLY WITH THIS COURT'S FEBRUARY 16, 2016 ORDER COMPELLING ASSISTANCE IN SEARCH; EXHIBIT**

**[X]** By electronic mail as follows:

| | |
|---|---|
| Mr. Theodore B. Olson<br>Gibson, Dunn & Crutcher LLP<br>tolson@gibsondunn.com | Mr. Theodore J. Boutrous Jr.<br>Gibson, Dunn & Crutcher LLP<br>tboutrous@gibsondunn.com |
| Ms. Nicola T. Hanna<br>Gibson, Dunn & Crutcher LLP<br>nhanna@gibsondunn.com | Mr. Eric D. Vandevelde<br>Gibson, Dunn & Crutcher LLP<br>evandevelde@gibsondunn.com |

This Certificate is executed on **February 19, 2016**, in Riverside, California. I certify under penalty of perjury that the foregoing is true and correct.

REBECCA EVANS