THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
NICOLA T. HANNA, SBN 130694
  nhanna@gibsondunn.com
ERIC D. VANDEVELDE, SBN 240699
  evandevelde@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

THEODORE B. OLSON, SBN 38137
  tolson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

MARC J. ZWILLINGER*
  marc@zwillgen.com
JEFFFREY G. LANDIS*
  jeff@zwillgen.com
ZWILLGEN PLLC
1900 M Street N.W., Suite 250
Washington, D.C. 20036
Telephone: 202.706.5202
Facsimile: 202.706.5298
*Pro Hac Vice Admission Pending

Attorneys for Apple Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE SEIZED DURING THE EXECUTION OF A SEARCH WARRANT ON A BLACK LEXUS IS300, CALIFORNIA LICENSE PLATE 35KGD203 | ED No. CM 16-10 (SP)<br><br>**DECLARATION OF LISA OLLE IN SUPPORT OF APPLE INC'S MOTION TO VACATE ORDER COMPELLING APPLE INC. TO ASSIST AGENTS IN SEARCH, AND OPPOSITION TO GOVERNMENT'S MOTION TO COMPEL ASSISTANCE**<br><br>**Hearing:**<br>Date:  March 22, 2016<br>Time:  1:00 p.m.<br>Place:  Courtroom 3 or 4<br>Judge:  Hon. Sheri Pym |

Gibson, Dunn & Crutcher LLP

I, Lisa Olle, declare:

1. I am over the age of eighteen years and am competent and authorized to make this declaration. I have personal knowledge of the facts set forth below. If called as a witness, I would and could testify to the statements and facts contained herein, all of which are true and accurate to the best of my knowledge and belief.

2. I have worked as an attorney at Apple for more than eight years. Prior to Apple, I worked as an attorney at Perkins Coie LLP. My current title is Manager, Global Privacy & Law Enforcement Compliance Team. My responsibilities include overseeing Apple's response to legal requests for customer data that Apple receives from international, federal, state, and local law enforcement agencies.

3. I attended University of California, Berkeley, where I obtained a Bachelor of Arts degree in Legal Studies and attended University of California, Boalt Hall School of Law, where I obtained a Juris Doctor.

4. I oversaw Apple's response to the legal requests that Apple received related to the December 2, 2015 shooting in San Bernardino, California.

5. On Saturday, December 5, 2015, Apple's emergency 24/7 call center received a call at approximately 2:46 a.m. PST requesting information relating to the case. Throughout that day, Apple employees were in regular communication with the FBI regarding its investigation. The same day, Apple received legal process seeking customer or subscriber information regarding three names and nine specific accounts. In response to that request, Apple made two productions of information that same day.

6. Throughout the investigation, I and other Apple representatives, including a senior engineer, continually made ourselves available to the government, on a 24/7 basis, participating in teleconferences, providing technical assistance, answering questions from the FBI, and suggesting potential alternatives for the government to attempt to obtain data from the Subject Device.

7. On Sunday, December 6, 2015, Apple received a search warrant for information relating to three accounts, including, but not limited to, account

information, emails, and messages, associated with the accounts. In response to that search warrant, Apple provided the government with information in Apple's possession that same day.

8. On Wednesday, December 16, 2015, Apple received legal process seeking customer or subscriber information regarding one name and seven specific accounts. In response, Apple provided the government with information in Apple's possession that same day.

9. On Friday, January 22, 2016, Apple received a search warrant for the iCloud account related to the Subject Device for the same types of information as in the previous warrant. In response, Apple provided the government with information in Apple's possession on Tuesday, January 26, 2016.

10. I have reviewed the Government's *Ex Parte* Application for Order Compelling Apple Inc. to Assist Agents in Search, the Memorandum of Points and Authorities in support of that application, and the Declaration of Christopher Pluhar. I have also reviewed the Court's February 16, 2016 Order Compelling Apple Inc. to Assist Agents in Search and the Government's February 19, 2016 Motion to Compel.

11. The Court's February 16, 2016 Order granted Apple the opportunity to present information to the Court regarding the government's request, including the burden of providing the services the government seeks.

12. In addition to the technical burden of designing, creating, validating, deploying, and eradicating (or maintaining) an operating system such as the government seeks here, there would be significant additional burdens placed on Apple's law enforcement compliance team.

13. Just by way of a few examples, for each device, the law enforcement compliance team would need to arrange to receive, safeguard and deliver the device to the Apple engineers responsible for creating and deploying the operating system. The law enforcement compliance team would also need to preserve and log the chain of custody for the device the entire time it was in Apple's possession. Once the operating

system was created and deployed on the device, someone in the law enforcement compliance group would then need to liaise with the relevant law enforcement agency to create the ability for that agency to submit passcodes to the "hacked" device. Based on past experience, this will likely involve technical escalations where Apple personnel will need to provide law enforcement with technical guidance and assistance regarding how to submit passcodes to the device. Once law enforcement (presumably) gains access to the relevant device, the Apple law enforcement compliance team would then need to transmit any data on the device, and/or the device itself to law enforcement.

14.  I believe that Apple would likely create one or two secure facilities with security measures akin to a those used in a Sensitive Compartmented Information Facility ("SCIF"), where all work on a device would need to be performed and the device would need to be stored. Access to such facilities would need to be tightly controlled and monitored around the clock.

15.  Each year Apple complies with thousands of lawful requests for data and information from international, federal, state, and local law enforcement agencies.

16.  Given my background and experience, I believe that if Apple were required to comply with the order in this case, it would receive similar orders from other law enforcement agencies, and Apple would need to hire people whose sole function would be to assist with processing and effectuating such orders. These people would have no other necessary business or operations function at Apple. They would likely include paralegals, and engineers or forensic specialists who were dedicated full time to preparing for and testifying at trials and hearings. This would be in addition to whatever additional personnel would be necessary to design, create,

validate, deploy, and eradicate (or maintain and protect) the operating system itself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of February 2016 in Sunnyvale, California.

By: /s/ Lisa Olle
Lisa Olle
Manager, Global Privacy & Law Enforcement Compliance Team

Apple Inc.