David LaBahn (State Bar No. 128930)
**ASSOCIATION OF PROSECUTING ATTORNEYS, INC.**
1615 L Street NW, Suite 1100
Washington, D.C. 20036
Phone:  (202) 861-2481
Email:  david.labahn@apainc.com

Joseph V. DeMarco
Urvashi Sen
**DEVORE & DEMARCO LLP**
99 Park Avenue, Suite 1100
New York, New York 10016
Phone:  (212) 922-9499
Fax:       (212) 922-1799
Email:  jvd@devoredemarco.com
            usen@devoredemarco.com

Attorneys for *Amicus Curiae*
*Federal Law Enforcement Officers Association, the Association of*
*Prosecuting Attorneys, Inc., and the National Sheriffs' Association*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

ED No. CM 16-10-SP

IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE SEIZED DURING THE EXECUTION OF A SEARCH WARRANT ON A BLACK LEXIS IS300, CALIFORNIA LICENSE PLATE 35KGD203

**BRIEF OF *AMICI CURIAE* FEDERAL LAW ENFORCEMENT OFFICERS ASSOCIATION, ASSOCIATION OF PROSECUTING ATTORNEYS, INC., AND NATIONAL SHERIFFS' ASSOCIATION IN SUPPORT OF THE GOVERNMENT'S MOTION TO COMPEL APPLE, INC. TO COMPLY WITH THIS COURT'S FEBRUARY 16, 2016 ORDER COMPELLING ASSISTANCE IN SEARCH**

Hearing Date:   March 22, 2016
Hearing Time:   1:00 p.m.
Courtroom:        3 or 4
Judge:               Hon. Sheri Pym

# TABLE OF CONTENTS

Statement of Interest of *Amici Curiae*..................................................1

Facts and Summary of the Argument.....................................................3

Argument................................................................................................4

    I.    Apple's Refusal to Provide Reasonable Assistance to the
          Government Hinders Everyday Law Enforcement and Endangers
          Public Safety ................................................................4

    II.   A Ruling in Favor of Apple Here Will Have a Chilling Effect on
          Public Assistance to Law Enforcement ...................................12

Conclusion............................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Babington v. Yellow Taxi Corp.*,
    164 N.E. 726 (N.Y. 1928) ..................................................... 12

*In the Matter of Search of an Apple iPhone Seized During Execution
    of a Search Warrant on a Black Lexus IS300, Cal. License
    Plate 35KGD203*, No. ED 15-0451M, 2016 WL 618401
    (C.D. Cal. Feb. 16, 2016).........................................................3

*Quarles and Butler*,
    158 U.S. 532 (1895) ...........................................................12

*Roviaro v. United States*,
    353 U.S. 53 (1957) .............................................................12

*State v. Floyd*,
    584 A.2d 1157 (Conn. 1991)..................................................12

*United States v. New York Telephone Co.*
    434 U.S. 159 (1977)......................................................12, 13

**Statutes**

28 U.S.C. § 1651……………………………………...…………………….....13

Cal. Penal Code § 150……………………………………………………....12

**Other Authorities**

Apple Inc., Privacy – Government Information Requests – Apple,
    http://www.apple.com/privacy/government-information-
    requests/ (last visited Feb. 29, 2016) …………………….………….....10

*The Encryption Tightrope: Balancing Americans' Security and*
    *Privacy: Hearing Before the H. Judiciary Comm.*, 114th
    Cong. 6 (2016) (written testimony of Cyrus R. Vance, Jr.,
    N.Y. County Dist. Attorney)……………………………….…........5, 6

Lori Hinnant & Karl Ritter, *Discarded Cell Phone Led to Paris*
    *Attacks Ringleader*, Associated Press, Nov. 19, 2015................................10

New York County District Attorney's Office, Report of
    the Manhattan District Attorney's Office on
    Smartphone Encryption and Public Safety 9 (Nov.
    18, 2015) ("NY DA's Report") …………………….......6, 7, 8, 9, 10

NPR, *It's Not Just The iPhone Law Enforcement Wants To*
    *Unlock*, Feb. 21, 2016, http://www.npr.org/2016/02/21/
    467547180/it-s-not-just-the-iphone-law-enforcement-
    wants-to-unlock (last visited Feb. 25, 2016)…………….………....…..5

Peter Holley, *A Locked iPhone May Be the Only Thing Standing*
    *Between Police and This Woman's Killer*, Wash. Post,
    Feb. 26, 2016...............................................................................................9

## STATEMENT OF INTEREST OF *AMICI CURIAE*

The Federal Law Enforcement Officers Association ("FLEOA"), a volunteer organization founded in 1977, is the largest nonpartisan, nonprofit professional association exclusively representing federal law enforcement officers. FLEOA represents more than 26,000 uniformed and non-uniformed federal law enforcement officers from over 65 different agencies. FLEOA is a charter member of the Department of Homeland Security Federal Law Enforcement Advisory Board; holds two seats on the Congressional Badge of Bravery Federal Board; and serves on the Executive Board of the National Law Enforcement Officers Memorial Fund and the National Law Enforcement Steering Committee. FLEOA provides a legislative voice for the federal law enforcement community and monitors legislative and other legal issues that may impact federal law enforcement officers.

The Association of Prosecuting Attorneys, Inc. ("APA") is a national not-for-profit organization headquartered in Washington, D.C. and made up of elected and appointed prosecuting attorneys from throughout the nation. The APA provides valuable resources such as training and technical assistance to prosecutors in an effort to develop proactive and innovative prosecutorial practices that prevent crime, ensure equal justice, and help make our communities safer. The APA also acts as a global forum for the exchange of ideas, allowing prosecutors to collaborate with all criminal justice partners, providing timely and effective technical assistance as well as access to technology for the enhancement of the prosecutorial function. The APA serves as an advocate for prosecutors on emerging issues related to the administration of justice and development of partnerships.

Chartered in 1940, the National Sheriffs' Association ("NSA") is a professional association headquartered in Alexandria, Virginia, and dedicated to serving the Office of Sheriff and its affiliates through police education, police

1  training, and general law enforcement information resources.  The NSA represents
2  thousands of sheriffs, deputies and other law enforcement and public safety
3  professionals, as well as concerned citizens nationwide.  The NSA has provided
4  programs for sheriffs, their deputies, chiefs of police, and others in the field of
5  criminal justice in order to enable them to perform their jobs in the best possible
6  manner and to better serve the people of their cities, counties, or other
7  jurisdictions.  The NSA has worked to forge cooperative relationships with local,
8  state, and federal criminal justice professionals across the nation to network and
9  share information about homeland security programs and projects.

10      *Amici* members are called upon on a daily basis to protect and serve the
11  public by investigating criminal activity and wrongdoing and ensuring that the
12  individuals responsible for it pay the penalty for their crimes.  In order to fulfill
13  their duties, *Amici* members must have access to all reasonable means of
14  procuring relevant evidence.  In this digital age, data stored on mobile devices has
15  proven time and again to be critical in assisting law enforcement officers to do
16  their jobs.  *Amici* and their members thus have a strong interest in ensuring that
17  the Court's February 16, 2016, Order is upheld and enforced.

18

19

20

21

22

23

24

25

26

27

28

## FACTS AND SUMMARY OF THE ARGUMENT

1
2    This is a case in which this Court issued a February 16, 2016, Order (the
3    "Order") directing Apple Inc. ("Apple") to assist in enabling the government's
4    search of the government-owned iPhone 5c used by Syed Rizwan Farook ("the
5    Terrorist") by providing "reasonable technical assistance to assist law
6    enforcement agents in obtaining access to the data" on that device.[1]  Apple has
7    refused to comply with the Order.

8    On February 19, 2016, the government filed a motion to compel Apple to
9    comply ("Government's Motion to Compel")[2], and, on February 25, 2016, Apple
10   filed an opposition to that motion and a motion to vacate the Order ("Apple's
11   Opposition").[3]  *Amici* respectfully submit this brief in support of the
12   Government's Motion to Compel.

13   *Amici* believe that the position Apple has taken is a dangerous one.  *First*,
14   Apple's refusal to provide assistance has far-reaching public safety ramifications
15   by making it difficult, and in some cases impossible, for law enforcement to fulfill

16

17   _____

18   [1] Order Compelling Apple, Inc. To Assist Agents in Search, *In the Matter of
     Search of an Apple iPhone Seized During Execution of a Search Warrant on a
19   Black Lexus IS300, Cal. License Plate 35KGD203*, No. ED 15-0451M, 2016 WL
     618401, at *1-2 (C.D. Cal. Feb. 16, 2016).
20

21   [2] Motion to Compel Apple Inc. To Comply With Court's February 16, 2016 Order
     Compelling Apple to Assist Agents In Its Search, *In the Matter of Search of an
22   Apple iPhone Seized During Execution of a Search Warrant on a Black Lexus
     IS300, Cal. License Plate 35KGD203*, ED No. CM 16-10 (SP), Dkt. 1 (C.D. Cal.
23   Feb. 19, 2016).
24

25   [3] Apple Inc's Motion To Vacate Order Compelling Apple Inc. To Assist Agents in
     Search, And Opposition To Government's Motion To Compel Assistance, *In the
26   Matter of Search of an Apple iPhone Seized During Execution of a Search
27   Warrant on a Black Lexus IS300, Cal. License Plate 35KGD203*, ED No. CM 16-
     10 (SP), Dkt. 16 (C.D. Cal. Feb. 25, 2016).
28

1    its obligation to investigate crimes, protect the public by bringing criminals to

2    justice, and enforce the law. *Second*, if Apple were to prevail, the public at large

3    may itself think twice about cooperating with law enforcement when called upon

4    to do so.

5

6                            **ARGUMENT**

7    **I.    APPLE'S REFUSAL TO PROVIDE REASONABLE**
            **ASSISTANCE TO THE GOVERNMENT HINDERS**
8            **EVERYDAY LAW ENFORCEMENT AND ENDANGERS**
            **PUBLIC SAFETY**
9

10            The Parties have extensively briefed the utility and necessity of searching

11   the cell phone used by the Terrorist on the day of the attacks in San Bernardino.

12   Yet beyond the facts of that heinous crime, a ruling which validates Apple's

13   position in this litigation can only serve to hamper the ability of *Amici* to bring

14   criminals to justice and justice to victims.  To be clear:  if Apple can refuse lawful

15   court orders to reasonably assist law enforcement, public safety *will* suffer.

16   Crimes *will* go unsolved and criminals *will* go free.  Apple's iPhones and iPads

17   are ubiquitous.  They are powerful.  They are used by criminals, as well as crime

18   victims.  And, until recently, Apple was willing to assist law enforcement in

19   executing court orders to search these devices.  But Apple has changed course.  As

20   this case illustrates, it has redesigned its iOS operating system to make its

21   products far harder to search pursuant to a warrant, and in this case decided not to

22   do what it can to help investigate the Terrorist and his murderous crimes.  These

23   decisions -- decisions made in Apple's boardroom -- are already impeding and

24   damaging investigations in law enforcement offices around the country.  As law

25   enforcement officials who are sworn to ensure public safety, and to solve crimes,

26   *Amici* are the first responders, the investigators, the law enforcers and the

27   prosecutors who, day-in and day-out, must live with Apple's decisions.  To *Amici*,

28

1    this is *not* a theoretical debate.  It is as real as a killer gone free, as real as a

2    pedophile planning for his next prey.

3          The importance of access to evidence found on iPhones, iPads, and similar

4    devices is emphasized by actual, real world examples undisputed by Apple.  For

5    example, in one big-city district attorney's office *approximately 50%* of the

6    mobile devices currently recovered during investigations are inaccessible to law

7    enforcement due to the fact that they are running iOS 8.[4]  That percentage will, of

8    course, only grow as time goes on and newer devices replace older ones.  As the

9    DA in that county put it:

> In some cases, we can't move at all.  We can't establish liability or
> responsibility because we can't access the phone.  In others, it's
> affecting our ability to gather all the evidence that's needed to make
> sure that we are making the right judgments.  And I think it's very
> important for people to understand that a prosecutor's job is to
> investigate, get all the information and then make the right judgment
> as to whether or not we can go forward.  It's also our responsibility to
> make sure that we are prosecuting the right people.  And when we
> don't have access to digital devices, we don't have all the information
> that we need to make the best judgment as to how the case should be
> handled.[5]

18   Other district attorneys throughout the country have had alarmingly similar

19   experiences with iPhones running the current operating system.  For example, last

20   year the Harris County (Texas) District Attorney's Office was unable to search

---

[4] *See The Encryption Tightrope: Balancing Americans' Security and Privacy: Hearing Before the H. Judiciary Comm.*, 114th Cong. 6 (2016) (written testimony of Cyrus R. Vance, Jr., N.Y. County Dist. Attorney) ("Vance Hearing Testimony"), at 6.

[5] NPR, *It's Not Just The iPhone Law Enforcement Wants To Unlock*, Feb. 21, 2016, http://www.npr.org/2016/02/21/467547180/it-s-not-just-the-iphone-law-enforcement-wants-to-unlock (last visited Feb. 25, 2016).

1   more than 100 encrypted (and therefore inaccessible) Apple devices from cases to
2   date, including human trafficking, violent street crimes, and sexual assaults.  In
3   2016, the number of inaccessible Apple devices for that office already numbers
4   eight to ten per month.  Similarly, in January and February of this year, the Cook
5   County (Chicago) State Attorney's office has received 30 encrypted devices it
6   could not access, and the Connecticut Division of Scientific Services has
7   encountered 46 encrypted Apple devices in criminal cases, including those
8   involving child pornography.[6]

9         Actual, real-world cases provide a window into the types of cases at stake
10  for *Amici*:

11       • **Homicide (conviction of guilty):**  *People v. Hayes*[7]:  The victim was
12         filming a video using his iPhone when he was shot and killed by the
13         defendant.  Because the iPhone was not passcode-locked, the video,
14         which captured the shooting, was recovered and admitted into
15         evidence at trial.  The defendant was convicted of murder and
16         sentenced to 35 years to life.[8]

17       • **Homicide (exoneration of innocent):**  *People v. Rosario*[9]:  A
18         detective obtained a search warrant and an unlock order for certain
19         iPhones found at the scene of a homicide.  He sent the phones to

---

21  [6] *See* Vance Hearing Testimony at 6-7.

22  [7] Indictment Number 4451/12.

24  [8] NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, REPORT OF THE MANHATTAN
    DISTRICT ATTORNEY'S OFFICE ON SMARTPHONE ENCRYPTION AND PUBLIC SAFETY
25  9 (Nov. 18, 2015),
    http://manhattanda.org/sites/default/files/11.18.15%20Report%20on%20Smartpho
26  ne%20Encryption%20and%20Public%20Safety.pdf (the "NY DA's Report").

28  [9] Indictment Number 1859/10.

Apple, which assisted in extracting data from them.  The phone data demonstrated inaccuracies in what investigators initially thought to be the timeline of events, and demonstrated that a particular suspect was not, in fact, involved in the murder.  A phone number stored in one of the iPhones was eventually linked to another individual, who later confessed and pled guilty to the killing.  He is currently serving a sentence of 17 1/2 years' imprisonment.[10]

- **Child Pornography:** *People v. Hirji*[11]: The defendant was arrested after telling a taxi driver about his interest in having sex with children and showing the driver a child pornography image.  Upon searching the defendant's iPhone pursuant to a search warrant, investigators discovered a large number of child pornography images.  The defendant was convicted of Promoting a Sexual Performance by a Child.[12]

- **Sex Trafficking:** *People v. Brown*[13]: The defendant directed a sex trafficking operation involving at least four women, using physical violence, threats of force, and psychological manipulation to coerce the women to engage in prostitution.  Evidence recovered from defendant's electronic devices contained (a) photographs showing him posing his victims for online prostitution advertisements and showing that he had "branded" multiple women with his nickname;

---

[10] NY DA's Report at 11.

[11] Supreme Court Information Number 3650/15.

[12] NY DA's Report at 9-10.

[13] Indictment Numbers 865/12, 3908/12, and 3338/13.

and (b) text messages between him and several victims confirming
that he had engaged in acts of violence against the testifying witness
and others.  The defendant was convicted of multiple counts of sex
trafficking and promoting prostitution and was sentenced to 10-20
years in prison.[14]

- **<u>Cybercrime and Identity Theft</u>:** *People v. Jacas et al.*[15] and *People v. Brahms et al.*[16]:  An iPhone was recovered from a waiter who was arrested for stealing more than 20 customers' credit card numbers by surreptitiously swiping the credit cards through a card reader that stored the credit card number and other data.  When the phone was searched pursuant to a warrant, law enforcement officials discovered text messages between the waiter and other members of the group regarding the ring's crimes.  Based in large part on information obtained from the phone, investigators were able to obtain an eavesdropping warrant, and ultimately arrested a 29-member identity theft ring, including employees of high-end restaurants who stole credit card numbers, shoppers who made purchases using counterfeit credit cards containing the stolen credit card numbers, and managers who oversaw the operation.  The group stole 100 American Express credit card numbers and property worth over $1,000,000.  All of the defendants pled guilty, and more than $1,000,000 in cash and

---

[14] NY DA's Report at 9.

[15] Indictment Number 42/12.

[16] Indictment Number 5151/11.

1   merchandise was seized and forfeited.[17]

2   - **Unlawful Surveillance:** *People v. Lema*[18]: The defendant was
3   arrested for unlawful surveillance after a police officer observed the
4   defendant using his phone to film up women's skirts (*i.e.*,
5   "upskirting"). The defendant consented to a search of his phone, but
6   the passcode he provided did not work. Investigators obtained a
7   search warrant and unlock order for the phone. The phone was sent
8   to Apple, Apple extracted data from the phone, and the phone and
9   data were returned to the prosecutor. Two "upskirting" videos were
10   found on the phone, both filmed on the date of the defendant's arrest.
11   Following the trial, at which both videos were entered into evidence,
12   the defendant was convicted as charged, of two counts of unlawful
13   surveillance.[19]

14   And in one current investigation in Louisiana, a locked iPhone's text messages
15   and other information on the device may hold the only clues to the murder of a
16   pregnant woman gunned down at the front door of her home.[20] These examples,
17   and many more, prove just how essential evidence recovered from iPhones can
18   be.[21]

[17] NY DA's Report at 10-11.

[18] Indictment Number 4117/13.

[19] NY DA's Report at 11.

[20] *See* Peter Holley, *A Locked iPhone May Be the Only Thing Standing Between Police and This Woman's Killer*, Wash. Post, Feb. 26, 2016, *available at* https://www.washingtonpost.com/news/post-nation/wp/2016/02/26/a-locked-iphone-may-be-the-only-thing-standing-between-police-and-this-womans-killer/.

[21] *Amici* have additional specific, law-enforcement sensitive examples which it

Of course, Apple's decisions also hamper crime *prevention*.  Data successfully retrieved from a cell phone after the November 2015 Paris terrorist attacks on the Bataclan concert hall, where 89 people were killed, reportedly allowed French law enforcement officials to track down the alleged ringleader, who later died in a police raid.[22]  This individual was in the process of planning yet another attack in Europe.  And lest there be any doubt about the "value-add" for criminals by Apple's recent engineering decisions and present litigation posture, *Amici* are even aware of jailhouse statements by criminals about how the new iOS encryption is a helpful "feature" for planning and committing crimes.  For example, in 2015, the New York Department of Corrections intercepted a phone call between an inmate and a friend about Apple's new, impregnable operating system, during which the inmate stated:  "*If our phone is running on the iOS 8 software, they can't open my phone.  That might be another gift from God.*"[23]  In fact, *Amici* are aware of numerous instances in which criminals who previously used one time, so-called "throwaway" or "burner" phones, have now switched to the new iPhones as the "device-of-choice" for their criminal wrongdoing.  Troublingly, Apple *even advertises and promotes* its alleged inability to help law enforcement search these devices.[24]

---

does not wish to place in the public domain.  Should the Court, however, desire this information, *Amici* will make it available.

[22]  Lori Hinnant & Karl Ritter, *Discarded Cell Phone Led to Paris Attacks Ringleader*, Associated Press, Nov. 19, 2015, *available at* http://bigstory.ap.org/article/47e613d2ad184fe4802fd76de903d4bb/french-leader-extremists-may-strike-chemical-bio-arms.

[23]  NY DA's Report at 12 (emphasis added).

[24]  Apple's website states, "On devices running iOS 8 and later versions, your personal data is placed under the protection of your passcode.  For all devices

1         To be sure, Apple has greatly assisted law enforcement in the past, helping

2    officers to unlock the very phones it is now stating it would offend privacy to help

3    search.  This assistance has been critical in a number of law enforcement cases,

4    both to prosecute criminals and to exonerate the innocent.  In this case, law

5    enforcement has no alternate means of obtaining the information they are

6    seeking[25] and the iPhone used by the Terrorist may well be as critical to the

7    resolution of this case as the devices were in the cases described above.

8         In sum, it is crystal clear that Apple's refusal to provide reasonable

9    assistance to law enforcement has real world, on-the-ground implications for

10   federal and state law enforcement officers as they do their daily jobs as well as for

11   the public they are sworn to protect.  In many instances, this assistance is critical

12   to whether or not law enforcement can bring justice and closure to victims'

13   families and, in cases such as this one, thwart everyday crime and violence as well

14   as the ever-growing threat of terrorism across the globe.

---

running iOS 8 and later versions, Apple will not perform iOS data extractions in
response to government search warrants because the files to be extracted are
protected by an encryption key that is tied to the user's passcode, which Apple
does not possess."  Apple Inc., Privacy – Government Information Requests –
Apple, http://www.apple.com/privacy/government-information-requests/ (last
visited Feb. 29, 2016).

[25] Government's Motion to Compel at 6.  It bears noting that although critics of
the Government's position here state that law enforcement should simply rely on
data that can be obtained on iCloud, as one DA has stated, even when criminals
choose to back-up their data on the cloud (and in most cases they do not), data on
an iPhone will not be backed up unless the iPhone is connected to Wifi.  *See*
Vance Hearing Testimony at 4.  In this particular case, there are indications that
the iCloud account had not been backed up since October 19, 2015.  Moreover,
Apple itself has stated that it cannot provide data that has been deleted from an
iCloud account.  *Id.*

## II.   A RULING IN FAVOR OF APPLE HERE WILL HAVE A CHILLING EFFECT ON PUBLIC ASSISTANCE TO LAW ENFORCEMENT

Justice Cardozo, in a 1928 decision while he was still a state court judge, stated: "[A]s in the days of Edward I, the citizenry may be called upon to enforce the justice of the state, not faintly and with lagging steps, but honestly and bravely and with whatever implements and facilities are convenient and at hand." *Babington v. Yellow Taxi Corp.*, 164 N.E. 726, 727 (N.Y. 1928). Almost 50 years later, Justice White echoed Cardozo's words in the Supreme Court's landmark decision, *United States v. New York Telephone Co.*, recognizing that "citizens have a *duty* to assist in enforcement of the laws." 434 U.S. 159, 175 n.24 (1977) (emphasis added); *see also Roviaro v. United States*, 353 U.S. 53, 59 (1957) (recognizing the historic obligation of citizens to assist law enforcement and to communicate their knowledge of criminal activity to law enforcement officials); *In re Quarles and Butler*, 158 U.S. 532, 535 (1895) (recognizing the duty of citizens "to assist in prosecuting, and securing the punishment of, any breach of the peace of the United States"). Indeed, as one state supreme court recognized:

> The basic concept that every citizen can be compelled to assist in the pursuit or apprehension of suspected criminals has ancient Saxon origins, predating the Norman Conquest . . . . As the responsibility for keeping the peace shifted, over the centuries, to sheriffs, constables, and eventually to trained professional police departments, the power of those law enforcement officials to command the assistance of citizens was recognized both in statutes and in the common law.

*State v. Floyd*, 584 A.2d 1157, 1166 (Conn. 1991) (upholding state statute requiring citizens to provide reasonable assistance to law enforcement) (internal citations omitted) (footnotes omitted).[26]

---

[26] *See also* Cal. Penal Code § 150 (making it an offense to "neglect[] or refuse[] to join the posse comitatus or power of the county, by neglecting or refusing to aid

1    The reasons supporting this venerable principle continue to be true today.

2  Especially in this digital age, it is now critical for public safety that technology

3  companies -- and the citizens that manage them -- cooperate with law

4  enforcement.  As the cases above recognize, this is not the first, nor will it be the

5  last, time that law enforcement enlists the assistance of citizen-managers of

6  corporations to help them ensure that the law, the bedrock of our society, is

7  followed and that our officers have the tools and information necessary to enforce

8  that law, prevent crime and protect the citizenry.

9    In *New York Telephone Co.*, the Supreme Court used the authority of the

10  All Writs Act, 28 U.S.C. § 1651(a), to order the phone company to do what it was

11  plainly able to do to assist the FBI in using its facilities and equipment to

12  apprehend a group suspected of illegal gambling.  *See* 434 U.S. at 172, 174. [27]

13

14  and assist in taking or arresting any person against whom there may be issued any

15  process, or by neglecting to aid and assist in retaking any person who, after being

16  arrested or confined, may have escaped from arrest or imprisonment, or by

    neglecting or refusing to aid and assist in preventing any breach of the peace, or

17  the commission of any criminal offense, being thereto lawfully required" to do so

18  by a law enforcement officer or a judge).

19  [27] It bears noting that the request here is even less intrusive than was the case in

20  *New York Telephone Co.*  Here, the data at issue is "at rest" -- static data that

21  exists on a phone whose owner is aware and supportive of law enforcement's

    efforts to retrieve this data.  In *New York Telephone Co.*, the data that was to be

22  accessed was wiretap data belonging to a group of illegal gamblers who were

23  unaware that the most private details of their phone conversations were being

    intercepted in real time by law enforcement.

24
    Moreover, even if it were true (which it is not, *see* Government's Motion to
25  Compel, *supra* note 2) that this particular request implicates the Fourth

26  Amendment, it is an integral part of our justice system that law enforcement, with
    appropriate authority in the form of a search warrant or court order and under
27  court supervision, may intrude upon people's privacy.  For example, with court-

28  authorized search warrants, law enforcement officers are able to enter people's

1   Today, this Court has used this same statute to order Apple to do what it is plainly

2   able to do to assist law enforcement in unlocking a cell phone used by the

3   Terrorist where permission to unlock the phone has already been granted by the

4   phone's owner (the San Bernardino County Department of Health, the Terrorist's

5   employer).[28]

6          In short, law enforcement's request, and this Court's order, is neither new

7   nor novel.  What *is* new is Apple's refusal to comply with this reasonable, court-

8   ordered request for assistance from law enforcement officials.  *Amici* are

9   concerned that were Apple to prevail in this case, the public at large may question

10  why they should be called upon to cooperate with law enforcement.  In countless

11  ways, knowable and unknowable, this will hamper *Amici's* ability to detect, deter,

12  and punish crime.

13                         **CONCLUSION**

14          *Amici* agree with the Parties that this is an important case.  It implicates

15  privacy.  It implicates security.  For many years, Apple has provided crucial and

16  commendable assistance to law enforcement.  It has been a valuable partner to

17  *Amici* in case after case.  Apple has changed course in a single -- but a crucial --

18  way.  It has created technical impediments and has refused to provide assistance

19  which it plainly can to *Amici's* execution of a court-ordered search.  That it has

20  done so in a case involving ISIS-inspired domestic terrorism is disheartening.  If

21

22  bedrooms to search for contraband; collect health records from medical offices;

23  and even, under some circumstances, search a criminal suspect's attorney's office.

24  All implicate privacy and it is hardly self-evident as to why a search of an iPhone
    is somehow "special," as Apple seems to contend.

25

26  [28] Apple has categorically stated that this Court is "a forum ill-suited to address"
    the issues in this case, and that the government should instead be seeking to

27  amend existing legislation.  *See* Apple's Opposition at 2.  This is not the law.  *See*

28  Government's Motion to Compel at 21-25.

1  upheld by the Court, however, the effects of its refusal will, for countless

2  Americans, be truly devastating.

3

4  DATED:  March 2, 2016                    ASSOCIATION OF PROSECUTING
                                           ATTORNEYS, INC.
5

6

7                                          By: _____
                                              David LaBahn
8

9                                          DEVORE & DEMARCO LLP
                                           Joseph V. DeMarco
                                           Urvashi Sen
10

11                                         Attorneys for *Amici Curiae*
                                           *Federal Law Enforcement*
12                                         *Officers Association, the Association of*
                                           *Prosecuting Attorneys, Inc. and the*
13                                         *National Sheriffs' Association*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28