1   Peter Bibring (SBN 223981)
    pbibring@aclusocal.org
2   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
3   OF SOUTHERN CALIFORNIA
    1313 West Eighth Street
4   Los Angeles, CA 90017
5   Telephone: (213) 977-9500

6   Alex Abdo
7   Esha Bhandari
    Eliza Sweren-Becker*
8   Brett Max Kaufman
9   aabdo@aclu.org
    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
10  125 Broad Street, 18th Floor
11  New York, NY 10004
    Telephone: (212) 549-2500

12
13  *Admission to the bar pending
14  Additional counsel listed on signature page
    Attorneys for Proposed Amici Curiae
15

16  **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA**
17

18  IN THE MATTER OF THE SEARCH     )   ED No. CM 16-10 (SP)
    OF AN APPLE IPHONE SEIZED       )
19  DURING THE EXECUTION OF A       )   **BRIEF OF AMICI CURIAE**
    SEARCH WARRANT ON A BLACK       )   **AMERICAN CIVIL LIBERTIES**
20  LEXUS IS300, CALIFORNIA         )   **UNION, ACLU OF NORTHERN**
    LICENSE PLATE 35KGD203.         )   **CALIFORNIA, ACLU OF**
21                                  )   **SOUTHERN CALIFORNIA, AND**
                                    )   **ACLU OF SAN DIEGO AND**
22                                  )   **IMPERIAL COUNTIES, IN**
                                    )   **SUPPORT OF APPLE, INC.**
23                                  )
                                    )
24                                  )

25                                      Hearing Date: March 22, 2016
26                                      Time: 1:00 pm
                                        Courtroom: Courtroom 3 or 4
27                                      Judge: Hon. Sheri Pym
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTERESTS OF AMICI CURIAE ........................................................................1

SUMMARY OF ARGUMENT .............................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................4

I.      The All Writs Act does not authorize the government to compel
        Apple to create and authenticate software that would allow the
        government to break into Apple's customers' devices. ...................................4

        A.      Apple is "far removed from the underlying controversy"
                because it neither possesses nor controls the information
                the government seeks. ........................................................................5

        B.      The assistance the government seeks is unreasonably
                burdensome. ........................................................................................8

        C.      The government has failed to demonstrate that the
                assistance it seeks is absolutely necessary. .......................................13

        D.      Congress has deliberately withheld the authority sought
                here. ..................................................................................................13

II.     The order the government seeks violates the Fifth Amendment. .................16

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Application of the U.S. for Relief*, 427 F.2d 639 (9th Cir. 1970) ...........................14

*Application of the U.S.*, 427 F.2d 639 (9th Cir. 1970) .......................................14

*Application of U.S. for an Order Authorizing an In-Progress Trace of Wire Commc'ns over Tel. Facilities (Mountain Bell)*, 616 F.2d 1122 (9th Cir. 1980)..................................................................6, 9, 13

*Application of U.S. for Order Authorizing Installation of Pen Register or Touch-Tone Decoder & Terminating Trap (Bell Telephone)*, 610 F.2d 1148 (3d Cir. 1979) ..................................................6, 9

*Arizona v. Hicks*, 480 U.S. 321 (1987)................................................17

*Arver v. United States*, 245 U.S. 366 (1918) ..........................................18

*Boyd v. United States*, 116 U.S. 616 (1886) ..........................................17

*Butler v. Perry*, 240 U.S. 328 (1916)..................................................18

*Chapman v. United States*, 365 U.S. 610 (1961) .......................................8

*Clark v. Martinez*, 543 U.S. 371 (2005) ..............................................16

*Clinton v. Goldsmith*, 526 U.S. 529 (1999) ...........................................7

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ................................16, 20

*In re Application of the U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Tel.*, 849 F. Supp. 2d 526 (D. Md. 2011) ...................................................13

*In re Application of the U.S. for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d 294 (E.D.N.Y. 2005) .......................4, 14

*In re Application of U.S. for an Order Directing a Provider of Commc'n Servs. to Provide Technical Assistance to Agents of the U.S. Drug Enforcement Admin.*, No. 15-1242 M, 2015 WL 5233551 (D.P.R. Aug. 27, 2015) ................................................6

*In re Application of U.S. for an Order Directing X to Provide Access to Videotapes* (*Access to Videotapes*), No. 03-89, 2003 WL 22053105 (D. Md. Aug. 22, 2003) ................................................................6, 9

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court* (*In re Order Requiring Apple*), No. 1:15-mc-01902-JO (E.D.N.Y. Feb. 29, 2016) ...............................passim

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96 (1978)...........................19

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) ............................4

*Palko v. Connecticut*, 302 U.S. 319 (1937) ................................................................17

*Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979)..................12, 14

*Stanford v. Texas*, 379 U.S. 476 (1965)...............................................................17, 19

*The Company v. United States*, 349 F.3d 1132 (9th Cir. 2003) ...............................12

*United States v. Doe*, 537 F. Supp. 838 (E.D.N.Y. 1982) ..........................................6

*United States v. Hall*, 583 F. Supp. 717 (E.D. Va. 1984).............................6, 9, 13

*United States v. Henderson*, 241 F.3d 638 (9th Cir. 2001) .......................................8

*United States v. N.Y. Tel. Co.*, 434 U.S. 159 (1977) ...............................................passim

*United States v. Salerno*, 481 U.S. 739 (1987).........................................................17

*United States v. X*, 601 F. Supp. 1039 (D. Md. 1984).........................................6, 9

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ................................................................17

**Statutes**

28 U.S.C. § 1651................................................................................................2, 4

47 U.S.C. § 1001.................................................................................................15

47 U.S.C. § 1002.................................................................................................15

**Other Authorities**

Andrea Peterson, *Congressman with Computer Science Degree: Encryption Back-doors Are "Technologically Stupid,"* Wash. Post (Apr. 30, 2015), http://wapo.st/1RESSn1 ............................................................ 16

*Building Consumer Trust: Protecting Personal Data in the Consumer Product Industry*, Deloitte Univ. Press (2014), https://d2mtr37y39tpbu.cloudfront.net/wp-content/uploads/2014/11/DUP_970-Building-consumer-trust_MASTER.pdf .............................................................................. 11

Cal. DOJ, California Data Breach Report (Feb. 2016), https://oag.ca.gov/breachreport2016 ................................................ 11

Charlie Savage, *U.S. Tries to Make It Easier to Wiretap the Internet*, N.Y. Times (Sept. 27, 2010), http://nyti.ms/1TH2kcD ......................... 15

Charlie Savage, *U.S. Weighs Wide Overhaul of Wiretap Laws*, N.Y. Times (May 7, 2013), http://nyti.ms/1WLESJo .................................. 15

Christopher Soghoian, *The Technology at the Heart of the Apple–FBI Debate, Explained*, Wash. Post, Feb. 29, 2016, http://wapo.st/1T6hk3F .............................................................. 10

Erin Kelley, *Congress Wades into Encryption Debate with Bill to Create Expert Panel*, USA Today (Jan. 11, 2016), http://usat.ly/1UK35ij ................................................................ 14

Kif Leswing, *GOP Debate: What Republicans Got Wrong About Technology*, Fortune (Dec. 16, 2015), http://for.tn/1Q4C73Z ............................. 15

Malena Carollo, *Survey: Consumers Reject Companies That Don't Protect Privacy*, Christian Sci. Monitor (Jan. 29, 2016), http://www.csmonitor.com/World/Passcode/2016/0129/Survey-Consumers-reject-companies-that-don-t-protect-privacy .................................... 11

Mike McConnell, Michael Chertoff & William Lynn, Opinion, *Why the Fear Over Ubiquitous Data Encryption Is Overblown*, Wash. Post (July 28, 2015), http://wapo.st/1ShCPic ...................................... 16

Nicole Perlroth & David E. Sanger, *Obama Won't Seek Access to Encrypted User Data*, N.Y. Times (Oct. 10, 2015), http://nyti.ms/1G6YAvL .............................................................. 15

iv

President Barack Obama, Remarks by the President at the
    Cybersecurity and Consumer Protection Summit (Feb. 13, 2015),
    http://1.usa.gov/21wkz9y ................................................................. 11

Rebecca Rifkin, *Hacking Tops List of Crimes Americans Worry About
    Most*, Gallup (Oct. 27, 2104),
    http://www.gallup.com/poll/178856/hacking-tops-list-crimes-
    americans-worry.aspx ..................................................................... 11

Susan Page, *Ex-NSA Chief Backs Apple on iPhone 'Back Doors,'*
    USA Today (Feb. 24, 2016), http://usat.ly/1LAPJjq ......................... 16

T.C. Sottek, *Hillary Clinton on Encryption: 'Maybe the Back Door
    Isn't the Right Door,'* The Verge (Dec. 19, 2015),
    http://www.theverge.com/2015/12/19/10628208/hillary-clinton-
    back-door-debate ............................................................................ 15

**Rules**

Fed. R. Crim. P. 41 ....................................................................................... 7

**INTERESTS OF AMICI CURIAE**

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. Since its founding in 1920, the ACLU has frequently appeared before the Supreme Court and other federal courts in numerous cases implicating Americans' right to privacy. The American Civil Liberties Union of Southern California, American Civil Liberties Union of Northern California, and American Civil Liberties Union of San Diego and Imperial Counties are the geographic affiliates in California of the ACLU.

**SUMMARY OF ARGUMENT**

This case concerns an unprecedented law-enforcement effort to conscript an American technology company into creating software designed to weaken the security of its own devices—an effort that, if successful, would set precedent implicating the security and privacy of hundreds of millions of Americans. Neither the All Writs Act nor the Constitution authorizes the government to make the demand it has made here. While the government can in some circumstances require private parties to support law-enforcement investigations—for example, by requiring them to produce relevant evidence or give truthful testimony—the government does not hold the general power to enlist private third parties as its investigative agents to seek out information they do not possess or control. In other words, law enforcement may not commandeer innocent third parties into becoming its undercover agents, its spies, or its hackers.

The government's demand is unlawful under the All Writs Act because that Act does not permit the government to require innocent third parties to turn over information not already in their possession or control, because the assistance the government seeks is unreasonably burdensome and unnecessary, and because

1

Congress has deliberately withheld from the government the authority to require technology companies to circumvent the security protections in their devices. Indeed, in a related case, Magistrate Judge Orenstein recently arrived at all of these conclusions in a meticulous and carefully reasoned opinion that should guide this Court's consideration. *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court* (*In re Order Requiring Apple*), No. 1:15-mc-01902-JO, slip op. at 50 (E.D.N.Y. Feb. 29, 2016).

Separately, the order the government seeks would violate the Constitution. The Fifth Amendment imposes a limit on the nature of the assistance that law enforcement may compel, and the assistance sought here plainly exceeds that limit. At the very least, the fact that the government's interpretation of the All Writs Act would raise serious constitutional questions supplies an additional reason to reject the government's sweeping construction of the Act.

The government has defended its application as limited to this case and this case alone, but the legal precedent it seeks cannot be so contained. If the government prevails, then this case will be the first of many requiring companies to degrade the security and to undermine the trust in their products so essential to privacy in the digital age. For the many users who rely on digital devices to secure their information and communications, including members of vulnerable populations who rely on mobile devices to access the Internet, this burden would be severe.

For these reasons, this Court should deny the government's request.

## BACKGROUND

In an application filed on February 16, 2016, the government asked this Court to issue an order pursuant to the All Writs Act, 28 U.S.C. § 1651, compelling Apple to create cryptographically "signed" software to be installed on

an iPhone 5C that the FBI obtained during its investigation into the December 2015 shootings in San Bernardino, California. The FBI specified that the software would: (1) bypass or disable the phone's auto-erase function, if enabled; (2) allow the FBI to test passcodes on the device electronically (rather than through manual typing); and (3) circumvent the passcode rate-limiter on the device, which delays successive failed passcode attempts. Application at 7–8, *In the Matter of the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. 15-0415M (C.D. Cal. Feb. 16, 2016) (hereinafter "Application"). This Court granted the government's request the same day, subject to Apple's opportunity to object. Order at 3, *In re the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, ED No. 15-0415M (C.D. Cal. Feb. 16, 2016) (hereinafter "Order").

Apple manufactured the iPhone at issue, but it does not possess or control the device or the personal data stored on it. *See* Application at 3. Moreover, Apple does not possess the software that the FBI seeks. Indeed, Apple has stated that, to comply with the government's proposed order, Apple's security engineers would have to write software specifically designed to disable the security measures those engineers built into the phone. *See* Motion to Vacate at 12, *In re the Search of an Apple iPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300, California License Plate 35KGD203*, No. CM-16-10 (SP) (C.D. Cal. Feb. 25, 2016) (hereinafter "Motion to Vacate").

**ARGUMENT**

I.   **The All Writs Act does not authorize the government to compel Apple to create and authenticate software that would allow the government to break into Apple's customers' devices.**

The order the government seeks would be unprecedented. The government is not seeking evidence in Apple's possession or control, as would be consistent with precedent under the All Writs Act. Rather, it seeks to compel Apple to create and authenticate software that would allow the government to break into an individual's iPhone, setting a precedent that would undermine the security and privacy of all who use Apple's devices. No court has ever interpreted the All Writs Act to grant the government such authority, and this court should not be the first. Instead, it should embrace the careful reasoning of Magistrate Judge Orenstein's opinion rejecting the same theory the government advances here. *See In re Order Requiring Apple*, slip op. at 15.

The All Writs Act, first enacted in 1789, is a gap-filling statute, not a source of authority itself. The Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. In other words, it allows courts to issue orders effectuating *other* orders or powers that have some independent basis in law. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977); *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 42 n.7 (1985) (courts may resort to the All Writs Act "to fill statutory interstices"); *In re Order Requiring Apple*, slip op. at 15 ("The limits of such gap-filling authority are easily discerned."). The Act is not "a mechanism for the judiciary to give [the government] the investigative tools that Congress has not." *In re Application of the U.S. for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d 294, 325 (E.D.N.Y. 2005).

In its narrow role as gap-filler, the Act confers only limited authority, as the Supreme Court has made clear. *See N.Y. Tel. Co.*, 434 U.S. at 172 ("[T]he power of

1    federal courts to impose duties upon third parties [under the All Writs Act] is not

2    without limits."). In *New York Telephone*, the government sought to compel a

3    private telephone company to facilitate the installation of a "pen register" to obtain

4    calling records passing through the company's facilities. *Id.* at 164, 175–78. The

5    Court approved the requested order, but only after considering four factors.

6        First, the Court looked to the connection between the investigation and the

7    telephone company, concluding that the company was "not so far removed from

8    the underlying controversy." *Id.* at 174. Second, the Court analyzed the company's

9    burden of compliance, concluding that the company lacked a "substantial interest

10   in not providing assistance." *Id.* On this point, the Court explained that: (a) the

11   company was a "highly regulated public utility with a duty to serve the public," (b)

12   it regularly used pen registers itself, for its own business purposes, and (c) its

13   compliance required "minimal effort" and would occasion "no disruption to [the

14   company's] operations." *Id.* at 174–75. Third, the Court considered whether the

15   assistance was necessary, noting there was "no conceivable way" to effectuate the

16   underlying order to install a pen register without the company's assistance. *Id.* at

17   175. And, fourth, the Court found that the order was "consistent with"

18   congressional action and intent, because Congress had clearly intended to permit

19   the use of pen registers in criminal investigations. *Id.* at 176.

20       None of these factors supports the order the government seeks here.

21   **A.    Apple is "far removed from the underlying controversy" because**

22   **        it neither possesses nor controls the information the government**

23   **        seeks.**

24       Apple may not be compelled under the All Writs Act to assist the

25   government here because it does not possess or control the information the

26   government seeks. When the Act is used to supplement a court's warrant authority,

27   as the government seeks to do in this case, its application is limited to

28

1    circumstances in which the third party either possesses or controls the information

2    to which the warrant grants access.

3         This rule is plain from prior case law. In *New York Telephone*, for example,

4    the telephone dialing information the government sought to collect was in the

5    possession of the telephone company; it passed over phone lines that the company

6    owned and controlled. *See id.* at 174–75. Likewise, the Ninth Circuit upheld an

7    order requiring a telephone company to "perform an in-progress trace of telephone

8    calls"—but only "by means of electronic *facilities within its exclusive control.*" *See*

9    *Application of U.S. for an Order Authorizing an In-Progress Trace of Wire*

10   *Commc'ns over Tel. Facilities* (*Mountain Bell*), 616 F.2d 1122, 1123 (9th Cir.

11   1980) (emphasis added). In so holding, the court emphasized the narrowness of its

12   ruling, stating that "our decision today should not be read to authorize the

13   wholesale imposition upon private, third parties of duties pursuant to search

14   warrants." *Id.* at 1132. Many other decisions have applied the Act in a similarly

15   limited fashion. *See, e.g., Application of U.S. for Order Authorizing Installation of*

16   *Pen Register or Touch-Tone Decoder & Terminating Trap* (*Bell Telephone*), 610

17   F.2d 1148, 1155 (3d Cir. 1979) (tracing of phone calls on the company's lines).[1]

18

19

---

20   [1] *See also In re Application of U.S. for an Order Directing a Provider of*
     *Commc'n Servs. to Provide Technical Assistance to Agents of the U.S. Drug*
21   *Enforcement Admin.*, No. 15-1242 M, 2015 WL 5233551, at \*5 (D.P.R. Aug. 27,
22   2015) (similar for the contents of electronic communications over mobile-phone
     network); *In re Application of U.S. for an Order Directing X to Provide Access to*
23   *Videotapes* (*Access to Videotapes*), No. 03-89, 2003 WL 22053105, at \*3 (D. Md.
24   Aug. 22, 2003) (directing apartment complex owner "merely to provide access" to
     videotapes in owner's possession); *United States v. Hall*, 583 F. Supp. 717, 718–19
25   (E.D. Va. 1984) (compelling credit card issuer to provide records in company's
26   possession); *United States v. X*, 601 F. Supp. 1039, 1042–43 (D. Md. 1984)
     (similar as to telephone billing records); *United States v. Doe*, 537 F. Supp. 838,
27   840 (E.D.N.Y. 1982) (similar as to subscriber's toll records).

28

1        In fact, the government does not cite a single case in which a court relied on

2    the Act to compel a third party to assist in the execution of a warrant where the

3    party did not possess or control the information sought. *See* Motion to Compel at

4    8–10, 12, 16 (discussing cases involving landlords or credit card companies turning

5    over materials in their possession, trap-and-trace or cellphone-monitoring cases

6    involving information traveling through a medium controlled by the party, or the

7    compelled production of a handwriting exemplar by the very individual whose

8    handwriting was at issue); *see also In re Order Requiring Apple*, slip op. at 36 n.32

9    (noting that each recipient of an assistance order in the cases relied upon by the

10   government "was in possession of evidence of the crime under investigation").[2]

11       This limitation on the Act—to information in the possession or control of

12   third parties—is, in reality, a limit inherent in the warrant authority itself. Because

13   the Act permits courts solely to effectuate (and not to broaden) some independent

14   authority, the scope of that independent authority constrains the use of the Act.

15   *Clinton v. Goldsmith*, 526 U.S. 529, 535–36 (1999). Here, the underlying order is a

16   traditional search warrant, which confers on law enforcement the power to search

17   and seize property, Fed. R. Crim. P. 41(b), not to force a third party to transform

18   what has been seized. For example, a warrant that authorizes the government to

19   seize records in a foreign language cannot be used as a basis for an order under the

20   Act compelling a third party to translate the records into English. And a warrant

21   that authorizes the government to seize a block of clay cannot be used to compel a

---

22
23       [2] The government does cite a set of recently disclosed cases in which it obtained
     orders under the Act compelling Apple to use an existing technical tool to extract
24   data stored on iPhones running older versions of the iPhone's operating system.
     *See* Tr. of Oral Argument at 24, *In re Order Requiring Apple*, No. 1:15-mc-O
25   1902-JO (E.D.N.Y. Oct. 26, 2015). Those orders appear to have been uncontested
     until recently, when Magistrate Judge Orenstein questioned the legality of the
26   practice, *see* Application at 12 n.5, invited adversarial briefing, and ultimately
27   ruled against the government. *See In re Order Requiring Apple*, slip op.

28

sculptor to mold a figurine. In this case, the warrant authorized the government to seize and search a private mobile device. That the information on the device may be undecipherable does not entitle the government to rely on the warrant as a basis to compel a third party to transform that information.[3]

## B.    The assistance the government seeks is unreasonably burdensome.

Apple may not be compelled under the All Writs Act to assist the government here because the assistance would be unreasonably burdensome. The government is attempting to force Apple to design and build new software that would subvert several of the core security features that Apple has built into its phones and operating systems and on which its customers rely for the security of their personal information. No court has ever issued an even remotely comparable order under the All Writs Act. To the contrary, courts have compelled assistance under the Act only where the party lacked a "substantial interest in not providing assistance." *N.Y. Tel. Co.*, 434 U.S. at 174. In *New York Telephone*, for example, the Supreme Court emphasized that the order sought would require "minimal effort" from the company, was not "offensive" to the company, and would not "disrupt[]" the company's "operations." *Id.* at 174–75. And in many cases since,

---

[3] The fact that Apple licenses its mobile operating system does not confer on Apple ownership of or control over all iPhones or, most relevantly, the private data stored on them. Real property analogies are instructive. The Supreme Court has long recognized that a tenant, lessee, or licensee does not cede his control over or privacy interest in rented property, even when the owner retains implied or express permission to enter the property for a specific purpose. *See, e.g., Chapman v. United States*, 365 U.S. 610 (1961); *United States v. Henderson*, 241 F.3d 638, 647 (9th Cir. 2001). Furthermore, now that consumer products increasingly contain licensed software, the government's theory that a license confers ownership would trigger "a virtually limitless expansion of the government's legal authority to surreptitiously intrude on personal privacy." *See In re Order Requiring Apple*, slip op. at 32 n.26.

1  courts have repeatedly underscored the minimal effort required to comply with the

2  requests they have granted.[4]

3       The burden imposed here, by contrast, would be unprecedented—not just in

4  its effect on Apple, but in its consequences for Apple's millions of customers.

5       It would require Apple to develop, build, and test a technical capability that,

6  for security and privacy reasons, it does not want to build. This goes far beyond the

7  "meager" burden permitted by *New York Telephone*, which emphasized that the

8  assistance ordered was not "in any way burdensome," and that pen registers were

9  by no means "offensive" to the company, given that it "regularly employ[ed]"

10  them in the course of its ordinary business. *Id.* at 172, 174–75. Apple does not

11  possess, let alone "regularly employ," the software the government seeks. And

12  even the government, in a related case involving Apple, appears to have

13  recognized that compelling the creation of new software and new technical

14  capabilities is a novel use of the Act. In that case, the government sought to compel

15

---

16       [4] *See, e.g.*, *Bell Telephone*, 610 F.2d at 1152, 1153, 1155 ("Tracing calls on
17  [electronic switching system (ESS) equipment] is relatively simple" and "the
   central offices that served the telephones receiving the traced calls used ESS
18  equipment," therefore "these traces would cause a minimal disruption of normal
   operations."); *Mountain Bell*, 616 F.2d at 1132 ("The Order was extremely narrow
19  in scope, restricting the operation to ESS facilities, excluding the use of manual
   tracing, *prohibiting any tracing technique which required active monitoring* by
20  company personnel, and requiring that operations be conducted 'with a minimum
   of interference to the telephone service.'" (emphasis added)); *Hall*, 583 F. Supp. at
21  721 (noting bank was already "in the business . . . of issuing credit" and "routinely,
   indeed monthly, compile[d] a list of all the purchases and the amounts of those
22  purchases"); *United States v. X*, 601 F. Supp. at 1043 ("[D]irecting the out-of-state
23  telephone company to provide the Government with telephone toll records of the
   subscriber [which] will not be 'unduly burdensome,' as such records are seemingly
24  readily available and are maintained in the ordinary course of business."); *Access
25  to Videotapes*, 2003 WL 22053105, at *3 ("[T]he only cooperation required by the
   apartment complex is merely to provide access to surveillance tapes already in
26  existence, rather than any substantive assistance, and nothing more.").
27

28

1    Apple to use a technical capability it already possessed (which could be used to
2    extract data from older, less-secure iPhones), and expressly distinguished the order
3    it sought on that basis. *See* Government's Reply at 25, *In re Order Requiring*
4    *Apple*, No. 1:15-mc-01902-JO (E.D.N.Y. Oct. 22, 2015) (stating that "the order in
5    this case would not require Apple to make any changes to its software or hardware,
6    and it would not require Apple to introduce any new ability to access data on its
7    phones. It would simply require Apple to use its existing capability to bypass the
8    passcode").

9         Moreover, the burden imposed by the government's request extends far
10   beyond Apple itself. If granted, the request would establish a precedent that would
11   undermine the security of hundreds of millions of iPhones and other devices, relied
12   upon by countless individuals to protect sensitive and private information. If the
13   government's interpretation of the law holds, not only could it force Apple to
14   create the cryptographically signed software it seeks here, but it could force Apple
15   to deliver similar signed software using Apple's automatic-update infrastructure.
16   *See also* Mot. to Vacate at 26 (noting prospect of "forcing a software company to
17   insert malicious code in its autoupdate process"). This would be devastating for
18   cybersecurity, because it would cause individuals to legitimately fear and distrust
19   the software update mechanisms built into their products. *See* Christopher
20   Soghoian, *The Technology at the Heart of the Apple–FBI Debate, Explained*,
21   Wash. Post, Feb. 29, 2016, http://wapo.st/1T6hk3F.

22        Simply put, what the government seeks here is an authority that would
23   undermine American and global trust in software security updates, with
24   catastrophic consequences for digital security and privacy.

25        These burdens are particularly acute given the ever-growing threat of
26   cyberattack. President Obama has identified cyber threats as "one of the most
27   serious economic national security challenges that we face as a nation." President

Barack Obama, Remarks by the President at the Cybersecurity and Consumer Protection Summit (Feb. 13, 2015), http://1.usa.gov/21wkz9y. And Americans now worry more about hacking crimes than any other.[5] That fear is justified: Three in five Californians (more than 49 million individuals) were affected by a security breach in just the past four years.[6] The public now understandably decides which technology to use based on its security.[7] As President Obama has recognized, "attacks are getting more and more sophisticated every day. So we've got to be just as fast and flexible and nimble in constantly evolving our defenses." *Id.* Apple's ability to deliver trusted, prompt updates to its consumers plays a vital role in protecting hundreds of millions of people from sophisticated cyberattacks.

In the face of the growing threat posed by cyberattacks and corresponding consumer concern over privacy, requiring Apple to build a deliberately weakened version of its mobile operating system would be particularly onerous. Apple has invested significant resources into making its devices as secure as possible. As a result, information security is now one of the primary features that Apple's products deliver. No court has ever issued an All Writs Act order requiring a company to subvert the core of its product. As the Ninth Circuit held in a related

---

[5] Rebecca Rifkin, *Hacking Tops List of Crimes Americans Worry About Most*, Gallup (Oct. 27, 2104), http://www.gallup.com/poll/178856/hacking-tops-list-crimes-americans-worry.aspx.

[6] Cal. DOJ, California Data Breach Report (Feb. 2016), https://oag.ca.gov/breachreport2016.

[7] See *Building Consumer Trust: Protecting Personal Data in the Consumer Product Industry* 5–6, Deloitte Univ. Press (2014), https://d2mtr37y39tpbu. cloudfront.net/wp-content/uploads/2014/11/DUP_970-Building-consumer-trust_MASTER.pdf; Malena Carollo, *Survey: Consumers Reject Companies That Don't Protect Privacy*, Christian Sci. Monitor (Jan. 29, 2016), http://www. csmonitor.com/World/Passcode/2016/0129/Survey-Consumers-reject-companies-that-don-t-protect-privacy.

1    context in *The Company v. United States*, 349 F.3d 1132 (9th Cir. 2003), Title III

2    of the Wiretap Act—which expressly authorizes third-party assistance—could not

3    be interpreted to compel the assistance of a company where doing so would cause

4    a "complete disruption" of a service it offered. *Id.* at 1145.

5          Relatedly, other courts have considered the security risks to third parties that

6    would be created by compliance with orders under the All Writs Act. In *Plum*

7    *Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979), the Ninth Circuit

8    addressed the Occupational Safety and Health Administration's attempt to require

9    workers at a lumber factory to wear noise-level and air-quality monitoring devices.

10   The Ninth Circuit refused to compel employees to wear the devices, in significant

11   part because the monitors posed a safety risk to the company's employees. *Id.* at

12   1286, 1289. The government cites *Plum Creek* for the proposition that the All

13   Writs Act permits the government to compel "nonburdensome technical

14   assistance," but in that case and *The Company*, the Ninth Circuit also recognized

15   that the Act does not permit the government to compel assistance that substantially

16   interferes or is incompatible with a business's operation, or places undue burdens

17   on third parties.

18         That Apple's employees might have the technical know-how to create the

19   software the government seeks is not material. There was no question that the

20   company in *Plum Creek* had the ability to provide the assistance the government

21   demanded (and failed to obtain). Apple is being asked to break the security

22   protections it has spent considerable resources developing, that are an integral part

23   of its products, and that serve as essential safeguards for millions of iPhone users.

24   That assistance would be unreasonably burdensome.

25

26

27

28

12

**C.      The government has failed to demonstrate that the assistance it seeks is absolutely necessary.**

The government has not demonstrated that the order it seeks is "necessary" within the meaning of the All Writs Act. In *New York Telephone*, the Supreme Court authorized the third-party assistance sought in part because there was "no conceivable way" to effectuate the underlying surveillance order without such assistance. 434 U.S. at 175. Subsequent courts have interpreted *New York Telephone* to require absolute necessity before compelling third-party assistance under the Act. *See, e.g.*, *Mountain Bell*, 616 F.2d at 1129 ("[T]he refusal by [the company] to cooperate would have completely frustrated any attempt to accomplish the tracing operation."); *United States v. Hall*, 583 F. Supp. 717, 721 (E.D. Va. 1984) ("[T]he Supreme Court has said that the assistance of the third party must be absolutely necessary.").

The government has failed to make that showing here. In particular, the government has not shown it has exhausted other means of accessing the data on the iPhone at issue. *See In re Order Requiring Apple*, slip op. at 45–48.

**D.      Congress has deliberately withheld the authority sought here.**

Congress has deliberately withheld the authority the government seeks here, and it would therefore be inappropriate to supply it through the Act. The Act is not a substitute for authority that Congress has chosen not to confer. In *New York Telephone*, for example, the Supreme Court relied heavily on the fact that Congress had plainly intended to authorize the government to install precisely the kind of tracking device the government sought to install. *See* 434 U.S. at 176 ("Congress clearly intended to permit the use of pen registers by federal law enforcement . . . ."); *see also In re Application of the U.S. for an Order Authorizing Disclosure of Location Information of a Specified Wireless Tel.*, 849 F. Supp. 2d 526, 579 (D. Md. 2011) ("[T]he Supreme Court acknowledged and deferred to

congressional approval of a pen register as a permissible law enforcement tool."). And in other cases, courts have similarly looked to congressional intent in determining the reach of the Act. *See Plum Creek*, 608 F.2d at 1290 ("This circuit has never held that the district court has such wide-ranging inherent powers that it can impose a duty on a private party when Congress has failed to impose one."); *Application of the U.S. for Relief*, 427 F.2d 639, 644 (9th Cir. 1970) (denying the government's request for assistance under the All Writs Act because of the legislative history and comprehensiveness of the underlying statutory scheme); *In re Application of the U.S. for an Order Authorizing the Use of a Pen Register*, 396 F. Supp. 2d at 325 (The All Writs Act is not "a mechanism for the judiciary to give [the government] the investigative tools that Congress has not.").[8]

In this case, Congress has quite deliberately refused to authorize law enforcement to force manufacturers of mobile devices to unlock those devices. During the last few years, there has been a robust legislative debate—instigated by the government itself—about whether technology companies such as Apple should be required to build "backdoors" into the security features now commonly included in computers, mobile devices, and communications software. These backdoors would enable law enforcement to access data that might otherwise, in some circumstances, be inaccessible. Though the debate has been wide-ranging, Congress has, thus far, not acceded to the government's demands.[9] In fact, on the

---

[8] *See also Application of the U.S.*, 427 F.2d 639, 644 (9th Cir. 1970) (holding that because there was no statutory authorization, a federal district court could not compel a telephone company to provide technical cooperation in intercepting a wire communication) (later superseded by amendments to Title III, 18 U.S.C. §§ 2511, 2518 & 2520, providing express authority for assistance in certain circumstances).

[9] *See* Erin Kelley, *Congress Wades into Encryption Debate with Bill to Create Expert Panel*, USA Today (Jan. 11, 2016), http://usat.ly/1UK35ij; T.C. Sottek, *Hillary Clinton on Encryption: 'Maybe the Back Door Isn't the Right Door,'* The

basis of the security risks related to backdoors, the Obama administration reportedly shelved its effort to seek legislation mandating their creation.[10]

Congress has thus far refused, in other words, to give law enforcement what it has asked for here: the ability to compel companies to actively bypass the security built into their products.

In a closely related context, Congress has even more explicitly withheld similar authority. The Communications Assistance for Law Enforcement Act ("CALEA"), passed in 1994, requires "telecommunications carriers" to ensure their equipment, facilities, and services are capable of intercepting individuals' communications in real time. But when Congress enacted CALEA, it expressly exempted "information services" of the kind that Apple provides. *See* 47 U.S.C. §§ 1002(b)(2), 1001(6)(B)(iii). In other words, CALEA exempts companies like Apple from the requirement that they build interception features into their communications services and products. *See In re Order Requiring Apple*, slip op. at 20 (concluding that CALEA represented a "legislative decision" not to require information services to affirmatively assist law enforcement).

In recent sessions of Congress, the FBI has campaigned for Congress to expand CALEA's reach to cover companies like Apple.[11] But the FBI's proposals

---

Verge (Dec. 19, 2015), http://www.theverge.com/2015/12/19/10628208/hillary-clinton-back-door-debate; Kif Leswing, *GOP Debate: What Republicans Got Wrong About Technology*, Fortune (Dec. 16, 2015), http://for.tn/1Q4C73Z.

[10] Nicole Perlroth & David E. Sanger, *Obama Won't Seek Access to Encrypted User Data*, N.Y. Times (Oct. 10, 2015), http://nyti.ms/1G6YAvL.

[11] *See* Charlie Savage, *U.S. Tries to Make It Easier to Wiretap the Internet*, N.Y. Times (Sept. 27, 2010), http://nyti.ms/1TH2kcD; Charlie Savage, *U.S. Weighs Wide Overhaul of Wiretap Laws*, N.Y. Times (May 7, 2013), http://nyti.ms/1WLESJo.

have met stiff resistance from Congress, technology experts, and a number of former national security officials.[12]

In short, Congress has had ample opportunity, in multiple contexts, to compel companies such as Apple to build surveillance mechanisms into their products to facilitate government access, but Congress has declined to do so. Because Congress has deliberately withheld the authority the government asks for here, the All Writs Act may not be used to confer it.

## II.   The order the government seeks violates the Fifth Amendment.

The compelled assistance the government seeks from Apple is unlawful for the separate and independent reason that it violates the Fifth Amendment. At the very least, interpreting the All Writs Act in the way the government proposes raises serious constitutional questions that this Court has a duty to avoid. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).

There is a constitutional limit to the assistance that law enforcement may compel of third parties. It is true, of course, that law enforcement can compel assistance in some circumstances—it can, for example, compel citizens to give testimony, to produce relevant documents in their possession, to permit entry for the seizure of evidence, and the like. Indeed, the government has requested, and Apple has provided, that sort of assistance in this case.

But there is an outer bound to what law enforcement may require of innocent third parties. *Cf. Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (The

---

[12] *See* Andrea Peterson, *Congressman with Computer Science Degree: Encryption Back-doors Are "Technologically Stupid,"* Wash. Post (Apr. 30, 2015), http://wapo.st/1RESSn1; Susan Page, *Ex-NSA Chief Backs Apple on iPhone 'Back Doors,'* USA Today (Feb. 24, 2016), http://usat.ly/1LAPJjq; Mike McConnell, Michael Chertoff & William Lynn, Opinion, *Why the Fear Over Ubiquitous Data Encryption Is Overblown*, Wash. Post (July 28, 2015), http://wapo.st/1ShCPic.

1  Supreme Court has "emphasized time and again that '[t]he touchstone of due

2  process is protection of the individual against arbitrary action of government.'"

3  (alteration in original) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))).

4      This principle is evident in the Supreme Court's Fifth Amendment cases,

5  which recognize that the government may not exercise authority inconsistent with

6  "the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746

7  (1987) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)). And it flows,

8  in significant part, from the incompatibility of excessive law-enforcement authority

9  with free democracy. "[T]he resistance of the colonies to the oppressions" of

10  Britain were animated in large part by the over-zealous use of so-called "writs of

11  assistance," which "had given customs officials blanket authority to search where

12  they pleased." *Stanford v. Texas*, 379 U.S. 476, 481–82 (1965). James Otis

13  denounced them as "the worst instrument of arbitrary power, the most destructive

14  of English liberty and the fundamental principles of law" because they placed "the

15  liberty of every man in the hands of every petty officer." *Boyd v. United States*,

16  116 U.S. 616, 625 (1886). The Framers' "revulsion" against these excesses

17  reflected the view that a free society must circumscribe the government's power to

18  search for evidence of crimes, including by eliminating "blanket authority to

19  search" and by constraining the government's power to sweep up innocent third

20  parties. *Stanford*, 379 U.S. at 481–82; *see also Arizona v. Hicks*, 480 U.S. 321, 329

21  (1987) ("But there is nothing new in the realization that the Constitution

22  sometimes insulates the criminality of a few in order to protect the privacy of us

23  all.").

24      Yet what the government proposes here is to transform the All Writs Act

25  into a source of "blanket authority" as intrusive as any writ of assistance. *Stanford*,

26  379 U.S. at 481; *see also In re Order Requiring Apple*, slip op. at 44 (noting that

27  the government's view of the All Writs Act contains no "principled limit on how

28

far a court may go in requiring a person or company to violate the most deeply-rooted values"). The government seeks to compel an innocent third party into becoming an agent of the state, to conscript a private entity into a criminal investigation, and to require it to develop information for the government that is neither in its possession nor control. This is a tactic foreign to free democracies. And it presents an unparalleled danger of eroding the public trust—both of government and between citizens—necessary to ordered liberty.[13]

The Supreme Court has not explicitly addressed the constitutional constraints on the government's ability to compel an innocent third party to participate in a criminal investigation. But it has crafted a judicial limit on the All Writs Act that is best explained as recognition that the conscription of third parties by the police raises troubling constitutional questions. In *New York Telephone*, it said that courts may not rely on the Act to impose "unreasonable burdens." *N.Y. Tel. Co.*, 434 U.S. at 172. That phrase does not appear anywhere in the Act, however, and appears to reflect, instead, the intuitive notion that law enforcement's authority to enlist third parties in official investigations abuts more fundamental constitutional freedoms.

Where precisely the line lies between permissible and impermissible conscription in law-enforcement investigations is a question perhaps unanswerable in the abstract. And it would undoubtedly be a more complicated one were Congress itself to clearly and expressly require the sort of assistance the

---

[13] The few exceptions prove the rule. Consistent with due process's focus on history and practice, the government's power to conscript has been recognized only in narrow contexts in which the power is so tied to modern statehood that it effectively predates the Constitution. *See, e.g., Arver v. United States*, 245 U.S. 366, 378 (1918) (power to compel military service inherent in "very conception of just government"); *Butler v. Perry*, 240 U.S. 328, 331 (1916) (compelled work on public roads).

government seeks in a manner that could be fairly understood as regulatory, rather than investigative, in nature. *See, e.g.*, *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 106–07 (1978) ("At least since the demise of the concept of 'substantive due process' in the area of economic regulation, this Court has recognized that legislative bodies have broad scope to experiment with economic problems." (alteration and quotation marks omitted)).

But wherever the line is, the government's demand in this case plainly crosses it. Many factors set the request here apart from any law enforcement has made before. First, the demand here, and the precedent it would set, implicates the rights of countless Americans, not just those of Apple. The government's demand would inevitably weaken the security of all of Apple's users—everyday Americans attempting to secure their private data and their communications. Second, it would require Apple to design and create software in service of a governmental investigation, even though Apple does not possess or control the information the government seeks. Third, Congress has not enacted a statute requiring technology companies to be able to actively bypass the security built into their products. *See supra* Part I.A–B. Finally, it would require Apple to provide this novel assistance in aid of a criminal investigation to which it has little connection, despite its vehement objection to doing so. *Stanford*, 379 U.S. at 485 (First, Fourth, and Fifth "amendments are indeed closely related, safeguarding not only privacy and protection against self-incrimination but 'conscience and human dignity and freedom of expression as well.'").

The effect of the government's demands would be to conscript a private party with little connection to the government's criminal investigation into breaking the security of its own products and, thereby, weakening the security of all its users.

1    In the history, traditions, and norms of compelled investigative assistance,
2   such a demand is plainly unprecedented. *See Lewis*, 523 U.S. at 857 (Kennedy, J.,
3   concurring) (explaining that the substantive due process inquiry "ask[s] whether or
4   not the objective character of certain conduct is consistent with our traditions,
5   precedents, and historical understanding of the Constitution and its meaning").
6   And for good reason. On the government's apparent understanding of its authority
7   under the Act, for example, it is not clear what would prevent law enforcement
8   from obtaining an order compelling: an individual to spy on her neighbor; an
9   employee of the ACLU to retrieve information on another employee's personal
10   device; a cybersecurity firm to remotely hack into a customer's network to obtain
11   evidence; or even the friend of a Black Lives Matter organizer to seek out
12   information and report on that person's plans for a peaceful protest.

13    The government's theory threatens a radical transformation of the
14   relationship between the government and the governed. But the Court need not
15   address the profound constitutional questions provoked by that threat. It is enough
16   that the government's theory raises them to trigger the Court's obligation to
17   interpret the Act to avoid them.

### CONCLUSION

    For these reasons, the Court should deny the government's request.

March 2, 2016

                              Respectfully Submitted,

                              By: _____
                              Peter Bibring
                              ACLU OF SOUTHERN
                               CALIFORNIA
                              pbibring@aclusocal.org
                              1313 West Eighth Street
                              Los Angeles, CA 90017

Telephone: (213) 977-9500

Alex Abdo
Esha Bhandari
Eliza Sweren-Becker*
Brett Max Kaufman
aabdo@aclu.org
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500

Linda Lye (SBN 215584)
llye@aclunc.org
ACLU OF NORTHERN
 CALIFORNIA
39 Drumm Street, 2nd Floor
San Francisco, CA 94111
Telephone: (415) 621-2493

David Loy (SBN 229235)
davidloy@aclusandiego.org
ACLU OF SAN DIEGO AND
 IMPERIAL COUNTIES
San Diego, CA 92138
Telephone: (619) 232-2121

*Application for admission to the bar
pending

Attorneys for *amici curiae*

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90017.

On March 2, 2016, I caused to be served through mail (USPS) and e-mail the foregoing document described as:

**BRIEF OF AMICI CURIAE
AMERICAN CIVIL LIBERTIES UNION, ACLU OF NORTHERN
CALIFORNIA, ACLU OF SOUTHERN CALIFORNIA, AND ACLU OF
SAN DIEGO AND IMPERIAL COUNTIES, IN SUPPORT OF APPLE, INC.**

on each person on the attached Service List.

Executed on March 2, 2016, in Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Diana Gonzalez

Print Name

Signature

**Service List**

| Service Type | Counsel Served | Party |
|---|---|---|
| Mail & E-mail | **Theodore J. Boutrous, Jr.**<br>**Nicola T. Hanna**<br>**Eric D. Vandevelde**<br>Gibson, Dunn & Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br>Email:  tboutrous@gibsondunn.com<br>          nhanna@gibsondunn.com<br>          evandevelde@gibsondunn.com | Apple, Inc. |

| Mail & E-mail | **Theodore B. Olson** <br> Gibson, Dunn & Crutcher LLP <br> 1050 Connecticut Avenue, N.W. <br> Washington, DC, 20036-5306 <br> Telephone: (202) 955-8500 <br> Facsimile: (202) 467-0539 <br> Email: tolson@gibsondunn.com | Apple, Inc. |
|---|---|---|
| Mail & E-mail | **Marc J. Zwillinger** <br> **Jefffrey G. Landis** <br> Zwillgen PLLC <br> 1900 M Street N.W., Suite 250 <br> Washington, D.C. 20036 <br> Telephone: (202) 706-5202 <br> Facsimile: (202) 706-5298 <br> Email: marc@zwillgen.com <br>      jeff@zwillgen.com | Apple, Inc. |
| Mail & E-mail | **Eileen M. Decker** <br> **Patricia A. Donahue** <br> **Tracy L. Wilkison** <br> **Allen W. Chiu** <br> 1500 United States Courthouse <br> 7312 North Spring Street <br> Los Angeles, California 90012 <br> Telephone: (213) 894-0622/2435 <br> Facsimile: (213) 894-8601 <br> Email: Tracy.Wilkison@usdoj.gov <br>      Allen.Chiu@usdoj.gov | United States of America |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28