LODGED

CROWELL & MORING LLP
JASON C. MURRAY (CSB No. 169806)
jmurray@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:  (213) 622-2690

KELLOGG, HUBER, HANSEN,
 TODD, EVANS & FIGEL, P.L.L.C.
SEAN A. LEV (*pro hac vice* forthcoming)
slev@khhte.com
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Facsimile:  (202) 326-7999

Attorneys for *Amicus Curiae*
AT&T Mobility LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE SEIZED DURING THE EXECUTION OF A SEARCH WARRANT ON A BLACK LEXUS IS300, CALIFORNIA LICENSE PLATE 35KGD203 | ED No. CM 16-10 (SP)<br><br>BRIEF OF *AMICUS CURIAE* AT&T MOBILITY LLC IN SUPPORT OF APPLE INC. |

## TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE* ............................................................................. 1

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    Congress Is The Right Body To Weigh The Compelling, but Competing, Interests in Privacy and Safety ......................................................... 2

II.   The All Writs Act Cannot Substitute for a New Legislative Solution ............. 4

CONCLUSION ............................................................................................................... 6

# TABLE OF AUTHORITIES

**Cases**

*Application of U.S. for an Order Authorizing an In-Progress Trace of Wire Commc'ns Over Tel. Facilities, In re,*
616 F.2d 1122 (9th Cir. 1980) ................................................................... 4-5

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980) ............................................................................ 3

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ............................................................................. 2

*Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court, In re,*
No. 15-MC-1902, slip op. (E.D.N.Y. Feb. 29, 2016) ........................... 3, 4, 6

*Pennsylvania Bureau of Corr. v. United States Marshals Serv.,*
474 U.S. 34 (1985) ............................................................................ 4

*Plum Creek Lumber Co. v. Hutton,*
608 F.2d 1283 (9th Cir. 1979) ............................................................ 4

*Riley v. California,*
134 S. Ct. 2473 (2014) ....................................................................... 2

*United States v. New York Tel. Co.,*
434 U.S. 159 (1977) ........................................................................... 4

**Statutes**

All Writs Act, 28 U.S.C. 1651 .................................................... 3, 4, 5, 6

28 U.S.C. § 1651(a) ........................................................................... 4

Communications Assistance for Law Enforcement Act,
Pub. L. No. 103-414, 108 Stat. 4279 (1994) ........................................ 3

# INTEREST OF *AMICUS CURIAE*

*Amicus curiae* AT&T Mobility LLC ("AT&T") is one of the world's largest providers of telecommunications and information services. AT&T's customers entrust it with some of their most personal and sensitive information, and AT&T is deeply committed to protecting that information from intrusion or attack. At the same time, AT&T also regularly receives, and responds appropriately to, lawful demands for assistance from United States law enforcement, public safety, and national security officials. Like many other communications and technology companies, AT&T believes that the issues implicated by this Court's order of February 16, 2016, should be resolved not through the application of the All Writs Act, but by federal legislation that sets forth a clear, uniform legal framework applicable to all who participate in the telecommunications ecosystem.

# INTRODUCTION

The issue before this Court is not whether the government should secure evidence critical to the investigation of the heinous crimes committed when Syed Rizwan Farook and Tashfeen Malik shot and killed 14 people and injured 22 others. Of course, it should. Rather, the fundamental question is whether the law, as written today, authorizes the particular mechanism the government has selected to compel Apple's assistance in pursuing evidence from the Apple iPhone at issue in this Court's order. On that narrow legal question, the answer appears to be no. AT&T therefore requests that the Court vacate its order in deference to our elected representatives in Congress, who should debate the important policy issues inherent to this matter and expeditiously pass legislation providing clear rules for citizens and companies alike.

# ARGUMENT

## I. Congress Is The Right Body To Weigh The Compelling, but Competing, Interests in Privacy and Safety

All Americans benefit from the rapidly evolving communications and information technologies that continue to transform our economy and our society. That rapid evolution, however, has greatly complicated the public debate on the proper balance between privacy and security.

Smartphones and other personal devices contain "a digital record of nearly every aspect of [users'] lives – from the mundane to the intimate," *Riley v. California*, 134 S. Ct. 2473, 2490 (2014), including what users say, hear, write, read, and buy, as well as where they go – including their "specific movements down to the minute." *Id.* Consumers reasonably expect the "broad array of private information" in their personal records and communications to remain within their personal control. *Id.* at 2491.

At the same time, the government is entitled to seek reasonable assistance from industry to protect public safety and national security. As this case reminds us, a compelling public interest exists in protecting lives by obtaining information that might prevent a future terrorist attack. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) ("[T]he Government's interest in combating terrorism is an urgent objective of the highest order.").

As a nation, we need a legal regime that responds to these technological changes through fair, uniform procedures that govern when and how the government may compel any private company to provide access to customer information. Congress is the right body to create such a comprehensive regime addressing all relevant considerations. Indeed, only Congress can do so.

Notably, Congress has previously responded to technological changes and addressed the interests of law enforcement and privacy in just this manner. In 1994,

Congress passed the Communications Assistance for Law Enforcement Act ("CALEA"), to "make clear a telecommunications carrier's duty to cooperate in the interception of communications for law enforcement purposes." Pub. L. No. 103-414, 108 Stat. 4279 (1994). But communications services have changed dramatically in the past two decades. Information about who communicates with whom is no longer controlled primarily by telecommunications carriers. Rather, personal data are largely controlled by device, search, operating system, application, and social media companies that barely existed when CALEA was passed.

These developments demand a new legislative solution that strikes a fair balance between privacy and law enforcement, accounts for current technology, applies equally to all holders of personal information, and sets appropriate limits on what government officials may compel companies to do. These issues should be resolved by a public vote after a public debate following "the kind of investigation, examination, and study that legislative bodies can provide and courts cannot." *Diamond v. Chakrabarty*, 447 U.S. 303, 317 (1980).

As another Magistrate Judge concluded just this week in a similar case, balancing the competing interests here "is a matter of critical importance to our society," and must be done by "legislators who are equipped to consider the technological and cultural realities of a world their predecessors could not begin to conceive." Anything less would "betray our constitutional heritage and our people's claim to democratic governance." *In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, No. 15-MC-1902, slip op. at 49 (E.D.N.Y. Feb. 29, 2016) ("*In re Order Requiring Apple*"). And, in fact, Congress is actively considering the very issues presented by this case and by other government efforts to secure stored communications.

## II. The All Writs Act Cannot Substitute for a New Legislative Solution

In light of the above, basic separations of powers principles dictate that the All Writs Act should not be pressed into duty here in place of a legislative solution. The All Writs Act states that a court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act is, by its terms, permissive and, as the reference to existing "usages and principles of law" suggests, it must be applied with sensitivity to the established roles of Congress and the judiciary. It is not a tool for breaking new ground. Rather, it is a "residual source of authority," *Pennsylvania Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985), designed to plug modest gaps, not a "grant of plenary power to the federal courts." *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289-90 (9th Cir. 1979).

Consistent with that established understanding, courts properly rely on the All Writs Act to mandate third-party assistance with law enforcement only where a number of conditions are met. Two are particularly relevant here.

*First*, courts seek to ensure that the compelled action reflects what "Congress clearly intended to permit." *United States v. New York Tel. Co.*, 434 U.S. 159, 176 (1977); *see also In re Order Requiring Apple*, slip op. at 24 & n.21, 26-30. In particular, courts must look for some "clear indication by Congress" that the particular device or method is a "permissible law enforcement tool." *New York Tel.*, 434 U.S. at 177-178; *see id.* at 176-77 (discussing legislative history establishing that Congress contemplated law enforcement use of "pen registers").

*Second*, courts inquire whether the government seeks to compel assistance similar to actions the private company would take in the ordinary course of its business. *See id.* at 174-75 (company "regularly employ[ed] such devices without court order for the purposes of checking billing operations, detecting fraud, and preventing violations of law"); *In re Application of U.S. for an Order Authorizing*

4

*an In-Progress Trace of Wire Commc'ns Over Tel. Facilities*, 616 F.2d 1122, 1126 (9th Cir. 1980) (company "routinely" used similar devices in its ordinary business). Congress is presumed not to intend that private parties be compelled to undertake unreasonable or unusual actions.

Apple's evidence suggests that neither of these conditions are present here. To AT&T, it appears that the government's proposed order compels Apple to take quite unusual and significant actions. *See* ECF No. 16, at 12-14; ECF No. 16-33, ¶ 50 ("What the government is requesting Apple do is not something that Apple has ever done before or would otherwise do."). In addition to the burdens associated with the steps that Apple must take with respect to this particular iPhone, Apple claims that the mere act of creating this software would put at risk the privacy and integrity of data stored on millions of iPhones worldwide. *See* ECF No. 16, at 25; ECF No. 16-33, ¶ 47. If the Court credits this evidence – and AT&T sees no reason why it should not – then the government's request clearly extends beyond what Congress could have contemplated.

Which brings us to the essential point of this *amicus* brief. The government can and should use every means available to it to investigate the tragic events in San Bernardino, and that includes compelling Apple's cooperation to the full extent permitted by law. In this case, however, the government seeks to compel cooperation that was not intended by Congress, that may risk substantial harm to the security of millions of iPhones, and that, put simply, is more than what can be supported under the All Writs Act. If the All Writs Act must be read as broadly as the government asserts, private companies throughout the telecommunications ecosystem could be compelled into government service in any number of cases with few limits and even less predictability. ECF No. 16, at 24-26; *see also* ECF Nos. 16-03, 16-04 (examples of such requests).

The far-reaching implications of the government's request underscore the separation of powers concerns presented by this case and why a legislative solution is far more appropriate. Congress has acted in the past to remove uncertainty and provide a solution tailored to the specific technological challenges of the time. Congress has considered, but as yet not adopted, further amendments to address the quite different technology that exists today. The government should not be able to displace that process by securing *ad hoc* orders in individual cases. *See In re Order Requiring Apple* at 30 (rejecting government's request "to have the court give it authority that Congress chose not to confer.").

Unlike a court, Congress can craft rules that apply equally to all types of information and technology companies; obtain the facts necessarily to balance properly those companies' need to control their product and service designs against the government's need for information; specify the judicial process required before the government can access particular types of information or demand particular types of assistance; and determine the burdens that industry should reasonably bear in assisting government officials in pursuing important national security and law enforcement objectives. The All Writs Act should not be used to bypass legislative resolution of the hard problems raised by this class of cases in an open, transparent, and accountable way.

## CONCLUSION

For the reasons set forth above, the Court should vacate its February 16, 2016 order.

DATED: March 3, 2016

Respectfully submitted,

_____ by JLL
CROWELL & MORING LLP
JASON C. MURRAY (CSB No. 169806)
jmurray@crowell.com
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 622-4750
Facsimile:   (213) 622-2690

KELLOGG, HUBER, HANSEN,
 TODD, EVANS & FIGEL, P.L.L.C.
SEAN A. LEV (*pro hac vice* forthcoming)
slev@khhte.com
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Telephone:  (202) 326-7900
Facsimile:   (202) 326-7999

Attorneys for *Amicus Curiae*
AT&T Mobility LLC