LODGED

BY FAX

FILED
CLERK, U.S. DISTRICT COURT

MAR - 4 2016

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

Martin J. Mayer, SBN 73890
James R. Touchstone, SBN 184584
Name: Tarquin Preziosi, SBN 198014

Address: Jones & Mayer, 3777 N. Harbor Blvd.

Fullerton, CA 92835

Phone: ((714) 446-1400

Fax: (714) 446-1448

Attorneys for Amici Applicants

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of an Apple IPhone Seized During the Execution of a Search Warrant on a Black Lexus IS300; California License Plate 3KGD203 | CASE NUMBER:<br><br>5:16-cm-00010-SP |
| | BRIEF OF AMICI CURIAE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMICI CURIAE BRIEF |

1

## **TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ........................................................................ii

3    BRIEF OF AMICI CURIAE ....................................................................... 1

4    I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY..................... 1

5    II.   INTRODUCTION................................................................................ 1

6    III.  THE GOVERNMENT HAS FULLY COMPLIED WITH THE
        FOURTH AMENDMENT AND WILL BE REQUIRED TO DO
7       SO IN ALL FUTURE SEARCHES ........................................................ 2

8    IV.   THIS ORDER DOES NOT OFFEND THE FIRST AMENDMENT ............ 5

9    V.    CONCLUSION .................................................................................. 7

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

321 Studios v. MGM Studios, Inc.
  (N.D.Cal. 2004) 307 F.Supp.2d 1085................................................................6

Junger v. Daley
  (6th Cir. 2000) 209 F.3d 481 ...........................................................................6

Riley v. Nat'l Fed'n of Blind
  (1988) 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 ...................................5

Turner Broadcasting System, Inc. v. FCC
  (1994) 512 U.S. 622, 129 L.Ed.2d 497, 114 S.Ct. 2445 ..................................6

United States v. Elcom Ltd.
  (N.D.Cal. 2002) 203 F.Supp.2d 1111................................................................6

Universal City Studios v. Corley
  (2d Cir. 2001) 273 F.3d 429 .............................................................................5

**Federal Statutes**

Americans with Disabilities Act.........................................................................5

**Constitutional Provisions**

First Amendment ...........................................................................................5, 6

Fourth Amendment................................................................................1, 2, 3, 4, 5

**Other Authorities**

In re Order Requiring Apple Inc. to Assist in the Execution of Search
  Warrant Issued by This Court
  E.D.N.Y No. 15-MC-1902 (JO) ........................................................................3

1    **BRIEF OF AMICI CURIAE**

2    **I. STATEMENT OF FACTS AND PROCEDURAL HISTORY.**

3        Amici accept the procedural history and pertinent facts as set forth in the

4    briefs of the United States and Apple.  Amici understand that the substantive legal

5    issues that are at stake in this matter will be fully briefed by the United States

6    Attorney's Office.  Amici defer to the legal arguments of the United States office

7    on these issues.

8    **II. INTRODUCTION.**

9        This matter stems from the FBI's lawful seizure of an Apple iPhone that was

10   used by Syed Rizwan Farook ("Farook") in carrying out the December 2, 2015

11   massacre in San Bernardino.  Farook, along with his wife, murdered 14 people and

12   injured 22 others.  The United States has fully complied with the Fourth

13   Amendment in seizing and attempting to gain access to the contents of the iPhone

14   – both by obtaining a warrant to search the phone and securing consent from the

15   owner of the phone.  Nevertheless, Apple retains the exclusive technical ability to

16   access the data from the iPhone and has refused to assist in obtaining the requested

17   access.

18       In order to protect the American public from a possible future attack, law

19   enforcement needs to be able to use the existing legal tools at their disposal.  These

20   tools are the warrant and order compelling compliance therewith.

21       The legal and privacy issues surrounding this case have been much debated

22   in the media.  Apple has stated – both publically and to this court – that granting

23   the United States' motion to compel would compromise the security of personal

24   data on millions of iPhones.  In essence, Apple has set up an argument that pits the

25   privacy interests of its user's data against the needs of a government investigation

26   into passed events.  This argument is misplaced.  The requested order would allow

27   Apple to achieve the goals of unlocking the iPhone in a technical manner of

28   

-1-

1   Apple's choosing. See February 16, 2016 Order Compelling Apple Inc. to Assist

2   Agents in Search, pg. 3, ¶ 4 ("Order"); Memorandum of Points and Authorizes in

3   Support of Government's *Ex Parte* Application for Order Compelling Apple Inc.

4   to Assist Agents in Search, pg. 4. Thus, Apple can be in exclusive control of the

5   methods to unlock this iPhone. The possible future failure of Apple to safeguard

6   these methods from potential disclosure cannot outweigh the present compelling

7   need of the public to be protected.

8        Amici of course concur that society does not tolerate violations of the Fourth

9   Amendment - and that is exactly what has *not* occurred here. As tacitly conceded

10   by Apple, the various law enforcement agencies involved followed the letter of the

11   law in seizing and attempting to search this iPhone. Law enforcement is not now

12   asking this Court to compel the "locksmith" to give them a master key to unlock all

13   locks built by this locksmith. Nor is law enforcement asking the locksmith to leave

14   all similar doors unlocked. Rather, the United States is asking the court to compel

15   the locksmith to simply unlock this one door in the manner of the locksmith's

16   choosing. How the locksmith goes about unlocking that door and retaining,

17   securing, and/or discarding the key is up to the locksmith.

18

19   **III.    THE GOVERNMENT HAS FULLY COMPLIED WITH THE**

20           **FOURTH AMENDMENT AND WILL BE REQUIRED TO DO SO IN**

21           **ALL FUTURE SEARCHES.**

22        The iPhone at issue is owned by the County of San Bernardino Department of

23   Public Health ("SBCDPH"), which was Farook's employer at the time of the massacre.

24   It was assigned to and used by Farook as part of his employment with SBCDPH. Farook

25   accepted SBCDPH's written policy that all such devices are subject to search by

26   SBCDPH. The iPhone was lawfully seized pursuant to a federal search warrant issued by

27   Magistrate Judge David T. Bristow on December 3, 2015. SBCDPH, as the owner of the

28

1  phone, has given consent to the search of the iPhone and to Apple's assistance in the

2  search. As such, even if a warrant had not been obtained, the only entity with cognizable

3  privacy interest in this iPhone has consented to the search. Nevertheless, all requirements

4  of the Fourth Amendment related to the search and seizure of this iPhone have been

5  satisfied.

6       The Order is limited to this iPhone; it does not, nor can it be applied to items

7  that were not seized pursuant to the warrant in this case. Law enforcement would

8  necessarily have to comply with the Fourth Amendment in any future searches of iPhones

9  by seeking a warrant and/or consent of the owner. Apple's argument that the

10  "government has filed multiple other applications for similar orders" simply proves this

11  point. See Apple Inc.'s Motion to Vacate Order Compelling Apple Inc. to Assist Agents

12  in Search and Opposition to Government's Motion to Compel Assistance, pg. 3.

13  ("Motion to Vacate"). This case does not set the precedent that Apple fears. For

14  example, in a recent ruling from the Eastern District of New York, the court there denied

15  the government's request for an order requiring Apple to bypass the passcode security on

16  an iPhone.[1]

17       The Order does not compel Apple to turn over the methods it uses for disabling

18  the auto-erase function to the government. Nor does the Order actually compel Apple to

19  keep or otherwise maintain the program that it creates to disable the auto-erase function.

20  Apple would be free to destroy or otherwise discard any code that it creates to comply

21  with this Order. If Apple chooses to retain that program, any potential breach of security

22  would not be attributable to any governmental action.

23  ///

24

25  [1] See Memorandum and Order, February 29, 2016, *In re Order Requiring Apple Inc. to Assist in the Execution of
   Search Warrant Issued by This Court*, E.D.N.Y No. 15-MC-1902 (JO), Doc. 29, at 1. This ruling is limited to the

26  particular circumstances of that case. See id. at 1. There, the iPhone was owned by an individual arrested for
   methamphetamine trafficking – not the county itself that consented to the search of the phone. See id. at 2. Further,

27  the government waited well over a year after seizing the iPhone to seek the order to compel Apple's assistance. See
   id. at 2-4. In short, the application of this ruling should be limited to its facts.

28
-3-

1    Given the cited time and expense to create such a program, it would not be

2 inequitable to require any agency that secured a warrant to be required to compensate

3 Apple for the legitimate expenses incurred in complying with such an order. In short, all

4 of the procedural safeguards of the Fourth Amendment will necessarily remain in place

5 and be applicable to any future cases.

6    The ultimate decision to mandate that all companies such as Apple be compelled

7 to create a back door to their operating systems is clearly a political, not a judicial,

8 function. However, vacating this Order on that premise while we as a nation await

9 congressional action (or inaction) would be a disservice to the American public. In order

10 to adequately do their job, law enforcement needs to be able to use the existing tools at

11 their disposal to gain access to critical information on a case by case basis. One only

12 needs alter a few facts of the 2010 Times Square car bombing attempt to illustrate this

13 point. Replace the "smoke" that alerted passers-by to the location of the car bomb with

14 "data" on a locked iPhone and the dilemma faced by law enforcement is evident. In that

15 hypothetical situation, where seconds count, what tools does law enforcement have?

16 Absent voluntary compliance by Apple, or its compliance with a court order, law

17 enforcement would be in exactly the same position that it is in now – hampered in its

18 efforts to provide for the public's safety.

19    Manifestly, Apple is refusing to assist the United States in its attempt to search

20 this iPhone. Part of the reasons for its present position is apparently Apple's opinion that

21 this litigation might not have been necessary if the FBI had consulted with Apple first

22 before an iCloud account password was changed. See Motion to Vacate, pg. 11. This

23 statement is repugnant to California Law Enforcement. Apple is, in essence, saying to

24 the government "you had your chance". Amici respectfully request that this court

25 disregard this argument in its analysis of the public safety issues at stake here.

26 ///

27 ///

28
-4-

1    This case amply demonstrates that law enforcement has complied with the

2 applicable Fourth Amendment safeguards here, and will be required to do so in all other

3 cases. Apple's argument to the contrary is unsupported. Apple's fears regarding

4 potential future security breaches as a result of this Order is simply speculation. Some

5 possible future invasion of the iPhone security system – attributable solely to third parties

6 who gained access to Apple's code via Apple's failure to secure (or even destroy) this

7 code - does not outweigh the government's present compelling need in this case.

8 **IV.    THIS ORDER DOES NOT OFFEND THE FIRST AMENDMENT.**

9    The Order, is, at most, a means to an end: to disable the auto-erase function of this

10 iPhone so that it can be searched without the risk of losing all data. It does not "compel"

11 Apple to engage in protected "speech" in any particular manner. While Amici do not

12 dispute that computer code can be speech, it is certainly not compelled speech in the

13 manner asserted by Apple. See *Riley v. Nat'l Fed'n of Blind* (1988) 487 U.S. 781, 798,

14 108 S.Ct. 2667, 2678, 101 L.Ed.2d 669, 690 (exacting scrutiny applied to the requirement

15 that professional fundraisers disclose to potential donors, before an appeal for funds, the

16 percentage of charitable contributions collected during the previous 12 months that were

17 actually turned over to charity).

18    Similarly, the Order cannot legitimately be characterized as impermissible

19 viewpoint discrimination, any more than would a court order compelling compliance with

20 signage standards under the Americans with Disabilities Act.

21    The realities of what computer code is, and its normal functions, "require a First

22 Amendment analysis that treats code as combining nonspeech and speech elements, *i.e.*,

23 functional and expressive elements." *Universal City Studios v. Corley* (2d Cir. 2001) 273

24 F.3d 429, 451, citing *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 386, 23 L. Ed. 2d

25 371, 89 S. Ct. 1794 (1969) ("Differences in the characteristics of new media justify

26 differences in the First Amendment standards applied to them.") Assuming, *arguendo*,

27 that the Order compels "speech" on the part of Apple, the Order is a content neutral

28                                         -5-

1  directive to disable a single function of this iPhone – especially since the manner of

2  achieving that end is left to Apple.

3      Given these realities of "speech" in the context of computer code – and as set forth

4  in the cases cited by Apple - the appropriate standard to be applied is intermediate

5  scrutiny, i.e., if "it furthers an important or substantial governmental interest." *Junger v.*

6  *Daley* (6th Cir. 2000) 209 F.3d 481, 485, citing *United States v. O'Brien* (1968) 391 U.S.

7  367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680; see *321 Studios v. MGM Studios,*

8  *Inc.* (N.D.Cal. 2004) 307 F.Supp.2d 1085, 1101 (applying intermediate scrutiny to

9  regulation of computer code); *United States v. Elcom Ltd.* (N.D.Cal. 2002) 203 F.Supp.2d

10  1111, 1127-1128 (same).   Under intermediate scrutiny, the Government must

11  "demonstrate that the recited harms are real, not merely conjectural, and that the

12  regulation will in fact alleviate these harms in a direct and material way." *Turner*

13  *Broadcasting System, Inc. v. FCC* (1994) 512 U.S. 622, 624, 129 L.Ed.2d 497, 114 S.Ct.

14  2445.

15      Nevertheless, whether the test is "intermediate", "strict" or "exacting" scrutiny,

16  the standard has been met in this case.  This should not be an academic debate about First

17  Amendment protections or, as Apple suggests, one that can only be resolved through the

18  political process.  Apple characterizes the need to access the iPhone as speculative;

19  claiming the iPhone was used in a past event where "any criminal activity linked to the

20  phone at issue ended two months ago when the terrorists were killed".  See Motion to

21  Vacate, pg. 21.  This is myopic and disingenuous.

22      The massacre of December 2, 2015 – carried out by terrorists who pledged their

23  allegiance to ISIL - is a manifestation of a threat that has not ceased.  The United States

24  has clearly set forth the value that data on this iPhone may have in the ongoing efforts to

25  protect the American people.  Simply because the Order, might, in some way, compel

26  Apple to write code of its choosing to disable the auto-erase function, cannot, and does

27  not violate the First Amendment here.

28

-6-

APPLICATION FOR LEAVE TO FILE AMICI CURIAE BRIEF; STATEMENT OF IDENTITY AND INTERESTS OF
AMICI CURIAE; BRIEF OF AMICI CURIAE AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF AMICI CURIAE BRIEF

**V. CONCLUSION.**

For all of the foregoing reasons, Amici respectfully request that this Court grant the United States' Application for Order Compelling Apple Inc. to Assist Agents in Search.

Dated: March 3, 2016     Respectfully submitted,

            JONES & MAYER


            By: */s/ Martin J. Mayer*
              Martin J. Mayer
              James R. Touchstone
              Tarquin Preziosi
              Attorneys for Amici Applicants

APPLICATION FOR LEAVE TO FILE AMICI CURIAE BRIEF; STATEMENT OF IDENTITY AND INTERESTS OF AMICI CURIAE; BRIEF OF AMICI CURIAE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMICI CURIAE BRIEF

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 3777 North Harbor Boulevard, Fullerton, California 92835.

On March 3, 2016, I served the within **APPLICATION FOR LEAVE TO FILE AMICI CURIAE BRIEF; STATEMENT OF IDENTITY AND INTEREST OF AMICI CURIAE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMICI CURIAE BRIEF** on the interested parties in said action by placing [X] a true and correct copy or [ ] delivered by one or more of the means set forth below:

SEE ATTACHED SERVICE LIST

[✓] [*Via Mail*]  By depositing said envelope with postage thereon fully prepaid in the United States mail at La Habra, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at La Habra, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit of mailing in affidavit.

[ ] [*Via Electronic Service*] By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. The transmission was reported as complete and without error. *See* Rules of Court, Rule 2.251.

[✓] [*Federal*]  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on March 3, 2016 at Fullerton, California.

*Laura Miller*

LAURA MILLER

## SERVICE LIST

Eric David Vandevelde
Gibson Dunn & Crutcher LLP
333 S. Grand Ave.
Los Angeles, CA  90071
evandevelde@gibsondunn.com
Attorney for Respondent Apple Inc.

Nicole T. Hanna
Gibson Dunn and Crutcher LLP
3161 Michelson Drive 12th Floor
Irvine, CA  92612
nhanna@gibsondunn.com
Attorney for Respondent Apple Inc.

Theodore J. Boutrous, Jr.
Gibson Dunn and Crutcher LLP
333 South Grand Ave.
Los Angeles, CA  90071
tboutrous@gibsondunn.com
Attorney for Respondent Appe Inc.

Theodore B. Olson
Gisbosn Dunn and Crutcher
1050 Connecticut Ave N W
Washington DC 20036
TOlson@gibsondunn.com
Attorney for Respondent Apple Inc.

Allen W. Chiu
AUSA – Office of US Attorney
National Security Section
312 N. Spring St., Suite 1300
Los Angeles, CA  90012
allen.chiu@usdoj.gov
Attorney for Plaintiff USA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Tracy L. Wilkison
AUSA Office of US Attorney
Chief, Cyber and Intellectual Property Crimes Section
312 N. Spring St., 11th Floor
Los Angeles, CA  90012
Tracy.wilkison@usdoj.gov
Attorney for Plaintiff USA

PROOF OF SERVICE