

**William Cody Grammer, SBN 290184**
**121 Breeze Ave**
**Venice, CA 90291**
**(252) 646-3063**
**williamcgrammer@gmail.com**


**Jesse Binnall (*pro hac vice* motion pending)**
**Harvey & Binnall, PLLC**
**717 King Street, Suite 300**
**Alexandria, VA 22314**
**Telephone: (703) 888-1943**
**Facsimile: (703) 888-1930**
**jbinnall@harveybinnall.com**

**Attorney for *Amici Curiae***
**Lavabit LLC**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE SEIZED DURING THE EXECUTION OF A SEARCH WARRANT ON A BLACK LEXUS IS300, CALIFORNIA LICENSE PLATE 35KGD203 | Case No.: 5:16-cm-00010-SP-1 |
| | BRIEF OF AMICUS CURIAE LAVABIT LLC IN SUPPORT OF APPLE INC.'S MOTION TO VACATE |
| | Date: March 22, 2016<br>Time: 1:00 p.m.<br>Place: Courtroom 3 or 4, 3rd Floor<br>Judge: Honorable Sheri Pym |

1

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION............................................................... 4

II. BACKGROUND.................................................................. 5

III. ARGUMENT...................................................................... 6

    A. The Government Seeks Extraordinary Assistance From
       Apple That Far Exceeds The Assistance It Has Previously
       Sought In Cases Involving The All Writs
       Act................................................................................ 6

    B. The Government's Request Is Unduly
       Burdensome.................................................................. 9

    C. The Government's Request Violates Apple's First and
       Thirteenth Amendment
       Rights........................................................................ 12

        1. The Government's position violates Apple's
           Constitutional right to free
           speech.................................................................. 13

        2. The Government's position violates Apple's
           Constitutional right to be free from involuntary
           servitude.............................................................. 15

IV. CONCLUSION................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                     Page(s)

*Butler v. Perry*, 240 U.S. 328 (1916).......................................... 17

*Citizens United v. FEC*, 558 U.S. 310 (2009)............................. 14

*Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995)................................................................. 14

*Hurtado v. United States*, 410 U.S. 578 (1973)......................... 17

*Riley v. California*, 134 S. Ct. 2473 (2014)............................... 10

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988).......................................................... 14

*Robertson v. Baldwin*, 165 U.S. 275 (1897)............................. 17

*Selective Draft Law Cases*, 245 U.S. 366 (1918)...................... 17

*Spence v. Washington*, 418 U.S. 405 (1974)............................. 13

*Texas v. Johnson*, 491 U.S. 397 (1989).................................... 13

*United States v. Kozminski*, 487 U.S. 931 (1988)..................... 16

*United States v. New York Tel. Co.*, 434 U.S. 159 (1977)............ 7

*W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943). 13

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001)............... 9

**Other Authorities**

Edward Moyer, *Obama: NSA Programs Could be 'Redesigned' to Prevent Abuses*, CNET (Dec. 20, 2013), http://www.cnet.com/news/obama-nsa-programs-could-be-redesigned-to-prevent-abuses/..............................................

USENIX Special Interest Group for Sysadmins, The Advanced Computing Systems Association, *System Administrators' Code of Ethics* (Sept. 12, 2003), http://usenix.org/lisa/system-administrators-code-ethics......................................................

## I. Introduction

The Government is seeking extraordinary assistance[1] that far exceeds the scope of the All Writs Act and violates the rights guaranteed to Apple under the United States Constitution. Lavabit is in an unusually helpful position to serve as amicus curiae in this matter because in 2013, it too was compelled to provide extraordinary assistance to the Government. *See In the Matter of the Search and Seizure of Information Associated with [REDACTED] that is Stored and Controlled at Premises Controlled by Lavabit LLC*, Case No. 1:13SW522 (E.D.V.A 2013). The Government's request is an

---

[1] This request is extraordinary because it seeks to compel the use, modification, or disclosure of proprietary intellectual property, such as source code or encryption keys, belonging to an innocent third party. In contrast, ordinary assistance would merely seek to compel access to or the surrender of data subject to an investigation that is already in the possession of a third party.

intrusion not only on Apple, but also on the rights of all Apple customers worldwide. The Government's request should be denied.

## II. Background

In 2013, the Government sought to compel extraordinary assistance from Lavabit without regard for the consequences inflicted upon innocent third parties. Specifically, the consequences to Lavabit as a company, and its reputation for protecting user privacy, along with the tangential harm of surveilling every user who connected to the Lavabit servers.

Specifically, the Government sought to access encrypted e-mails stored on the Lavabit servers, which were impossible to access without a user's password. In contrast to the current situation, and in deference to the target's background and skillset, the Government presumed the password would be impossible to break using brute force. To overcome this barrier, the FBI sought the private encryption key used by Lavabit to protect the Secure Socket Layer ("SSL") and Transport Layer Security ("TLS") connections to their servers.

With the SSL/TLS private key in hand, the FBI would be able to impersonate Lavabit on the Internet. This would allow them to intercept, decrypt, inspect, and modify (either with intent, or by accident) all of connections between Lavabit and the outside world. Presumably connections which were associated with the target would be recorded. This "man in the middle attack" as it is more commonly known, would have allowed them to steal the target's password upon their next login, and access the encrypted data.

In the same vein, the Government now seeks extraordinary assistance from Apple. For the reasons set forth below, the Government's request should be denied.

### III. ARGUMENT

**A.    The Government Seeks Extraordinary Assistance From Apple That Far Exceeds The Assistance It Has Previously Sought In Cases Involving The All Writs Act.**

The Government's motion seeks to force Apple engineers and expropriate the company's private intellectual property to facilitate an investigation. This represents an effort to compel Apple to provide extraordinary assistance in a way that exceeds the Court's power under the All Writs Act.

Courts have used the All Writs Act as a means to compel third parties to offer ordinary assistance to the Government. In *United States v. New York Tel. Co.*, the United States Supreme Court held that a district court correctly ordered a telephone company to install a pen register on a user's telephone line at the Government's request. 434 U.S. 159 (1977). The Court explained the standard for forced compliance cases and defined the scope of the All Writs Act as applied to third parties who are in a position to frustrate the implementation of a court order, or the proper administration of justice. *Id.* at 174. The telephone company argued that allowing the Government to order it to install a pen register on a subject's telephone line would create a slippery slope and make the All Writs Act a catchall for Government action. The Court disagreed and held, in part, that the requested Government action was benign because the telephone company regularly used pen registers. *Id.*[2] This

_____

[2] The Court explained that a public utility company with a duty to serve the public had a substantial duty to provide assistance. The use of pen registers was not offensive because the company regularly used pen registers for checking billing operations, detecting fraud, and preventing violations of law. The Court also reasoned that the request was not offensive because the company agreed to supply the FBI with all the information necessary to

benign action is the sort of ordinary assistance allowed under the All Writs Act.

The Government is not seeking *ordinary assistance* from Apple. Rather, the Government is seeking *extraordinary assistance* that far exceeds the scope permitted under the All Writs Act. This type of assistance was not contemplated by the Court in *New York Telephone* and has never been permitted by any court in any jurisdiction. The Government is not simply seeking information about a single iPhone user. The Government is demanding that, under penalty of law, a private entity be required to engineer, test, and produce custom software using Apple's highly valuable intellectual property to obtain data stored on an individual's iPhone. This goes far beyond ordering the installation of a benign pen register. The Government's extraordinary request eviscerates the purpose of the All Writs Act, and unnecessarily compromises the

---

install its own pen registers. Additionally, the Court noted that because the order from the lower court provided that the company be reimbursed, compliance with the request required minimal effort from the company, and there would be no disruptions to the company's operations, the Government's request was not burdensome.

proprietary intellectual property of a private company that has not been implicated, in any way, with the crime under investigation.

Congress does not hide elephants in mouseholes. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). If Congress had intended that private entities and individuals be forced to provide such extraordinary assistance to Government investigations, Congress would have passed a law to that extent.

**B.    The Government's Request Is Unduly Burdensome.**

Apple sells more than a product – it sells a global brand. Millions of people have come to trust the Apple brand and its products. An important basis for that trust is that Apple represents to consumers that their personal and private information will be secure on its devices. People keep many types of private and personal information on their Apple devices, including financial information, e-mails, text messages, personal notes, reminders, calendar appointments, and confidential client information. The Supreme Court recently explained that these phones could just as easily be called "minicomputers" because of the vast quantities of information they can store and the varying functions they can

perform. *See Riley v. California*, 134 S. Ct. 2473, 2489 (2014). In the wrong hands, such information can be used for identity theft, harassment, blackmail, and other evils.

Apple consumers are comfortable putting valuable and personal information on their iPhones because of Apple's advancements in security and encryption protocols on its operating system ("iOS"). In fact, Apple engineered an iOS so secure that even the company's access to the private information on a locked iPhone is intentionally limited. Apple purposefully declined to build a "backdoor" into the iOS because it knows that the system would then become vulnerable to attacks by bad actors seeking to access and exploit the information stored on the system.

Technology companies that develop such secure methods of storing private and sensitive information develop a bond of trust with their customers.[3] They rely on these companies to ensure that

---

[3] System Administrators, who are responsible for vast quantities of confidential data, have long been held to an ethical code requiring them to "maintain and protect the confidentiality of any information to which [they] may have access, regardless of the method by which [they] came into knowledge of it." USENIX Special Interest Group for Sysadmins, The Advanced Computing Systems Association, *System Administrators' Code of Ethics* (Sept. 12, 2003),

their information will remain private, secure, and away from the prying eyes of hackers, dictators, and others who would compromise their privacy for nefarious purposes. Doctors use the devices to store confidential medical information. Lawyers use the devices for privileged communications with their clients. Ordering Apple to construct a new operating system that can be forcefully loaded on an individual's iPhone means coercing Apple, to violate the sacred trust it has built with its customers. This violation will harm both its competitive advantage, its reputation as a manufacturer of secure devices, and, by extension, harm other companies, like Lavabit, that have developed secure storage methods.

Hush Mail, a Canadian e-mail company represents what can happen when a technology company is forced to acquiesce to a demand to defeat its own security. Hush Mail provides a secure e-mail service to its customers and was once an employer to over fifty

http://usenix.org/lisa/system-administrators-code-ethics. Technology companies that have elevated access to confidential information are, in many ways, the modern descendants of such system administrators and most of those companies would almost certainly agree that they are bound to the same ethical obligations.

individuals. When the Canadian government forced the company to produce the confidential communications of one of its customers, Hush Mail was economically devastated, laying off nearly all of its employees. *See* Ex. A. Affidavit of Cliff Baltzley.

Although Apple's customer base may be broader than Hush Mail's, it is against public policy for the Court to take action that risks harming an innocent American business. Moreover, establishing precedent that allows the Government unfettered use of the All Writs Act to force companies to build backdoors into secure digital infrastructures will be extraordinarily harmful to American-based entities like Lavabit. Such precedent would likely result in many businesses moving their operations offshore, therefore, making it more difficult for law enforcement to obtain even ordinary assistance from such companies.

**C.     The Government's Request Violates Apple's First and Thirteenth Amendment Rights.**

The Government's position violates Apple's Constitutional right to free speech and to be free from involuntary servitude. The fact that Apple is a corporation and not an individual is of no consequence. As a corporation, Apple has the same rights and

privileges as an individual and is therefore entitled to the protection of the First and Thirteenth Amendments. Apple is being compelled to provide speech that contravenes its fundamental beliefs, that is, the belief that its customers should have the highest level of security and privacy in their personal data. The proposed action will also violate the Thirteenth Amendment by forcing Apple to perform labor against its will. The Government's proposed use of the All Writs Act, therefore, is unconstitutional as applied to Apple.

## 1.   The Government's position violates Apple's Constitutional right to free speech.

Under the First Amendment, both spoken words and symbolic actions qualify as protected speech. The First Amendment's protection "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citing *Spence v. Washington*, 418 U.S. 405, 409-11 (1974)). The First Amendment guarantees individuals the right to speak freely and the right to refrain from speaking or endorsing beliefs with which one does not agree. *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 645 (1943). "Since all speech inherently involves choices of what to say and what to leave unsaid, one important manifestation of the principle

of free speech is that one who chooses to speak may also decide what not to say." *Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995) (citations omitted) (internal quotation marks omitted). The Supreme Court has emphasized that the protections of the First Amendment extend to corporations and individuals alike. *Citizens United v. FEC*, 558 U.S. 310 (2009) ("[s]peech does not lose First Amendment protection simply because its source is a corporation").

Further, the government may not require "affirmation of a belief and an attitude of mind," *West Virginia State Bd. of Educ.*, 319 U.S. at 633. Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988). Apple clearly demonstrates its interest in protecting and securing the privacy of its users in its brief. *See* Apple Inc.'s Motion to Vacate Order Compelling Apple Inc. to Assist Agents in Search and Opposition to Government's Motion to Compel Assistance. Ordering Apple to access the data on its customer's iPhone goes against its

fundamental stance on privacy and compromises its core beliefs in maintaining a secure operating system for its users.

If the Government is successful, then Apple users will be unable to distinguish between Apple's voluntary speech and speech that is compelled by the Government. An example of the negative externalities that may arise from such confusion involves Apple's use of automatic updates for iOS. These updates are important, and range from providing consumers with new features to fixing glitches in the software. Automatic updates are often critical to iOS security because they fix new vulnerabilities. Because consumers trust Apple, many iPhone owners have these automatic updates turned on. If the Government is successful, however, many consumers may not be as trustful of these updates – because of a fear (actual or imagined) that the updates will contain malware to provide a backdoor into the data on their iPhones. The result is that fewer people will automatically accept the automatic updates and the overall security of iPhones across the country will suffer.

2.   **The Government's position violates Apple's Constitutional right to be free from involuntary servitude.**

15

The Thirteenth Amendment to the United States Constitution protects an individual's right to be free from involuntary servitude, except in exceptional circumstances. *United States v. Kozminski*, 487 U.S. 931, 943-44 (1988). Such exceptional circumstances are not present in this case, and therefore, the Government's attempt to force Apple to generate new software violates the Thirteenth Amendment.[4]

The adoption of the Thirteenth Amendment in 1865 abolished slavery in the United States. It is not, however, limited to that purpose and also includes other forms of involuntary servitude. *Id.* at 942. The Thirteenth Amendment expressly prohibits forcing labor on another, except in limited circumstances, none of which are present in this case.

The exceptions to the Thirteenth Amendment are narrow; limited to cases well established in common law at the time of the Thirteenth Amendment's ratification. For instance, the conscription

---

[4] Obviously, Lavabit does not in any way analogize this dispute between Apple and the U.S. Government, to the institution of slavery. Nevertheless, the clear text of Thirteenth Amendment, and its supporting case law, prohibit the Government's motion seeking to force Apple, under penalty of law, to provide a service that it does not wish to provide.

of Americans into military service does not amount to a violation of the Thirteenth Amendment. *Id.* at 943-44 (citing *Selective Draft Law Cases*, 245 U.S. 366, 390 (1918)). The common law institution of forced jury service is also not a violation. *Id.* (citing *Hurtado v. United States*, 410 U.S. 578, 589, n. 11 (1973)). *See also Butler v. Perry*, 240 U.S. 328 (1916) (holding that forced roadwork is not a violation of the Thirteenth Amendment); *Robertson* v. *Baldwin*, 165 U.S. 275 (1897) (holding that the rights of parents and guardians to the custody of their minor children, as well as laws preventing sailors who contracted to work on vessels from deserting their ships, do not violate the Thirteenth Amendment). In describing these exceptions, the Supreme Court in *Butler v. Perry* explained that, "[t]he great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers." 240 U.S. at 333.

Unlike the cases of forced military service or jury duty, here the Government is not exercising an essential power that protects effective government. Requiring Apple to engineer a new product to infiltrate the iPhone of a deceased criminal is not recognized as an

17

essential government power. As the Government's request is an unconstitutional attempt at involuntary servitude in violation of the Thirteenth Amendment, it should be denied.

## IV. CONCLUSION

In discussing the N.S.A.'s controversial bulk data collection program in 2013, President Obama opined that "just because we can do something doesn't mean we necessarily should, and the values that we've got as Americans are ones that we have to be willing to apply beyond our borders." Edward Moyer, *Obama: NSA Programs Could be 'Redesigned' to Prevent Abuses*, CNET (Dec. 20, 2013), http://www.cnet.com/news/obama-nsa-programs-could-be-redesigned-to-prevent-abuses/. That analysis is quite important here. It might be technologically possible for Apple to construct a backdoor iOS for the iPhone that will give others access to sensitive and encrypted data. But doing so would require weakening Americans privacy and harming American businesses. Lavabit hopes that the United States will take steps forward towards protecting electronically privacy. This case is an important opportunity for the Court to take a step in that direction—a step,

for instance, that could be an important factor in Lavabit opening its doors to email customers once again someday. Because the Government's proposal is not authorized by statute and is prohibited by the Constitution, Lavabit urges the Court to grant Apple's Motion to Vacate Order Compelling Assistance and deny the Government's Motion to Compel Assistance.

Dated: March 3, 2016          Lavabit LLC

By Counsel

William Cody Grammer, SBN 290184

121 Breeze Ave
Venice, CA 90291
(252) 646-3063
williamcgrammer@gmail.com

HARVEY & BINNALL, PLLC

Jesse Binnall, (*pro hac vice* motion pending)

19

717 King Street, Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
jbinnall@harveybinnall.com

Counsel for *Amicus Curiae* Lavabit LLC

# **PROOF OF SERVICE**

On March 3, 2016, I caused to be served through mail (USPS) and e-mail the foregoing document described as:

BRIEF OF AMICUS CURIAE LAVABIT LLC IN SUPPORT OF APPLE

INC.'S MOTION TO VACATE

on each person on the attached Service List.

_____

Jesse Binnall

## **Service List**

| Service Type | Counsel Served | Party |
|---|---|---|
| Mail & E-mail | Theodore J. Boutrous, Jr.<br>Nicola T. Hanna<br>Eric D. Vandevelde<br>Gibson, Dunn, Crutcher LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br>Email: tboutrous@gibsondunn.com<br>nhanna@gibsondunn.com<br>evandevelde@gibsondunn.com | Apple, Inc. |
| Mail & E-mail | Theodore B. Olson<br>Gibson, Dunn & Crutcher LLP | Apple, Inc. |

| | | |
|---|---|---|
| | 1050 Connecticut Avenue N. W.<br>Washington, DC, 20036-5306<br>Telephone: (202) 955-8500<br>Facsimile: (202) 467-0539<br>Email: tolson@gibsondunn.com | |
| Mail & E-mail | Marc J. Zwillinger<br>Jeffrey G. Landis<br>Zwillgen PLLC<br>1900 M Street N.W., Suite 250<br>Washington D.C. 20036<br>Telephone: (202) 706-5205<br>Facsimile: (202) 706-5298<br>Email: marc@zwillgen.com<br>jejj@zwillgen.com | Apple, Inc. |
| Mail & E-mail | Eileen M. Decker<br>Patricia A. Donahue<br>Tracy L. Wilkison<br>Allen W. Chiu<br>1500 United States Courthouse<br>7312 North Spring Street<br>Los Angeles, California 90012<br>Telephone: (213) 894-0622<br>Facsimile: (213) 894-8601<br>Email: Tracy.Wilkison@usdoj.gov<br>Allen.Chiu@usdoj.gov | United States of America |

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE SEARCH<br>OF AN APPLE IPHONE SEIZED<br>DURING THE EXECUTION OF A<br>SEARCH WARRANT ON A BLACK<br>LEXUS IS300, CALIFORNIA<br>LICENSE PLATE 35KGD203 | ) ) ) ) ) ) ) ) | Case No. ED No. CM 16-10 (SP) |

## AFFIDAVIT

I, Cliff Baltzley, declare as follows:

1.      I, Cliff Baltzley, am the Founder of Hush Communications Corporation.  I am over the age of 18 and I have personal knowledge of the facts stated in this declaration through my involvement in the events or though my company responsibilities.  I would testify to these facts if called as a witness.

2.      In 2001, the full time global employment size of Hush Communications Corporation and its wholly owned subsidiaries, was over 50 employees.  In 2009, it was less than 75% of that size.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

_____        _____
Cliff Baltzley                                                 Date

Mar 3, 2016