1  RICHARD F. TAUB, SBN 273865
2  rtaub@taublawyers.com
   TAUB & TAUB, P.C.
3  15260 Ventura Blvd., Ste. 840
4  Sherman Oaks, CA  91403
   Tel.:  818.259.5300
5  Fax:  818.259.5307
6
   Amicus Curiae
7



8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  IN THE MATTER OF THE              ED No. CM 16-00010 (SP)
12  SEARCH OF AN APPLE IPHONE
    SEIZED DURING THE                 **AMICUS CURIAE BRIEF RE: 28**
13  EXECUTION OF A SEARCH             **U.S.C. § 1651**
14  WARRANT ON A BLACK LEXUS
    IS300.  CALIFORNIA LICENSE
15  PLATE 35KGD203
16

17

18       *Amicus Curiae* Richard F. Taub, Esq. (hereinafter "Undersigned

19  Counsel"), hereby files this *Amicus Curiae* Brief to assist the Court in its

20  analysis of certain issues to be considered in this case regarding the

21  Government's Motion to Compel Assistance and Apple Inc.'s Motion to

22  Vacate Order Compelling Apple Inc. to Assist Agents in Search, and

23  Opposition to Government's Motion to Compel Assistance.

24

25

26

27

28

                                    i

AMICUS CURIAE BRIEF RE: 28 U.S.C. § 1651

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................ii

PRELIMINARY STATEMENT..................................................................1

POINTS AND AUTHORITIES..................................................................1

    I.      The Scope of 28 U.S.C. § 1651 (the "All Writs Act")....................1

          A.     Brief History of the All Writs Act and Requirement of Underlying Statutory Authority for Proposed Actions....................................................................1

          B.     The All Writs Act's use with Third Parties to Effect the Purpose of Specific Statutory Authority and the Present State of Legislation to Allow Law Enforcement to Defeat Private Encryption....................................................3

          C.     Reasonableness of Burden Upon Third Party Apple..........................................................................6

CONCLUSION.........................................................................12

i

# TABLE OF AUTHORITIES

## Cases

In re Application of United States for an Order etc.
        (1980) 616 F.2d 1122, 1132-3...................................................8, 9

In re Order Requiring Apple, Inc.
        (2015) U.S. Dist. Lexis 138755 (E.D.N.Y. 2015), 10.....................5

McClung v. Silliman
        (1821), 6 Wheat, 598.......................................................................1

McIntire v. Wood
        (1813), 7 Cranch 504.......................................................................1

Pennsylvania Bureau of Correction v. United States Marshals Service
        (1985) 474 U.S. 34, 40, 41, 43.............................................1, 2, 3

U.S. v. Alkali Export Assn. v. United States
        (1945) 325 U.S. 196....................................................................2, 3

United States v. New York Telephone Co.
        (1977) 434 U.S. 159, 174.........................................................6, 7, 8

## Statutes

28 U.S.C. § 1651.....................................................................1, 3, 5, 12

18 U.S.C. § 2518(4) and (5)...............................................................4, 6, 7

F.R.C.P. Section 41...................................................................................4

## Acts

Comprehensive Counter-Terrorism Act of 1991.......................................5

## PRELIMINARY STATEMENT

This Amicus Curiae Brief has been authored solely by the Undersigned Counsel.  Neither the Undersigned Counsel nor the points and authorities contained herein have any connection whatsoever to the parties to this action.  The purpose of this Brief is to aid the Court primarily in its decision in this matter by expounding upon the relevant scope of Title 28 U.S.C. § 1651 to determine whether it may authorize the type of remedy sought by the Government beyond the arguments and authorities set forth in the parties' applications and motions.

## POINTS AND AUTHORITIES

I.     **The Scope of 28 U.S. C. § 1651 (the "All Writs Act")**

### A. Brief History of the All Writs Act and Requirement of Underlying Statutory Authority for Proposed Actions

Title 28 U.S.C. § 1651, the present All Writs Act originally was codified in section 14 of the Judiciary Act of 1789.  *Pennsylvania Bureau of Correction v. United States Marshals Service* (1985) 474 U.S. 34, 40.  The All Writs Act in its original form provided in pertinent part as follows:

> all the… courts of the United States, shall have power to issue writs of *scire facias, habeas corpus*, and all other writs **not specifically provided for by statute**, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law.

*Id.* [emphasis added]   The United States Supreme Court's early view of the scope of the Act was that it was intended to fill in those small gaps of federal judicial power threatening to thwart the otherwise proper exercise of federal courts' jurisdiction.  *Id.* (citing to *McClung v. Silliman* (1821), 6 Wheat, 598 and *McIntire v. Wood*

1

(1813), 7 Cranch 504).  The original phrase "not specifically provided for by statute" remained explicitly in the All Writs provision until 1948. *United States Marshals Service* at 41.  The legislative history of the amendment to the All Writs Act stated that the new section was "expressive of the construction recently placed upon that law by the Supreme Court in the case of *U.S. v. Alkali Export Assn. v. United States*, 325 U.S. 196 (1945)."  *United States Marshals Service* at *Id.* In *Alkali,* the Court rejected use of the All Writs Act to enable the Court to review a lower court's determination where jurisdiction did not lie under an express statutory provision, even though that express language about the underlying statutory provision was no longer found in the amended statute.  *Id.*  The *Alkali* Court held that

> [t]he writs may not be used as a substitute for an authorized appeal; and where, as here, the statutory scheme permits appellate review of interlocutory orders only on appeal from the final judgment, review by certiorari or other extraordinary writ is not permissible in the face of the plain indication of the legislative purpose to avoid piecemeal reviews.

*Id.*  In this instance, the absence of an underlying statute providing for the type of review sought was fatal to an attempt to invoke the All Writs Act to accomplish that goal.

The *United States Marshals Service* case analyzed the authority of the federal district court to order the Marshals Service to transport state prisoners for federal *habeas* hearings.  The United States Supreme Court in the *Marshals Service* case held, most significantly to the case at bar, that the All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.  *Id.* at 43.  It further reasoned that "[a]lthough that Act empowers federal courts to fashion extraordinary remedies when

the need arises, it does not authorize them to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.*  The Court concluded that the District Court has no authority under the All Writs Act *alone* to order the Marshals Service to transport state prisoners to federal courts in the absence of specific statutory authority.  So, first there must be an enabling statute permitting the underlying action for which the All Writs Act *may* provide a vehicle to complete its purpose.

### B. The All Writs Act's Use with Third Parties to Effect the Purpose of Specific Statutory Authority and the Present State of Legislation to Allow Law Enforcement to Defeat Private Encryption

In its present form, the All Writs Act provides in pertinent part that "[t]he Supreme Court and all courts established by Act of Congress may use all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). Regardless of the missing language regarding "express statutory authority", under *Alkali,* an underlying statutory authority must still be present.  *See Alkali* at *Id.*  However, statutory authority specifically addressing the particular issue at hand controls over the All Writs Act.  *See United States Marshals Service* at 34.  As set forth in *United States Marshals Service,*

> Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issues ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

So, in the event of a statute specifically addressing third party compliance in a particular context, it obviously controls over the All Writs Act in

3

specifying a remedy and procedure for implementation.

Constitutional and other limitations aside, the degree to which a statute authorizes the type of action at issue or even specifically addresses third party assistance should provide insight into the degree upon which the Court may expect to compel third party assistance. Title 18 § 2518(4) and (5) of the wire interception statute provides a perfect example of the degree that a Court may involve third parties in the context of a substantive statute enabling the type of relief sought generally with the aid of the All Writs Act to provide a specific vehicle to do so. Most importantly, section 4(e) of that provision specifically provides for an order directing the assistance of a telecommunications provider with protections against unreasonable interference and to compensate such providers. *See* 18 U.S.C. § 2518(4)(e). It stands to reason that an Order co-opting a third party under the wire interception statute could carefully follow Section 4(e) with complete impunity short of constitutional limitations. In contrast, it stands to reason that an order directing the assistance of a third party in the absence of such *specific* legislative direction regarding third party involvement would have to be more circumscribed under an order whose only legal basis for third party involvement is the All Writs Act.

In this case, Federal Rule of Criminal Procedure 41 provides the only underlying legal basis for the Government's action. Rule 41 is itself completely silent as to third party assistance to accomplish its goals.

However, this case presents more than the question of the All Writs Act's scope over third party assistance in the absence of legislation containing third party assistance provisions. This case presents the question of what power the All Writs Act confers on a District Court when Congress has decided specifically not to act. The District Court in *In re*

4

*Order Requiring Apple, Inc.*, 2015 U.S. Dist. Lexis 138755 (E.D.N.Y. 2015) addressed precisely that issue.  It analyzed, *inter alia*, the legislative history of the Comprehensive Counter-Terrorism Act of 1991 ("CALEA"), a 2012 note by Senator Leahy, a co-sponsor of CALEA that the Obama Administration had not proposed specific amending legislation on the issue of the law failing to keep up with the type of technology at issue in this case, the proposed introduction of Bills from 2015 to preclude the government from forcing a private entity such as Apple to compromise the kind of data security at issue in this case.  *See generally In re Order Requiring Apple, Inc.* The District Court in *In re Order* noted that Congress is plainly aware of the lack of statutory authority, but has thus far failed to either create or reject the type of relief the Government seeks here.  *Id.* at 10.  That Court indicated that, under these circumstances makes it much less obvious that the relief sought herein would be available under the All Writs Act, *id.,* and concluded that this analysis "strongly suggests that granting the instant motion **would be inconsistent** with the purpose of the All Writs Act as interpreted in the aforementioned cases." *Id.*  [emphases added]  The Court then granted a due process hearing for Apple before that Court made a final decision.  Similar to our case, the present state of the law is that  debate rages on regarding the issue of whether to give the Government the awesome power of defeating privacy interests that the public has in their data in favor of a criminal investigation.  Congress is aware of the issues, but has not acted, which continues to suggest that a far reaching decision to compel a manufacturer to create code to defeat its own encryption, upon which members of the public have relied in their purchase decision and use of Apple's product, is not authorized by the All Writs Act standing alone.

### C. Reasonableness of Burden Upon Third Party Apple

Also to be considered by this Court is the reasonableness of the Government's request of third party manufacturers not merely to implement existing tools or process, but to create one at considerable effort and expense. The power of federal courts to impose duties upon third parties is not without limits; unreasonable burdens may not be imposed. *United States v. New York Telephone Co.,* 434 U.S. 159 (1977). At issue in the *New York Telephone Co.* case was whether a highly regulated public telephone service utility with a duty to serve the public had a substantial interest in not providing "meager" assistance needed by the FBI in its investigation to determine whether the utility's facilities were being used by a criminal enterprise. *See Id.* at 174. Underscoring the Court's decision that New York Telephone Co. could be compelled to assist in the installation and operation of pen registers was the pre-existing mandate from Congress under then-existing 18 U.S.C. § 2518(4) for a "communication common carrier to furnish [law enforcement] all information, facilities, and technical assistance necessary to accomplish" wire interception unobtrusively. Thus, the *New York Telephone Co.* case rather clearly stands for the proposition that, in the presence of a statute specifically providing for the assistance of third parties necessary to avoid frustration of a Court's lawful order, and one that requires only "meager" assistance at that, it is more likely the All Writs Act will allow the district court to fashion a remedy to compel that assistance.

In this case, there is no such statutory provision that evinces congressional intent to empower the district court to specifically require third party Apple to act in the extraordinary fashion requested by the Government. In *New York Telephone Co.* the express statutory authority

6

found under 18 U.S.C. § 2518(4) specifically contemplated and set forth a procedure for the assistance by a telecommunications provider in the case of wire interception orders.  In fact, section 4 of that Act provides for parameters and protections for third party service providers.  Here, there are no statutory provisions or other sources of law requiring the manufacturer of a smartphone to dismantle its data security methods, whether by providing encryption keys or to undermine its security to allow entry to a passcode-protected phone.  In the absence of any legislative authorization, procedures or limitations on the assistance of a third party manufacturer under these circumstances, the Court's inherent reach to compel the assistance of that third party in aid of execution of a search warrant should be quite limited and not reach as far as to force the third party manufacturer into involuntary servitude to substantially modify its operating system to undermine its security features.[1]  Most importantly, however, this case presents much more than the "meager" assistance required under the wire interception act and of the third party telecommunications provider in *New York Telephone Co.*  Private third party manufacturer Apple has a substantial interest in resisting the forced labor sought by the Government under circumstances where it is not a public utility and is not requested to provide "meager" assistance.  It is, in fact, asked to become involved in a considerable amount of research and development.  The Government's request here stretches the holding in the

_____

[1] The Undersigned Counsel freely concedes that, there may be a different result if this case had involved the mere requirement that Apple turn over to the Government a pre-existing "back door" passcode to unlock all iPhones.  While that circumstance would be just as dangerous to the data security of the public, it would not necessarily be prohibited by the All Writs Act, even if it may be prohibited by other provisions of law.

7

*New York Telephone Co.* case beyond its breaking point.

The Court would, likewise, come to the same conclusion that the requests of the Government here even if it were to apply the Ninth Circuit's analysis associated with third party telecommunications providers under compulsion to assist the Government.

Even if the Court utilized a similar analysis to that set forth for telecommunications providers for which their assistance is sought, the same conclusion against compelling Apple to act as requested would result. The Ninth Circuit set forth a procedure for due process to be accorded third parties beset by an All Writs order to assist the government and a set of factors for the federal district court to determine the reasonableness of the burden of compliance of the All Writs order.[2] In the case of *In re Application of United States for an Order etc.* (1980) 616 F.2d 1122, the Ninth Circuit exercised its authority to supervise the administration of criminal justice within the circuit to determine that a company whose cooperation in electronic surveillance[3] is sought should be afforded reasonable notice and an opportunity to be heard *prior* to the entry of any order compelling its assistance. *Id.* at 1132-3.

———————————————

[2] The Court should consider that these factors were imposed in the Ninth Circuit for such a determination in the context of third party public utilities mandated to serve the public as set forth in the *New York Telephone Co.* case and not for other private for-profit third parties, publicly traded or not. In other words, under *New York Telephone Co.*, it may be appropriate for the Court to include in a remoteness analysis of third party, Apple Inc. from the device at issue as manufacturer and not its owner, and cooperation sought that Apple Inc. is not similarly situated to a public utility as to the utility's independent obligations to serve the public in this manner and, thus, its Government. If it were, the Court would logically have to consider Apple's contention to be serving the public by using its resources to oppose the creation of a "back door" to its encryption and to undermine the privacy of millions of iPhone owners as collateral damage to Apple's compelled assistance at the  Government's behest.

[3] It makes little sense to suggest that the procedure set forth in that case should be read to be limited to electronic surveillance cases when the process created was clearly meant to provide due process and a burdensomeness determination as to third party direction by court order in the All Writs Act context. The fact that electronic surveillance may be more common than the encryption issues in this case is irrelevant.

The Ninth Circuit imposed upon federal district courts within its supervisory authority, a series of non-exhaustive factors to be utilized at this due process hearing that includes the following: (1) the likelihood that the surveillance will develop information useful in a criminal prosecution; (2) the availability of alternative means for obtaining the information; (3) the extent of the burdens which the requested surveillance would place upon the telephone company; (4) the extent to which the restrictions upon the scope of the surveillance can minimize interference with company operations; and (5) the likelihood that the company can be fully compensated for the services provided (collectively, "Reasonableness Factors"). Significantly, the Ninth Circuit specifically determined its procedure would safeguard the interests of communications carriers, will not interfere with the government's pursuit of appropriate investigative tools, and would provide the district courts with a sound basis for the wise exercise of their discretion. *Id.* at 1133.

In the context of the case at bar, those Reasonableness Factors that appear, *prima facie,* to apply in electronic surveillance matters can easily be slightly more generalized to read as follows: (1) the likelihood that the requested assistance of the third party will develop information useful in a criminal prosecution, (3) the extent of the burdens which the compelled assistance would place upon the third party, (4) the extent to which the scope of compelled assistance will minimize interference with company operations; and (5) the likelihood that the company can be fully compensated for the services provided. Since the Ninth Circuit specifically indicated that these factors were non-exhaustive, other non-enumerated factors should be considered by the Court in this case. For instance, the Court should consider, under these facts, (6) whether the public interest in

the adverse impact upon United States citizens' privacy interests in the compromised security of ubiquitous smartphones used to maintain confidential data outweighs the Government's interest in securing data from a single iPhone, (7) whether the compelled assistance of third party, Apple Inc. ("Apple") requires mere assistance or longer term employment, and, perhaps, (8) whether the assistance at issue requires the creation of a product and not the mere use of pre-existing tools ordinarily used by the third party in the scope of its business.

In the context of this case, the analysis weighs rather heavily in a finding of unreasonable burden upon third party Apple.  The Government rather freely admits that it has no idea what, if anything, is on the cellphone. The principal criminal shooters are dead.  The prosecution of a third party for his involvement *collateral* to the cellphone suggests no such useful evidence present on the cellphone at issue.  The Government's theory of its user's contact with ISIS suggests it unlikely that even complete access to the cellphone will yield anything useful for a criminal prosecution.  As has been suggested by Apple, the Government may have alternative means in seeking Apple's assistance merely to access the iPhone at issue for its data, rather than requiring Apple to actually create code to disable the auto erase and delay safeguards.  Apple has also articulated substantial burdens placed upon it to enlist staff, time and effort to create code to defeat its original security measures, and its burden of having to defeat its original security plan in the presence of a rejected legislative plan to prevent unbreakable encryption systems.  However, the Government's

position on that matter is, at present, scant on the subject.[4]  Interference with Apple's operations is also articulated as part of its attached declarations relating to the efforts in creating the code desired by the Government.  Nevertheless, it does appear likely that Apple can be fully compensated by the Government for the employment of its personnel to accomplish the Government's goal.  The application of the facts to these factors vitiate in favor of granting Apple's requested relief in vacating the existing Order.

The impact on the risks regarding the invasion of privacy to iPhone users, however, weighs heavily against a finding that the burden would be reasonable.  The entire purpose, in the modern world, of a high level of encryption (permitted by Congress) to exist in safeguarding data is to recognize the strong interest in privacy in that very data.  The data is encrypted in a manner that even the manufacturer cannot invade without creating a tool of the type sought by the Government in this case, which Apple has (to this point and prior to the events giving rise to the order compelling Apple to act) voluntarily refused to do.  This issue should be considered by the Court to, perhaps, be the weightiest factor to be considered under the facts of this case because of its global impact.  Indeed, the impact to third party Apple could be equally catastrophic in deterring users from purchasing electronic products that are unsecure for the protection of their data.  Even if putative consumers of Apple products erroneously believe that the release of code that undermines the iPhone

---

[4] In fairness to the Government, its Reply Brief is not due until after the deadline for the filing of this Amicus Brief.  Consequently, if the Government can undermine Apple's burdensomeness claims, that may change the weight of this particular factor.

11

security encryption measures could be sufficient to turn users away from purchasing what are perceived to be unsecured Apple products.  As articulated by Apple, the cooperation sought appears to be longer and more involved than the employment of traditional forms of All Writs third party assistance (though the Government may yet set forth facts in support of its position that the assistance is meager).  These factors tend to weigh heavily in vacatur of the Court's order compelling third party Apple to cooperate as requested by Apple.

Lastly, the requirement that Apple have to create code or any other product to assist the Government, whether otherwise necessary to defeat something Apple itself put in place or to defeat the protections sought by others is, perhaps, the most reprehensible of effects of the Government's request.  This requirement that any third party have to go to any real or considerable effort to create something under punishment of contempt for failing to do so smacks so repugnantly of involuntary servitude, regardless of the actual inapplicability of the Thirteenth Amendment to the United States Constitution to this case.  The stretching of what it means under the All Writs Act to render assistance under threat of punishment to the point of creation of code or any other product easily takes the concept of assistance to the point of "snapping" and, it is shocking to think of an Article III Court enforcing it in the absence of a specific underlying statutory authority authorizing it.  In sum, consideration of the Reasonableness Factors with a few additional non-enumerated factors relating to glaring issues presented in this case inexorably lead to the conclusion that the existing *ex parte* Order should be vacated and the Government's motion to compel denied.

## CONCLUSION

Title 28 U.S.C. 1651(a), the All Writs Act is not, itself a substantive

grant of powers to the district courts to act with the issuance of *ad hoc* writs. It merely provides the issuance of all writs necessary to the completion of the Court's jurisdiction where created by another source of law. Where Congress acts to provide for the specific cooperation of third parties to a degree not limited by the Constitution, the district courts may issue orders pursuant to that authority. In the absence of congressional authority, and especially when Congress has chosen not to act when it is aware of the desire of law enforcement to overcome third party private encryption (which is quite telling), the district court's ability to complete its jurisdiction by compelling the aid of third parties is quite limited. In this case, the legislative refusal to act inexorably leads to the conclusion that the Court may not use the All Writs Act to compel Apple to act as the Government requests. Alternatively, the Ninth Circuit's due process hearing and factors used for compelling the assistance of third party telecommunication providers for electronic surveillance, if applied to the situation at bar, suggests rather clearly that the burden upon Apple is too unreasonable so as to violate Apple's rights under the All Writs Act (and perhaps, the Constitution as well). Accordingly, the Order compelling Apple to provide assistance to the Government in the manner requested by the Government should be vacated forthwith.

Taub & Taub, P.C.

By:   /s/ Richard F. Taub
      Richard F. Taub
      Amicus Curiae

13