LODGED

David W. Opderbeck
Professor of Law
Seton Hall University Law School
One Newark Center
Newark, NJ 07101
(973) 642-8496



CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

Justin (Gus) Hurwitz
Assistant Professor of Law
University of Nebraska College of Law
1875 N 42nd St, Lincoln, NE 68503
(402) 472-1255

*Amici Curiae*

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE SEIZED DURING THE EXECUTION OF A SEARCH WARRANT ON A BLACK LEXUS IS300, CALIFORNIA LICENSE PLATE 35KGD203 ) ) ) ) ) ) ) ) ) ) ) | ED No. CM 16-10 (SP)<br><br>**MOTION FOR LEAVE TO FILE AND BRIEF AMICUS CURIAE OF PROFS. DAVID W. OPDERBECK AND JUSTIN (GUS) HURWITZ**<br><br>**Hearing:**<br>Date:    March 22, 2016<br>Time:    1:00 p.m.<br>Place:   Courtroom 3 or 4<br>Judge:   Hon. Sheri Pym |

Amici Curiae Law Professors hereby request leave to file the brief included herein as Amici Curiae pursuant to the court's February 19, 2016 Scheduling Order. The amicus brief is submitted in support of neither party. A proposed form of Order granting leave to file as Amici

1

Curiae is also enclosed.

Dated: March 3, 2016

Respectfully submitted,

David W. Opderbeck
Professor of Law
Seton Hall University Law School

Justin (Gus) Hurwitz
Assistant Professor of Law
University of Nebraska College of Law

*Amici Curiae*

## TABLE OF CONTENTS

INTEREST OF AMICI AND REQUEST FOR LEAVE TO FILE ....................................... 2

ARGUMENT ............................................................................................. 3

   1.  Apple Has Been Afforded Due Process of Law.................................... 4

   2.  Apple's Amici's Statutory and Separation of Powers Argument Have Already Been Resolved by the Supreme Court........................................................ 5

   3.  Apple's Amici's – and Judge Orenstein's – Characterization of CALEA and ECPA is Incomplete ..................................................................................... 9

   4.  Limitation (b)(3) Either Does Not Apply or Indicates Apple's Assistance Can be Required 12

## INTEREST OF AMICI AND REQUEST FOR LEAVE TO FILE

Amici are law professors at schools in the United States who teach, research, and publish in the areas of law and technology, privacy, information security, Internet and cybersecurity law, and computer crimes law. We have no personal interest in the outcome of this case, but have a professional interest in seeing that the law develops to encourage creativity and innovation and serves the public interest, including the public interest in national and personal security, and in the exercise of sound policy. We write particularly in response to the Amicus Curiae Brief of Law Professors In Support of Apple, Inc. We wish the court to understand that law professors who study issues such as the one before the court do not all hold uniform views about the legal

and policy issues. No one other than the undersigned wrote or funded any portion of this brief. Institutional affiliations are given for identification purposes only and each person joining this request does so in his or her individual capacity as a law and/or information science professor. For the foregoing reasons, we respectfully request the court's leave to file this amicus letter brief in support of neither party pursuant to Paragraph 4.ii. of the court's February 19, 2016 Scheduling Order.

## ARGUMENT

Another group of law professors has submitted an amicus brief in support of Apple. We submit this brief in support of neither party, and in particular in response to the brief submitted by our law professor colleagues. We agree with our colleagues that this case touches on an important and much broader policy debate about whether Congress should adopt specific statutory authorities and limitations relating to governmental access to encrypted devices and the related responsibilities of the technology companies that manufacture and distribute such devices. We do not all agree on, or hold firm views on, what any such policy solution should look like, or even whether Congress should act. But we disagree with our colleagues in their position that *this* court should try to resolve those broader issues in *this* case by refusing the Government's right to seek and obtain Apple's assistance under the All Writs Act ("AWA"), See 28 U.S.C. § 1651.

Under existing and longstanding precedent, this court likely had ample Constitutional and statutory authority to issue the contested Order under the AWA. The AWA derives from a statute first signed into law as part of the first Judiciary Act by President George Washington – hardly a novelty in our separation of powers jurisprudence. *See* 28 U.S.C. § 1651; Judiciary Act of 1789, 1 Stat. 73 (September 24, 1789). As this court's February 19, 2016 Scheduling Order and the resulting flurry of papers filed with the court demonstrates, Apple has been provided

more than adequate – indeed, extraordinary – notice and opportunity to be heard.  Finally, neither CALEA 47 U.S.C. § 1000 et seq., nor ECPA, 18 U.S.C. §§ 2701-2719, "govern the substantive validity" of this court's Order because, as Apple and its Law Professor Amici strenuously assert, neither CALEA nor ECPA address the kind of assistance the Government now seeks from Apple.  Under these circumstances, the Supreme Court's opinion in *United States v. New York Telephone Co.*, 434 U.S. 159 (1977) very likely authorizes this court's AWA order in this case.

### 1.  *Apple Has Been Afforded Due Process of Law*

Given that the court has entertained briefing and argument from the Government, Apple, and amici concerning its All Writs Act Order, the due process arguments made by Apple's Law Professor Amici are difficult to fathom.  We agree with the general black letter principles recited in Apple's Law Professor Amici's brief about due process and the adversarial system, but, of course, this does not mean *ex parte* process is inappropriate all circumstances – such as the possibility of an unfolding terrorist conspiracy.  This includes, for example, the altogether routine and necessary *ex parte* process for issuing search warrants, such as those issued in this case in connection with which the Government seeks Apple's assistance.  *See* F.R.C.P. 41.  In any event, the court has not yet held Apple in contempt nor taken any other action to require compliance with its AWA Order, and that Order expressly affords Apple the opportunity to seek relief both in the means of implementing the February 16 Order (para. 4), and to the underlying reasonableness of the burden the February 16 Order imposes upon Apple, (para. 7).  And, indeed, the court has taken the extraordinary step of issuing the February 19, 2016 Scheduling Order that invites even *amici* such as law professors to offer our views in what is typically a routine procedural matter.

### 2. Apple's Amici's Statutory and Separation of Powers Argument Have Already Been Resolved by the Supreme Court

In *United States v. New York Telephone Co.*, 434 U.S. 159 (1977), the Supreme Court considered and rejected the statutory interpretation and separation of powers arguments made by Apple's Law Professor Amici in Points III. and IV. of their Brief. Concerning statutory interpretation, Justice White, writing for the majority in *New York Telephone*, stated that under the All Writs Act, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Id.* at 172 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)). Justice White further noted that "[t]he Court has consistently applied the Act flexibly in conformity with these principles." *Id.* Apple's Law Professor Amici do raise important questions regarding this distinction between primary and auxiliary authority in the AWA. Their claim that the Government must first demonstrate valid primary authority for the sought order before it can engage the auxiliary authority of the AWA is an important question this Court should consider before the AWA comes into play: under what primary authority does the Government assert its right to compel necessary assistance?[1] We do not suggest that this case is the appropriate vehicle for resolving the large policy dispute between the position advanced by Apple's Law Professor Amici and the position suggested by Justice White in *ex rel McCann*, but rather urge that if the Government does demonstrate such primary authority, the AWA should not be excluded from consideration

---

[1] While it is our understanding that the FBI is seeking the present order in furtherance of a court-issued warrant, there has been some confusion in public discussions as to whether such a warrant has in fact been sought by the government and issued, or whether the FBI is seeking access to the contents of iPhone solely on the basis of the consent of iPhone's owner. If no such order has been issued, we share Apple Law Professor Amici's concern that there may not be sufficient primary jurisdiction in which to find authority for the present order.

as supplemental authority to compel the sought assistance. As noted throughout this brief, we take no position on whether the Court should grant such assistance under the AWA.

Concerning the separation of powers, in *New York Telephone*, Justice White flatly rejected the petitioner's argument "that the District Court lacked authority to order the Company to provide assistance because the use of pen registers may be authorized only in conformity with the procedures set forth in Title III for securing judicial authority to intercept wire communications." *Id.* at 165. At the time *New York Telephone* was decided, Congress had enacted a wiretap statute relating to communications in transit, but had not included in that statute or elsewhere a provision governing judicial authorization for pen registers. *Id.* at 166-68. Justice White concluded that, since the existing Wiretap Act did not *preclude* the use of pen registers, the District Court could exercise its discretion under the All Writs Act to require a third party's assistance for the Government to install one in a particular case. *Id.*

Justice White's conclusion in *New York Telephone* forecloses Apple's Law Professor Amici's argument that this court's AWA order exceeds the court's authority because Congress did not address this particular kind of assistance under CALEA, 47 U.S.C. § 1000 et seq. or ECPA, 18 U.S.C. §§ 2701-2719. It is, of course, true that the kind of assistance the Government seeks from Apple in this case is neither affirmatively provided for *nor prohibited* in CALEA or the ECPA. But the Government has not sought process under either of those statutes. Rather, the Government requested an order under a separate Congressional grant of authority, the AWA. Under Justice White's opinion in *New York Telephone*, this presents no separation of powers issue.

In effect, Apple's Law Professor Amici's separation of powers argument seeks to reinvigorate the arguments made in Justice Stevens' dissent in *New York Telephone* that the AWA serves as an unconstitutional general writ of assistance. *See New York Telephone*, 434

U.S. at 179-191. The same is true of the separation of powers analysis in the AWA opinion issued this week by Magistrate Judge James Orenstein in the Eastern District of New York. *See In Re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by This Court,* --- F. Supp.3d --- (E.D.N.Y. 2016), 2016 WL 783565. Contrary to the positions taken by Apple's Law Professor Amici and Judge Orenstein, for better or worse, Justice Stevens' position did not carry the day, and Justice White's opinion binds this court and all lower courts.[2]

Indeed, the court's potential refusal to issue the instant order either 1) on grounds of Congressional silence in CALEA and ECPA, or 2) especially on the grounds that the government's power to compel decryption of encrypted devices is a current and pressing political and policy question, itself raises serious separation of powers concerns. If it is the case that Congress has not provided guidance for the courts to address this question -- as the present debates would suggest -- then the AWA is the proper, Congressionally-designated, authority on which the courts, if appropriate under the terms of the AWA, should act. A central purpose of the AWA is to ensure that courts can continue to carry out their Constitutionally-defined judicial function even in the face of legislative gaps, such as those created by legislative uncertainty. If the court elects not to issue an otherwise appropriate order, as authorized by the AWA, based on its recognition of ongoing political debates, it is inappropriately inserting itself into the Legislature's Constitutionally-defined domain. The contrary reading of the AWA offered by

---

[2] Judge Orenstein's opinion also appears to be incorrect in its interpretation of the phrase "usages and principles agreeable to law" in the AWA. *See* Orin Kerr, "The Weak Main Argument in Judge Orenstein's Apple Opinion," The Volokh Conspiracy, March 2, 2016, available at https://www.washingtonpost.com/news/volokh-conspiracy/wp/2016/03/02/the-weak-main-argument-in-judge-orensteins-apple-opinion/.

Judge Orenstein and cited to by Amici is based on an incorrect understanding of the phrase "agreeable to the usages and principles of the law."[3]

As a factual matter, Apple and its Law Professor Amici raise important and interesting distinctions between the pen register at issue in *New York Telephone* and the assistance requested in this case. We agree that such factual considerations should be considered carefully by the court in the exercise of its discretion under the AWA when examining a request for assistance in a particular case. Certainly *New York Telephone* does not *require* this court to issue or enforce the order requested by the Government. But just as certainly it does not *preclude* this court from exercising its substantial discretion under the AWA to do so if the court finds the request appropriate and warranted.

This observation suggests the real motivation for Apple's Law Professor Amici's filing: ironically, despite their arguments about judicial overreach, their Brief is not about this particular case and controversy, but rather about a bigger policy question. No one disputes that this case presents compelling circumstances: a mass murderer with possible connections to the most ruthless terrorist group on the planet conducted a brazen, planned attack on American soil, when similar attacks have been happening all around the globe (for example, in Paris), and the iPhone he used may hold clues to these possible terrorist connections. Apple and its Amici suggest that broader policy considerations should override the court's discretion notwithstanding

---

[3] *See* Orin Kerr, "The Weak Main Argument in Judge Ornstein's Apple Opinion," *supra* note 2 (discussing *Halstead* and *Riggs*, and concluding that they suggest "that [Judge] Orenstein was not free to create a new theory of the phrase agreeable to the usages and principles of law' … [that] appears contrary to the precedents interpreting that language.") and Marty Lederman, "Magistrate Judge Orenstein's order in the EDNY, denying DOJ's All Writs Act request . . .," Just Security, March 1, 2016, available at https://www.justsecurity.org/29599/magistrate-judge-orensteins-order-denying-dojs-writs-act-request/ ("[Judge Orenstein's arguments] concerning the meaning of 'agreeable to the usages and principles of law' and discussing purported serious constitutional questions that would be raised were the AWA construed to permit this order are much weaker parts of [his] analysis.").

these compelling circumstances. The undersigned agree with Apple and its Law Professor Amici that the broad policy considerations should be left to robust debate in Congress, but believe – without taking a position on the merits factually – that the court should confine its decision to the present case and expressly reserve judgment on such larger questions.

### 3. Apple's Amici's – and Judge Orenstein's – Characterization of CALEA and ECPA is Incomplete

Apple Amici's brief asserts boldly that "CALEA and ECPA outline a complex regime controlling government's power to access electronically stored and communicated information" and that "These statutes 'cover the field.'" This is fundamentally incorrect. Law Professor Amici are correct in saying that the obligations of CALEA apply only to telecommunications carriers. ("Second, in defining those types of firms subject to assist law enforcement, Congress decided that only "telecommunications carriers" would be obligated …"). However the view that CALEA consequently "covers the field," removing firms other than telecommunications carriers from the any obligation with respect to law enforcement is mistaken.[4] The statutory language, legislative history, and political history make clear that the sole purpose of CALEA was to preserve the relationship *quo ante* between law enforcement and telecommunications carriers and to clarify that relationship insofar as the advent of digital technologies was creating new problems. H.R. rep. No.103-827, 1994 U.S.C.C.A.N. 3489, 3500 (1994) ("House Report") (purpose of legislation is "to define more precisely the assistance that telecommunications

---

[4] It is similarly remarkable that Judge Orenstein omits from his Order the first line of the CALEA's operative language, section 1002(a), which begins, in no uncertain terms, that "a telecommunications carrier shall ensure …" 47 U.S.C. § 1002(a). This directly contradicts Judge Orenstein's apparent view that sections 1002(a)(2)–(4) "addressed the responsibilities of private companies to preserve and allow access to records relating to wire and electronic communications." Orenstein Order, note 12. Section 1002(a) is expressly limited in application to certain telecommunications carriers.

carriers are required to provide in connection with court orders .."); *id.* at 3502 ("The Committee intends the assistance requirements in section [1002] to be both a floor and a ceiling. The FBI Director testified that the legislation was intended to preserve the status quo ... ."). *See also Amer. Council on Education v. Fed. Communications Comm'n*, 451 F.3d 226, 228 (D.C. Cir., 2006) ("While CALEA's substantive provisions apply to 'telecommunications carriers.' They do not apply to 'information services.'"); *USTA v. Fed. Communications Comm'n*, 227 F.3d 450, 455 (D.C. Cir., 2000) ("Because congress intended CALEA to 'preserve the status quo,' the Act does not alter the existing legal framework for obtaining wiretap and pen register authorization, 'providing law enforcement no more and no less access to information than it had in the past.'"); *In re: Application of the United States of America for an Order*, 441 F.Supp.2d 816, 819 (S.D. Texas, 2006) ("Congress intended CALEA to preserve the status quo, and therefore the new statute did not modify the legal standards for electronic surveillance or pen/trap devices [such as at issue in this case]."). The effects of CALEA were intended to be narrow, tailored to reach only telecommunications carriers. *Id.* at 3494 ("The purpose of the legislation is to further define the [telecommunications] industry duty to cooperate ..."); *id.* at 3498 ("excluded from coverage [of this bill] are all information services"); *id.* ("All of these private network systems or information services can be wiretapped pursuant to a court order, and their owners must cooperate when presented with a wiretap order") *id.* at 3503 (information services, such as "The storage of a message in a voice mail or E-mail 'box' [are] not covered by the bill"); *id.* at 3503–04 ("While the bill does not require reengineering of the internet ... this does not mean that communications carried over the Internet are immune from interception").

Similarly, ECPA applies only to communications transmitted or stored by third parties – not to information stored on electronics owned and under the control of individual users. Title I applies to the interception of communications, 18 U.S.C. § 2501 et seq, and Title II to the

disclosure of communications stored by electronic communications services, 18 U.S.C. § 2701 et seq. The essential scope of these statutes can be understood simply: they relate to *communications* – either those carried by telecommunications carriers or stored by electronic communications services. Nothing in ECPA applies to information *stored* on an individual's device – even if that device is used for communications, or if that information is a communication stored on the individual's own device (as opposed to in electronic storage provided by an electronic communications system).

It is trivial to demonstrate the overbreadth of Apple's, its Law Professor Amici's, and Judge Orenstein's argument. Under their theories, information stored on a non-networked computer, or a digital camera, or other consumer electronics device, presumably would not be covered by any of these statues. But if one adds a WiFi connection to these devices, or connects them to an LTE data network, they would be transformed into electronic communications systems, hosting information services provided by electronic communications services. Suddenly, the legal nature of these devices and their manufacturers' businesses would be transformed. By virtue of adding network connectivity to its digital cameras, Olympus would become an information service provider and its cameras would become electronic communications systems. This cannot be right – and, indeed, it is not right. While we recognize that many devices similar to – and including – the iPhone were designed to operate primarily, if not overwhelmingly, as connected devices, we respectfully suggest that Apple's Law Professor Amici err in creating an absolute categorical distinction in this regard. If such a distinction is to be drawn, it must be – as it was before – drawn by Congress.

There is certainly a plausible argument that some of the individual applications on the iPhone constitute information services and electronic communications services. And to the extent that they are, CALEA and ECPA are relevant and may preclude the disclosure of or assistance in

obtaining access to information stored on the iPhone in those application. The prospect of hybrid technologies that serve as both information services and telecommunications is in fact an aspect of CALEA's statutory design, which exempts information service components of telecommunications carriers' services from section 1002(a)'s capability requirements. *See Amer. Council on Education v. Fed. Communications Comm'n*, 451 F.3d 226, 228, 229 (2006) ("CALEA does not apply to 'persons or entities *insofar* as they are engaged in providing information services' (the 'information-services exclusion). ... The Commission explained that CALEA applies to providers of those hybrid services only to the extent they qualify as 'telecommunications carriers.'" (emphasis added)). However, to the extent that the government seeks to access a much broader category of information stored on the phone – likely including, e.g., locally-stored communications, e-mails and texts, contact information, documents, photographs, location information, and the like – the phone is simply an Internet-connected computer and falls outside of the scope of any extant legislation.

### 4. Limitation (b)(3) Either Does Not Apply or Indicates Apple's Assistance Can be Required

Apple and its Law Professor Amici's brief point to the limitation on decryption assistance included in CALEA to argue that Apple has no obligation to assist in the decryption of the iPhone. This understanding is erroneous and, if anything, precisely the opposite is true. While it is our belief that CALEA is inapposite, to the extent that it does provide guidance in this case, it strongly urges the court to require Apple's assistance in the FBI's efforts to decrypt iPhone.

The relevant language indicates that "A telecommunications carrier shall not be responsible for decrypting, or ensuring the government's ability to decrypt, any communications encrypted by a subscriber or a customer, *unless the encryption was provided by the carrier and*

*the carrier possess the information necessary to decrypt the communication.*" 47 U.S.C. § 1002(b)(3) (emphasis added).

The legislative history provides important further understanding of this language: "This obligation is consistent with the obligation to furnish all necessary assistance under 18 USC 2518(4). Nothing in the paragraph would prohibit a carrier from deploying an encryption service for which it does not retain the ability to decrypt communications for law enforcement access."

There are four things to understand about this language -- all relevant to the extent either that CALEA does apply to this case, or that it only provides this court with guidance for what assistance Congress would likely find reasonable to require under AWA. First, it makes clear Congressional support for strong end-to-end encryption, and the idea that it is permissible for firms to use it to secure customer communications. But second, Congress consistently uses the word "communications," both here and throughout CALEA. This, along with the consistent differentiation made in CALEA between intercepting *communications* and providing *call information*, and in ECPA between *records* and *content*, suggests greater Congressional concern for the privacy and security of the *content* of communications but lesser concern about the *metadata* surrounding them. In this light, it is important to recognize that Apple's end-to-end encryption secures the entire device, not only the "content" or substantive data stored on the device.

Third, because the encryption used on the iPhone was provided by Apple (as opposed to being provided by the "subscriber or customer"), CALEA would require Apple, were it subject to CALEA, to decrypt the iPhone to the extent possible. The iPhone encryption key effectively comprises two components: the PIN, and other information stored on the phone itself (e.g., the phone UID). While Apple does not know the PIN, and it may not be able to directly access the UID or other information used to compute the encryption key, it can indirectly access that

13

1    information through the lock-screen interface. By making the changes to iPhone required by this

2    Order, Apple effectively provides a substantial amount of "the information necessary to decrypt"

3    the iPhone. In other words, to the extent that Congress, in CALEA, has previously spoken to

4    issues such as those presented by this case, it has indicated that Apple should be responsible for

5    ensuring the government's ability to decrypt the iPhone to the extent that Apple is able to do so.

6            And fourth while CALEA expressly does not require telecommunications carriers to

7    *decrypt* communications, the legislative history makes clear that Congress intended for carriers

8    to nonetheless remain subject to the assistance requirements of 18 U.S.C. § 2518(4) – that third-

9    party subjects of assistance orders "shall furnish the applicant forthwith with all information,

10   facilities, and technical assistance necessary to accomplish" the order. This language

11   unequivocally makes clear Congressional understanding that – in the case of telecommunications

12   carriers under CALEA – this Order at issue in this case would be appropriate. It does not require

13   Apple to decrypt the iPhone; it would, however, require Apple to provide technical assistance to

14   the government in its efforts to do so if CALEA applies. And under the better understanding that

15   CALEA is not relevant to this case, it demonstrates that such assistance under AWA is supported

16   by Congressional intent in related contexts.

17           We emphasize that we understand and believe that this case presents important and

18   difficult factual questions that require this court to weigh difficult equitable considerations. We

19   therefore take no specific position as to whether this order should be granted or should not be

20   granted. We feel, however, that it is necessary to ensure that this court has the benefit of a fuller

21   range of perspectives on these complex issues than have been presented to it, and express our

22   concern that an order tailored to address ongoing public policy concerns could inadvertently and

14

needlessly create confusion relating to the status of other well-established and important laws including AWA and CALEA.

Dated: March 3, 2016                              Respectfully submitted,

                                                  David W. Opderbeck
                                                  Professor of Law
                                                  Seton Hall University Law School

                                                  Justin (Gus) Hurwitz
                                                  Assistant Professor of Law
                                                  University of Nebraska College of Law

                                                  *Amici Curiae*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF**
**SERVICE**

I, David W. Opderbeck, caused the foregoing document to be served on the interested

parties in this action by by regular mail, postage prepaid, mailed on March 7, 2016, as

follows:

**Counsel for Respondent Apple Inc.:**

Theodore J. Boutrous, Jr.
Eric  David Vandevelde
Gibson Dunn and Crutcher LLP
333 South Grand Ave.
Los Angeles, CA  90071
213-229-7000

Marc J. Zwillinger
Jeffrey G. Landis
Zwillgen PLLC
1900  M Street NW Suite 250
Washington DC 20036
202-296-3585

Nicola T. Hanna
Gibson Dunn and Crutcher LLP
3161 Michelson Drive 12th Floor
Irvine, CA  92612-4412
949-451-3800

Theodore B. Olson
Gibson Dunn and Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC  20036-5306
202-955-8668

**Counsel for Plaintiff USA:**

Allen W. Chiu
AUSA -- Office of US Attorney
National Security Section
312 North Spring Street, Suite 1300
Los Angeles, CA  90012
213-894-2435

Tracy L. Wilkison
USA – Office of US Attorney
Chief, Cyber and Intellectual Property Crimes Section
312 North Spring Street, 11th Floor
Los Angeles, CA  90012-4700
213-894-0622

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 3/7/16

DAVID W. OPDERBECK